IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IRA HOLTZMAN, individually and as the representative of a class of similarly-situated persons,<br>          Plaintiff,<br>v.<br>MICHAEL P. CAPLICE, d/b/a M. P. CAPLICE & ASSOCIATES,<br>          Defendant. | No.  07 CV 7279<br><br>Judge Manning<br>Magistrate Judge Cole |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

NOW COMES Defendant Michael P. Caplice, d/b/a M.P. Caplice & Associates ("Caplice"), by and through his attorneys, and for his Memorandum in Support of Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

**INTRODUCTION**

Plaintiff Ira Holtzman ("Holtzman") claims in his three-count Complaint that Caplice violated federal and state statutory and common law by sending Plaintiff, on one occasion, an allegedly unsolicited fax transmission. (*See* Plaintiff's Complaint at ¶ 11-12. A copy of the Complaint is attached hereto as Exhibit 1). The centerpiece of Plaintiff's lawsuit is Count I, in which Plaintiff asserts that a fax transmission violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. Count II purports to state a claim for the tort of conversion, and Count III alleges that Caplice violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). Plaintiff seeks to maintain each count on behalf of a class of persons who "on information and belief" allegedly received unsolicited fax transmissions from Caplice.

Applying the pleading standards recently articulated by the United States Supreme Court in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (May 21, 2007), Plaintiff's Complaint should be dismissed in its entirety. As a threshold matter, the Complaint fails to adequately plead sufficient facts to plausibly show that a cause of action exists against Caplice, which is fatal to Plaintiff's claim. Plaintiff's Complaint merely sets forth, in a conclusory fashion, that various causes of action against Caplice exist. Plaintiff's conclusory allegations, including such

1160953.1

speculative allegations based "on information and belief" to support his putative class action, are also insufficient. Based on the Complaint's failure to satisfy the pleading standard set forth in *Bell Atlantic*, Plaintiffs' Complaint should be dismissed on this basis alone. In addition to failing to satisfy the *Bell Atlantic* pleading requirements, Plaintiff's three causes of action and class action allegations contain additional deficiencies that warrant dismissal. Therefore, Caplice respectfully requests that Plaintiff's Complaint be dismissed in its entirety.[1]

## ARGUMENT

I. **Under The New Pleading Standard Set Forth In *Bell Atlantic*, Plaintiff Must Plead Sufficient Facts To State A Plausible Claim**

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) because he failed to state a claim against Caplice. FED. R. CIV. P. 12(b)(6).[2] Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In 1957, the Supreme Court interpreted this language to mean that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

However, on May 21, 2007, the Supreme Court determined that *Conley*'s "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (May 21, 2007). Noting the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" the Supreme Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1964-65, 1974. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Although a court must take the plaintiff's allegations as true, the claim may still fail as a matter of law if the claim is not plausible on its face. *See Id.* at 1964-65;

---

[1] Plaintiff requests an injunction in his Complaint. (*See* Compl., ¶¶ 28, 49). Injunctive relief cannot be granted where an adequate remedy at law exists. *Wilson v. Illinois Benedictine College*, 112 Ill. App. 3d 932, 937 (2d Dist. 1983). Further, "[p]roof of a speculative possibility of injury is not sufficient." *In re Marriage of Strauss*, 183 Ill. App. 3d 424, 429 (2d. Dist. 1989). Should this Court determine that Plaintiff has an adequate remedy at law under the TCPA, conversion or ICFA, Plaintiff has no right to injunctive relief.

[2] A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a pleading, not its factual accuracy. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). If Plaintiff's Complaint is allowed to proceed, Caplice will dispute that the alleged fax transmission was an "unsolicited fax transmission" within the scope of the TCPA.

2

*Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (observing that Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face.").

Thus, merely pleading a *possibility* of recovery is not enough. A plaintiff is required to plead factual "allegations *plausibly* suggesting (not merely consistent with)" an entitlement to relief. *Bell Atlantic*, 127 S. Ct. at 1966 (emphasis added). Accordingly, under *Bell Atlantic*, a "plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. As the Supreme Court recognized, "a district court must retain the power to insist upon some specificity in pleading *before* allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (emphasis added). The Supreme Court dismissed the complaint in *Bell Atlantic* because "it failed *in toto* to render plaintiff's entitlement to relief plausible." *Id.* at 1973, fn. 14. In this case, Plaintiffs' Complaint should be dismissed in its entirety because it fails to render his entitlement to relief plausible. This Court should not stray from the precedent set by the Supreme Court.

### A.   Plaintiff Failed To Plead Sufficient Facts Under The New *Bell Atlantic* Standard

It should be noted at the outset that Plaintiff's Complaint is riddled with nothing but bald, conclusory allegations. For example, Plaintiff makes the following conclusory allegations:

a. "On information and belief, Defendant faxed the same and similar advertisements to Plaintiff and more than 39 other recipients without first receiving the recipient's express permission or invitation." (Complaint, ¶ 13) (emphasis added).

b. "Defendant violated the 47 U.S.C. § 227 et seq. by sending advertising faxes (such as Exhibit A) to Plaintiff and the other members of the class without first obtaining their prior express invitation or permission." (Complaint, ¶ 24).

c. "Defendant's action caused damages to Plaintiff and the other class members." (Complaint, ¶ 27).

d. "By sending Plaintiff and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use." (Complaint, ¶ 34).

3

Case 1:07-cv-07279　　Document 7　　Filed 01/02/2008　　Page 4 of 16

e. "Defendant's unsolicited fax practice is an unfair practice because it violates public policy…". (Complaint, ¶ 46).

Plaintiff's conclusory allegations are insufficient to survive a motion to dismiss under the new pleading standard articulated by the Supreme Court in *Bell Atlantic*. In *Bell Atlantic*, the Supreme Court set forth a standard under which pleadings are scrutinized: Plaintiffs are required to plead sufficient *factual* allegations "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965. Under *Bell Atlantic*, a plaintiff may no longer rely upon "labels and conclusions," like Plaintiffs does in this case. Instead, Plaintiffs must plead facts to establish that a claim is *plausible*, not merely *possible*. *Id.* In this case, Plaintiff's recitation of the elements of each cause of action fails to satisfy *Bell Atlantic*'s standard.

Plaintiff's allegations against Caplice are based on guesswork in the hope that the Court will allow his claim to pass the pleading stage so that he might stumble upon some support for his bald allegations. *Bell Atlantic* specifically prohibits such use of pleadings in the judicial process. *Id.* This Complaint is no exception. Accordingly, Plaintiff's Complaint should be dismissed in its entirety on this basis alone.

  **B. Plaintiff's Class Action Allegations Based "On Information And Belief" Do Not Satisfy The *Bell Atlantic* Standard**

The class allegations in Plaintiffs' Complaint are prefaced with "on information and belief", which fails to satisfy the pleading requirements set forth in *Bell Atlantic*. (Complaint, ¶¶ 13, 31, 43). *See Bell Atlantic*, 127 S. Ct. at 1962 (Court rejected as inadequate "ultimate allegations" based on "information and belief"); *Aktieselskabet v. Fame Jeans*, No. 06-585, 2007 WL 1655877, at *14-*15 (D.D.C. June 7, 2007) (finding allegations "on information and belief" insufficient under *Bell Atlantic* standard).

Noticeably absent from Plaintiff's Complaint is any factual basis upon which his "information and belief" allegations against Caplice are based. There is no factual basis for concluding that there are more than 39 or 40 individuals that allegedly received a fax from Caplice who did not give their express permission or with whom an established business relationship did not exist. Without factual support, these allegations are inherently speculative and improperly conclusory. Allegations "on information and belief", like those pled by Plaintiff here, are inadequate under *Bell Atlantic* and are, therefore, insufficient to survive this motion to dismiss.

4

1160953.1

II.   **Count I Must Be Dismissed Because The TCPA Violates the First and Fifth Amendments to the United States Constitution and Because the TCPA Does Not Apply To Faxes Received By Computers**

In addition to failing to meet the *Bell Atlantic* pleading standard, Count I of Plaintiff's Complaint contains additional deficiencies that warrant dismissal. First, the TCPA's fines violate due process because they are unconstitutionally excessive. Second, the TCPA violates the First Amendment. Third, Plaintiff's failure to plead that the fax was allegedly received on a stand-alone fax machine requires dismissal of Count I.

A.   **The Court Should Dismiss the TCPA Claim Because the TCPA's Statutory Fines are Unconstitutionally Excessive Under the Due Process Clause**

The TCPA penalizes violations of the fax solicitation provision with a $500 fine that may be trebled if the violation is "knowing[]" or "willful[]." *See* 47 U.S.C. §227(b)(3). This statutory penalty for damages that in reality amount to only a few cents worth of paper and ink, is unconstitutionally excessive under the Due Process Clause of the Fifth Amendment, as most recently articulated by the Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 123 S.Ct. 1513, 1521 (2003). This disproportional fine essentially magnifies the damages to virtually confiscatory levels – damages into the millions (or tens of millions) of dollars – that would bankrupt all but the largest companies that sent faxes. For example, 100,000 unsolicited faxes, each of which causes (and this is a generous estimate) ten cents of actual damages to the recipient, will result in total actual damages of approximately $10,000. Under the TCPA, however, statutory damages would be $50 million and possibly $150 million under the trebling provisions, even though the recipient's true damages are *de minimis*. Such a gross disproportionality cannot withstand due process scrutiny and must be struck down.

It is important at the outset to recognize the *de minimis* character of the actual damages at issue here. Plaintiff only alleges damages for the loss of toner, paper, wear and tear on his fax machine, and time to determine who sent the fax. (Compl. ¶ 3.) There can be no reasonable inference that Plaintiff's total damages exceeded a few cents, are anything but *de minimis*, and justify the statutory penalty. *See, e.g., Player v. Village of Bensenville*, 309 Ill. App. 3d 532, 536-37, 539, 722 N.E.2d 792, 794-97 (2d Dist. 1999) (complaint must be dismissed where it yields no reasonable set of inferences entitling plaintiff to relief).

The constitutional infirmity of the TCPA's damages provision was recognized by the district court in *Texas v. American Blast Fax,* 164 F. Supp. 2d 892 (W.D. Tex. 2001). The district court there found that "[a]lthough the TCPA provides for liquidated damages of $500 for each violation,...it would be inequitable and unreasonable to award $500 for each of these violations[,]" which would "amount to an award of $2.34 billion (937,500 [faxes] multiplied by 5 months and then by $500)." *Id.* at 900 and n.8. The court thus "interpret[ed] the provision as providing for '**up to**' $500 per violation" and elected to award only "**seven cents** per violation." *Id.* at 900-901 (emphasis added). The $500 penalty at issue here for *de minimis* economic harm is far in excess of even the outer limits of penalties sanctioned by Supreme Court. Therefore, this Court should dismiss Plaintiff's TCPA claim on the ground that the statutory award it seeks is unconstitutional under the Due Process Clause.

**B.    The TCPA Violates The First Amendment Under The Central Hudson Test**

The subject fax qualifies as commercial speech that the government has only a limited ability to regulate under the First Amendment. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976). The fax solicitation provisions of the TCPA represent an unconstitutional application of that power under the Supreme Court's test for gauging the constitutionality of government restrictions on commercial speech. The government may not regulate commercial speech – other than speech that is misleading or promotes illegal activity – unless the asserted government interest is substantial, and the regulation directly advances that interest and does not restrict substantially more speech than necessary to accomplish the asserted purpose. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980). The TCPA fails this test. This is because the TCPA is a content-based statute that penalizes only commercial speech, without providing any rationale for its content discrimination. *City of Cincinnati v. Discovery Network, Inc.* 507 U.S. 410 (1993). Additionally, the interests underlying the TCPA's fax solicitation provisions could be served through far less speech-restrictive methods.

**1.    The Fax At Issue Here Is Neither Misleading Nor In Service Of Unlawful Activity**

The threshold criteria for applying the *Central Hudson* test are that the speech in question is commercial and neither misleading nor designed to promote illegal activity. *Central Hudson*, 447 U.S. at 566. The fax at issue here relates to professional liability insurance. Plaintiff does not allege that the fax was misleading or concerned an illegal activity, such as illegal drug sales.

6

1160953.1

*See, e.g.*, *Missouri ex rel Nixon v. American Blast Fax Inc.*, 196 F. Supp. 2d 920, 928 n.17 (E.D. Mo. 2002) (*Central Hudson* test applied where there were no allegations that the advertisements were misleading or concerned illegal activity), *overruled on other grounds by* 323 F.3d 649 (8th Cir. 2003), cert. denied, 124 S. Ct. 1043 (U.S. Jan. 12, 2004) (No. 03-507).

### 2. The TCPA's Anti-Fax Solicitation Provisions Do Not Serve A Significant Government Interest Based On Congress's Limited Findings

The first prong of the *Central Hudson* test asks "whether the asserted government interest is substantial." *Central Hudson*, 447 U.S. at 506. In this case, Congress articulated two interests supposedly served by the statute: (1) the "cost-shifting" that takes place when a fax sender sends his message to be printed on another's machine and (2) the time that is wasted when the target machine receives and prints the transmission. S.Rep No. 102-178 (1991) (cost-shifting); H.R. Rep. No. 102-317 (1991) (wasted time). But despite having articulated these interests, it is clear that Congress never reviewed a single study of the magnitude of the problem. Although unsolicited faxes are arguably annoying to some, that is not enough to generate a substantial government interest. Defendant suggests that judicial notice might be taken that "junk e-mails" might even be more annoying and a larger waste of time but remain unrestricted by statute.

### 3. The TCPA's Anti-Fax Solicitation Provisions Do Not Directly Advance The Governmental Interest Asserted

Even if the government's interest in banning unsolicited faxes is significant, the TCPA, with its many exceptions for junk faxes, charitable faxes, and certain types of commercial faxes, does not "directly advance[] the governmental interest asserted." *See Central Hudson*, 447 U.S. at 566; *see also Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) ("Government carries the burden of showing that the challenged regulation advances the Government's interest in a direct and material way." (internal quotation marks omitted)). The TCPA's fax provisions do not meet this standard because they prohibit only commercial speech without providing a justification for doing so. While the statute forbids unsolicited commercial faxes, it permits faxes that contain political messages, junk messages and charitable messages, whether or not the recipient has given permission. The TCPA's legislative history, nevertheless, offers *no justification* for why commercial speech alone is penalized.

Such unexplained preferential treatment of non-commercial speech over commercial speech is clearly proscribed by Supreme Court precedent. In *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), the Supreme Court struck down a Cincinnati ordinance that

7

1160953.1

barred commercial handbill newsracks from sidewalks but permitted newspaper newsracks. *Id.* at 430-31. As *Discovery Network* made clear, an "assertion that the 'low value' of commercial speech is a sufficient justification" for banning it cannot withstand constitutional scrutiny. *Id.* at 428. Thus, even if commercial fax solicitations did significantly outnumber other types of forms of fax solicitation, the government is not entitled to discriminate against commercial speech on that basis.

### 4. The TCPA's Anti-Fax Solicitation Provisions Restrict Speech More Than is Necessary

The final prong of the *Central Hudson* test asks whether the government regulation restricts substantially more speech than is necessary to accomplish the government's goals. *Central Hudson*, 447 U.S. at 566. Here, the government could have adopted a regulation that allowed individuals who signaled such a preference to opt out of receiving faxes. This approach is a far more narrowly tailored solution because it allows those who wish to receive commercial faxes to do so while still providing a method for others to avoid them. Alternatively, the government could establish a "do not fax" list that individuals and businesses who do not want to receive fax advertisements can join, similar to the "do not call" list recently created by Congress. The government's solution, in contrast, simply blocks *all* commercial faxes to *everyone* without even providing an adequate way to allow consumers who wish to receive commercial solicitations a way of signaling that preference. It is thus overinclusive and must be struck down as violating the final prong of the *Central Hudson* test. As a result, Count I must be dismissed.

### C. The TCPA Does Not Apply to Faxes Received by Computers, and Plaintiff Fails to Allege That Caplice's Fax Was Directly Received by Plaintiff's Fax Machine

With advances in technology, a transmission by a facsimile machine is not always received, directly, by a facsimile machine. "[I]t is now common for faxes to be received not by fax machines, but by e-mail." *Levine v. 9 Net Ave., Inc.*, No. A-1107-00T1, 2001 WL 34013297 at *5 (N.J. Super. June 7, 2001). Transmission to a computer via electronic mail does not violate the TCPA. *Aronson v. Bright-Teeth Now, LLC,* 2003 Pa. Super. 187, 824 A.2d 320, 322-323 (Pa. Super. Ct. 2003).

In his Complaint, Plaintiff alleges that Caplice faxed an advertisement to him. (Compl. ¶ 11). What Plaintiff's Complaint fails to address is whether the alleged fax was first received by a fax program on a computer, rather than a stand-alone facsimile machine hooked up to a

telephone line. The distinction requires consideration because the TCPA does not regulate unsolicited commercial e-mail. The TCPA concerns the use of "any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C.§ 227(b)(1)(C) (emphasis added.) Receipt of unsolicited e-mail advertisements does not violate the TCPA. *See Aronson v. Bright-Teeth Now, LLC*, 2003 Pa. Super. 187, 824 A.2d 320, 322-323 (Pa. Super. Ct. 2003) (trial court determined that the TCPA did not regulate unsolicited commercial e-mail in the provision which regulates unsolicited advertisements sent to a telephone facsimile machine). Plaintiff's Complaint fails to state a cause of action if the subject fax was received via computer rather than via fax machine. Since Plaintiff fails to specify that the fax was received by a stand-alone fax machine, Count I should be dismissed.

### III.   Plaintiff's Conversion Claim Should Be Dismissed Because Plaintiff Does Not (And Cannot) Allege the Basic Elements of the Claim

Count II of Plaintiff's Complaint contains nothing more than a recitation of the elements for conversion. It merely recites a formula, which is insufficient under *Bell Atlantic*. *See Bell Atlantic*, 127 S. Ct. 1964-65 (a "plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). While Plaintiff set forth each element of conversion in a conclusory fashion, the Complaint lacks the factual allegations necessary to clarify the "grounds" on which the claim rests. *Id.* at 1965, n.3.

Even if Count II were sufficiently pled under *Bell Atlantic*, Plaintiff's conversion claim fails for additional reasons. Plaintiff alleges that Caplice converted ink or toner, paper, and time belonging to the Plaintiff. (Compl. ¶ 34). To state a claim for conversion under Illinois law, Plaintiff must allege that: (1) the plaintiff has an absolute and unconditional right to possession of the property; (2) the defendant asserted unauthorized assumption of control or ownership over the property; and (3) the plaintiff made a demand for the property. *United States v. Cancer Treatment Ctrs.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004).

First, Plaintiff does not allege that Caplice converted any specific or identifiable property. The subject of a conversion claim must be "specific chattel," *i.e.*, an "identifiable object of property." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) ("An asserted right to money normally will not support a claim for conversion. Only if the money at issue can be

9

described as 'specific chattel' . . . in other words, "a specific fund or specific money in coin or bills' (citations omitted)); *Cumis Ins. Soc. v. Peters*, 983 F. Supp. 787, 793 (N.D. Ill. 1997). Rather, Plaintiff alleges only that Caplice converted an indeterminate and unsegregated amount of "ink or toner and paper" without any further detail. (Compl. ¶ 34). The fact that these materials are fungible and cannot be easily segregated or identified underscores the incompatibility of Plaintiff's allegations with a claim for conversion.

Moreover, Plaintiff does not and cannot allege that Caplice asserted control or ownership over the property. Plaintiff asserts that Caplice appropriated for his own use paper and ink or toner (Compl. ¶ 36), but this allegation does not constitute the "control, dominion or ownership" required for Plaintiff to state a claim for conversion. *Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) (dismissing a claim for conversion of paper and ink associated with the plaintiff's receipt of an unsolicited fax because the plaintiff did not allege that the property was in the defendant's control). Plaintiff never lost dominion or control over his pieces of paper and toner as a result of the alleged fax. To the contrary, Plaintiff, by maintaining a fax machine or fax number, willingly opened himself up to the receipt of faxes.

In addition, Plaintiff does not allege that he ever made a demand for return of the "property" that was allegedly converted, which is required to state a claim for conversion. *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 90 F. Supp. 2d 952, 956 (N.D. Ill. 2000) (requiring allegation of demand for return of property to state conversion claim). In this case, Plaintiff does not allege that he made a demand for any amount of "ink or toner and paper." The absence of any allegation of a demand for return of the property renders Plaintiff's conversion claim defective and emphasizes the fact that the subject fax is not an appropriate subject for a conversion claim.

Finally, it is clear that Plaintiff, at most, would be found to have suffered a *de minimis* harm by the loss of a few pieces of paper and some toner. Plaintiff can never plead a substantial harm. According to Plaintiff, only "unsolicited" faxes constitute conversion. There is no authority that liability for common law conversion can turn on the message or the content printed on a piece of paper. Therefore, Count II should be dismissed.

IV.  **Plaintiff's Claim Under the Illinois Consumer Fraud Act Should Be Dismissed Because Plaintiff Fails to Allege Any "Unfair Conduct"**

Count III of Plaintiff's Complaint contains nothing more than bald, conclusory statements. It merely recites a formula of the elements required to sustain a cause of action under the ICFA, which is insufficient under *Bell Atlantic*. *See Bell Atlantic*, 127 S. Ct. 1964-65

(a "plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Plaintiff set forth each element of a conversion in a conclusory fashion; thus, the Complaint lacks the factual allegations necessary to clarify the "grounds" on which the claim rests. *Id.* at 1965, n.3. This is fatal to Plaintiff's claim.

Plaintiff's ICFA claim fails for additional reasons. Count III of the Complaint, purporting to state an action under the ICFA, should be dismissed. Even if the subject fax was unsolicited, fax advertising is not a violation of the ICFA. Further, even if the fax at issue in this case violated Illinois' criminal facsimile solicitation statute, 720 ILCS 5/26-3, that statute is not one of the many such statutes that the ICFA enumerates as *per se* violations. *See* 815 ILCS §505/2Z (listing a variety of offenses that are considered *per se* violations of ICFA). Plaintiff may not redefine the ICFA's scope beyond what the legislature intended, *People ex rel. Daley v. Grady*, 192 Ill. App. 3d 330, 332, 548 N.E.2d 764, 765 (1st Dist. 1989),[3] nor should this Court.

To state a claim under the Illinois Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or unfair practice by the defendant; (2) that the defendant intended that the plaintiff rely on that act or practice, or intent by the defendant to deceive, defraud, or be unfair to the plaintiff; (3) that the deception or unfair practice occurred in the course of conduct involving trade and commerce; and (4) that the deceptive act or unfair practice proximately caused the plaintiff's injury. *Garrett v. Rentgrow, Inc.*, No. 04 C 8309, 2005 WL 1563162, *3 (N.D. Ill. July 1, 2005). Here, Plaintiff's ICFA claim should be dismissed because Plaintiff failed to sufficiently plead that the alleged transmission of the fax to Plaintiff was an "unfair" act or practice for purposes of the ICFA or that Caplice intended that the alleged transmission of the fax be unfair to Plaintiff.

### A. Plaintiff Does Not Allege Any "Unfair" Act Or Practice

To determine whether a course of conduct is "unfair," the Court should consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.*, 443 F. Supp. 2d 976, 978 (N.D. Ill. 2006); *W. Ry.*

---

[3] Notably, violation of Illinois's *telephone* solicitation statute is specifically listed for as *per se* violation of ICFA. See 815 ILCS §505/2Z.

11

*Devices Corp.*, No. 16-0052, 2006 WL 1697119, 4 (*citing Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002)). All three of these factors need not be present for a particular practice to be "unfair." A practice may be "unfair" because of the degree to which is meets one of the criteria or because to a lesser extent it meets all three. *Robinson*, 775 N.E.2d at 961. Here, the conduct that Plaintiff complains of – the transmission of one fax – is not "oppressive" and did not cause substantial injury to Plaintiff. At best, Plaintiff can only allege that the transmission of the fax violates public policy, which several courts have held in virtually identical circumstances is insufficient to establish an "unfair" practice under the ICFA.

### 1. The Transmission Of One Fax Does Not Violate Public Policy And Is Not "Oppressive" Conduct

Plaintiff alleges that on November 13, 2007 he received an advertisement from Caplice. (Compl. ¶ 11). This is not conduct that rises to the level of the oppression required to constitute an "unfair" act or practice under the ICFA, nor does it offend public policy. *See Rossario's Fine Jewelry, Inc.*, 443 F. Supp. 2d at 978 (finding allegations that defendant sent an unsolicited fax did not constitute oppressive conduct under the ICFA); *W. Ry. Devices Corp.*, No. 06-0052, 2006 WL 1697119, *4-5 (same).

Several Illinois courts in the Circuit Court of Cook County have held in similar circumstances that transmission of an unsolicited fax advertisement does not constitute an "unfair" practice under the ICFA:

> The plaintiffs allege the conduct is oppressive, yet they allege only one three-page facsimile transactions to the Plaintiff. This, by inference, suggests minimal disruption of one's business or occupation. *This conduct does not rise to the level oppression envisioned by the drafters of ICFA.*

*Weiss, Sugar, Dvorak & Dusek v. Human Res. Store, Inc.*, No. 03 CH 21867, at p. 13 (Ill. Cir. Ct. Oct. 12, 2004) (emphasis added) (a copy of the decision is attached as Exhibit 2). *See also Whiting Corp. v. MSI Mktg., Inc.*, No. 02 CH 6332, at *16-*19 (Ill. Cir. Ct. April 3, 2003) (a copy of this decision is attached as Exhibit 3). As in these cases, Plaintiff's allegations are insufficient to allege an "unfair" act or practice under the ICFA.

### 2. Plaintiff Fails To Allege Substantial Injury As A Result Of The Transmission Of One Fax

Plaintiff also fails to adequately allege that it suffered substantial injury and, therefore, fails to state a claim under the Illinois Consumer Fraud Act. A practice causes substantial injury

to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers. *W. Ry. Devices Corp.*, No. 06-0052, 2006 WL 1697119, at *17. Plaintiff alleges that he suffered damages as a result of the receipt an unsolicited fax in the form of paper and ink or toner consumed as a result. (Compl. ¶ 49).

Other judges in this District have repeatedly dismissed ICFA claims based on similar allegations concerning unsolicited faxes because the alleged damages do not rise to the level of substantial injury. In *Western Railway Devices Corp.*, Judge Grady considered an identical allegation and held that "[t]he cost of receiving and printing a single page facsimile advertisement cannot be characterized as 'significant harm'" and is insufficient to state a clam for an "unfair" act under ICFA. *Id.* at *6 (*citing Kim v. Sussman*, No. 03 CH 07663, 2004 WL 3135348, at *3 (Ill. Cir. Ct. Oct. 19, 2004) (damages resulting from conversion of the paper and toner necessary to print unsolicited facsimile "are minuscule, i.e., pennies per plaintiff.")); *accord Weiss, Sugar, Dvorak & Dusek*, No. 03 CH 21867 at *13-14. Judge Shadur adopted this analysis in *Rossario's Fine Jewelry* and rejected a similar claim under the ICFA because the damage allegedly caused by receipt of an unsolicited fax did not constitute a substantial injury. *Rossario's Fine Jewelry, Inc.*, 443 F. Supp. 2d at 979. The ICFA was not designed to allow suits for every trifling claim.

### B.     Plaintiff Fails To Allege That Caplice Intended That The Alleged Transmission Of The Fax Be Unfair To Plaintiff

The Complaint is devoid of any allegation that Caplice intended that the alleged transmission of the facsimile be unfair to Plaintiff. *See Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 747 (N.D. Ill. 2002). This defect alone renders Plaintiff's ICFA claim deficient and subject to dismissal under Rule 12(b)(6). *See Garrett*, 2005 WL 1563162, at *4 (dismissing ICFA claim because, among other reasons, the plaintiff failed to allege that the defendant intended that the act be unfair to plaintiff). As a result, Count III of Plaintiff's Complaint must be dismissed.

### V.     Plaintiff's Class Allegations Must Be Dismissed

Plaintiff cannot possibly maintain a class action in this case, and Caplice should not be subject to extensive discovery on behalf of the purported "class" when no class could ever be certified. A class action requires that common questions of law or fact predominate. FED. R. CIV. PRO. 23. In this case, no common question of law or fact can predominate because the issue

13

of whether each facsimile was "unsolicited" and whether an established business relationship existed with Caplice must be separately answered for each purported class member. In *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa., 1995), the Court held that a class of persons who received unsolicited facsimiles could not be certified in an action under the TCPA because individual issues would predominate. The Court held:

> "An examination of this general claim shows that there is no common nucleus of operation facts present for the entire class. Plaintiff has mischaracterized the basis of liability as arising from defendant's mere *use* of the facsimile machine to send advertisements. [Citation]. Under the language of the [TCPA], however, each unsolicited transmission is a separate violation. See 47 U.S.C. §§227(a) and (b). Thus, the essential question of fact that each potential plaintiff must prove is whether the specific transmission to its machine was without express invitation or permission on its part. Plaintiff's proposed "common" questions are inherently individualized, requiring inquiry into the particular circumstances of each transmission. The transmissions to each plaintiff would necessarily occur in different places, at different times and under differing circumstances. Given the individual proof necessary to establish liability, the commonality requirement cannot be met." 164 F.R.D. at 400 (Italics in original).

*See also Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (No class of persons who received unsolicited facsimiles could be certified on TCPA claim because individual issue regarding invitation or permission would predominate); *Kondos v. Lincoln Property Co.*, 110 S.W.3d 716, 721 (Tex. App. 2003) ("[E]ven if a relatively small number of the class members gave express permission to receive the faxes in question, either a jury or the trial court (by summary judgment or otherwise) must still ascertain whether each class member gave or did not give express permission to receive the faxes in question.").

In his Complaint, Plaintiff attempts to improperly shift the burden of proof to Caplice by defining the class as those who received facsimile advertisements from Caplice without prior consent or an established business relationship. (Complaint, ¶¶ 18, 28, 39). It will be the burden of each class member to prove that there was no express permission or invitation. As explained by the Court in *Livingston v. U.S. Bank, N.A.*, 58 P.3d 1088 (Colo. App. 2002):

> "Here the trial court observed that determination of whether a recipient had given 'prior express invitation or permission' involves an inquiry at the class member level. Because TCPA does not require consent to be given in writing, and it may be given orally, determination of this issue would involve examining whether each potential class member had invited or given permission for the transmission of the fax. Thus, as the trial court noted, the absence of written documents in defendant's files would not establish the issue of consent." 58 P.3d at 1091.

Individual issues will also predominate because this Court will have to determine, for each putative class member, how the alleged facsimile transmission was received. Simply because Caplice allegedly sent an advertisement does not mean it was received by facsimile. As explained by the Court in *Levine v. 9 Net Ave., Inc.*, 2001 WL 34013297 (N.J. Super. A.D. June 7, 2001):

> "[C]urrent technology has progressed during the ten years since the TCPA was enacted, so that it is now common for faxes to be received, not by fax machines, but by e-mail. Persons who receive transmissions in that fashion only print them out on a fax machine if they so elect. Such an elective printing would constitute consent. Under 47 U.S.C.A. Sec. 227(b)(1)(C), the unsolicited advertisement must be received upon a 'telephone facsimile machine,' rendering transmissions received by other means outside the TCPA." 2001 WL 34013297 at 5.

Plaintiff's claims for conversion and violations of ICFA also depend upon a finding that the facsimile was unsolicited. The individual determination will be even more difficult for these claims than under the TCPA because permission for the facsimile may be implied or even given after the fact. In addition, both the conversion claim and the ICFA claim depend upon a finding of damages. Each class member will have to prove individually that he or she suffered damages and the amount of such damages. Therefore, there is no possibility that a class action can be maintained and, accordingly, Plaintiff's allegations must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant requests that this Court grant its motion to dismiss and dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    Respectfully Submitted,

    MICHAEL P. CAPLICE
    D/B/A M. P. CAPLICE & ASSOCIATES

By: */s/ Maria Z. Vathis*

Robert L. Reifenberg
Maria Z. Vathis
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for Petitioner MICHAEL P. CAPLICE D/B/A M. P. CAPLICE & ASSOCIATES

1160953.1

## **CERTIFICATE OF SERVICE**

On January 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

> Brian J. Wanca
> Anderson + Wanca
> 3701 Algonquin Road, Suite 760
> Rolling Meadows, IL 60008
> (847) 368-1500
> buslit@andersonwanca.com

By: /s/ Maria Z. Vathis
Maria Z. Vathis
Clausen Miller P.C.
10 S. LaSalle Street
Chicago, IL 60603-1098
Telephone: 312/855-1010
Facsimile: 312/606-7777
mvathis@clausen.com

16

1160953.1