IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT; CHANCERY DIVISION

| | | |
|---|---|---|
| Weiss, Sugar, Dvorak & Dusek | ) | |
| | ) | |
| Plaintiff, | ) | 03 CH 21867 |
| | ) | Judge Patrick E. McGann |
| vs. | ) | Calendar 6 |
| | ) | |
| Human Resource Store, Inc., et al | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

This matter comes before the Court on the combined Motion to Dismiss pursuant to 735 ILCS 5/2-619.1 alleging grounds under Sections 2-615 and 619 (a).

### I.    Legal Standard

A section 2-615 motion attacks the legal sufficiency of the Plaintiff's claim. The motion does not raise affirmative factual defenses, but rather alleges defects only on the face of the complaint. The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Vernon v Schuster* 179 Ill. 2d 338, 344 (1997); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996).

Section 2-619 affords a means of obtaining a summary disposition of issues of law or easily proven issues of fact.  Subsection (a) (9) permits dismissal where "the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating a claim."

The phrase affirmative matter encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. For that reason, it is recognized that a 2-619 (a) (9) motion to dismiss admits the legal sufficiency of the plaintiff's cause



of action much in the same way that a 2-615 motion to dismiss admits a complaint's well-pleaded facts. *Kedzie & 103ʳᵈ Currency Exchange v Hodge*, 156 Ill. 2d 112, 115 (1993).

## II.    Well-Pled Facts

The Defendants are alleged to have sent a three-page bold faced type telephone facsimile message to the Plaintiff with neither permission nor invitation. The message offered the opportunity to attend a seminar on recruiting or hiring personnel. The opportunity to purchase video training tapes or obtain consulting services in these areas.

When the message is received by the Plaintiff's telephone facsimile machine it prints the message on the Plaintiff's paper. This allows, it is alleged, the Defendants to pass their advertising costs on to the Plaintiff. The fax contains a "memo" format message from Mr. Ruh offering consulting services, as well as, a solicitation for the purchase of the described goods and services from the Human Resource Store, Inc.

This conduct is alleged to constitute a violation of the Telephone Consumer Protection Act ("TCPA"),[1] common law conversion and a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").[2]

## III.    Discussion

### A. Constitutional Issues

The defendants in their Motion to Dismiss the Plaintiff's claims brought pursuant to the TCPA, assert that the regulation of advertisement by telephone facsimile is unconstitutionally vague and unnecessarily impinges on freedom of speech rights granted by the First Amendment.  In addition, they argue that the TCPA violates the advertiser's Due Process Rights under the Fifth and Fourteenth Amendments and imposes excessive fines in violation of the Eighth Amendment.

The Telephone Consumer Protection Act provides in relevant part; "It shall be unlawful for any person…to use any (transmitting device)…to send an unsolicited advertisement to a telephone facsimile machine."[3]  The term "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior

---

[1] 47 U.S.C. § 227
[2] 815 ILCS 505/2 et seq.
[3] 47 U.S.C. 227 (b)(1)(c)

express invitation or permission."[4] Thus, the TCPA prohibits only commercial advertising.

As the statute in question seeks to regulate commercial speech, it must meet the test set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 57 (1980). Initially, it must be observed that commercial speech is different from other varieties of speech because it proposes a commercial transaction which traditionally occurs in an area subject to governmental regulation. *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 445-456 (1978). However, any regulation of such speech must be cognizant of the controlling principle that our union depends on a free enterprise economy. The allocation of societies resources depend upon a free flow of information. Thus, it is in society's interest that a free flow of information be maintained so that the consumer has enough information to make intelligent and well informed decisions. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.,* 425 U.S. 748 (1976).

In order to maintain the balance between the limited ability of government to regulate commercial speech and the consumer's right to the full and free flow of information, the Court in *Central Hudson* adopted a four part analysis to determine the constitutionality of any proposed restriction on commercial speech. First, the court must determine whether the speech comes within the First Amendment. To be protected, such speech must concern lawful activity and not be misleading. Next, the court must determine whether the government's interest in regulating the communication is substantial. If these two tests are met, then a determination must be made as to whether the regulation directly advances the governmental interest asserted and whether it is not more extensive than necessary to serve the asserted interest. *Central Hudson,* 447 U.S. at 566.

Applying this analysis to the TCPA's ban on unsolicited telephone facsimile advertising, it is clear there is no claim that any of the information distributed is misleading or promotes any illegal activity.

The Plaintiffs bear the burden of establishing that the legislation survives the remainder of the analysis. *Florida Bar v. Went For It, Inc.,* 515 U.S. 618 (1995). The Plaintiffs and the intervening Petitioner United States of America, posit that the TCPA

---

[4] 47 U.S.C. 227(a)(4).

was enacted to address the substantial government interest of preventing the shifting of the cost of advertising to the potential consumer and the economic disruptions caused by the intrusive activity of the defendants. The Plaintiffs include this later interest under the broad umbrella of "invasion of privacy." The court's determination of substantial governmental interest is limited to these two pronouncements. This court cannot engage in supposition to find additional interests in need of protection. *Edenfield v. Fane*, 507 U.S. 761, 768 (1992). The burden of establishing these interests is not satisfied by mere speculation or conjecture. There must be a demonstration that the harms cited are real. *Edenfield*, 507 U.S. at 770-71. The evidence of the governmental interest can come from anecdotes, studies, literature published in the issue, 507 U.S. at 771-773; *See* also *Florida Bar*, 515 U.S. at 626-627.

ThePlaintiff observes that 15 states, including Illinois, have enacted similar bans on unsolicited facsimilies. They also note that two separate Congresses held hearings on the issue. Subcommittees took testimony on the issue and members noted anecdotal information from constituents on the issue. One Congressman, Edward Mackey of Massachusetts, likened receiving an unsolicited fax to receiving "junk mail with the postage due." Private citizens from various walks of life, including the legislative counsel for the American Civil Liberties Union, noted the burden imposed on consumers by the cost shifting effect of receiving an unsolicited advertisement by telephone facsimile.

The Congress also received testimony as to the business disruption caused by this activity. Witnesses testified as to the inability to access equipment because it was occupied by an uninvited user. Evidence was also taken which indicates necessary or anticipated communications were disrupted.

There is no record of similar proceedings in the Senate. However, the bills of both Houses were reconciled in committee. The Court, without invading the separation of powers, cannot find or conjecture that anything but a complete consideration of the issues occurred when the TCPA was enacted.

In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of Congress. The Supreme Court has recognized that Congress is better equipped than the judiciary to amass and evaluate the vast amounts of

data bearing upon legislative questions. Even in the realm of First Amendment, questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided. *Turner Broadcasting System, Inc., v. F.C.C.,* 520 U.S. 180, 195-196 (1996). Thus, it appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity.

The defendants argue that improved technology has substantially reduced that burden. Modern fax machines no longer use expensive special papers. Increased memories allow for multi-tasking by the equipment virtually eliminating the "temporary kidnapping" of facsimile machines. Thus, they posit, any interests identified by Congress have dissipated. The Congress, perhaps in anticipation of the vast explosion in technology, received testimony concerning the increased capacity of the senders of these messages. Indeed, one of the defendants, Fax.Com, solicits customers with a promise to save more than 75% over direct mail costs. The Court can infer that some of these savings are passed on to consumers who must now pay for the printing. Evidence adduced in other cases involving this issue confirm the problems identified by the Congress still exist. *See, Missouri ex. Rel. Nixon v. American Blast Fax, Inc.,* 196 F. Supp. 2d 920, 924-26 (testimony concerning business disruptions, preventing access to phone lines, occupying personnel with other duties, increased capacity of facsimile senders) *rev'd on other grounds, Missouri ex. rel. Nixon v. American Blast Fax, Inc.,* 2003 U.S. App. Lexis 54/69(8th Cir. 2003)(Doc. 02-2705/2707). Nothing presented by the defendants undermines the continued existence of the identified and substantial government interests.

The defendants could also assert that the prohibition of these facsimile transactions is not dissimilar to the receipt of junk mailings. While it is true that the Court could find no substantial interest in prohibiting the distribution of unwanted "junk mail", *Bolger v. Young Drug Products Corp.,* 463 U.S. 60 (1983), the Court was never asked if the recipient was also required to pay the "postage due" on the mailing or pay a toll on the trip to the wastebasket, let alone subsidize the mailer's printing expense.

Having found the existence of two substantial governmental interests, the Court must determine whether the legislative enactment directly addresses these interests. This

requires the Plaintiff to demonstrate the restriction imposed will not only advance the governmental interest, but do so to a material degree. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 505 (1996). This Court does not find that the TCPA creates a complete ban on telephone facsimile advertising. There is nothing in the law that prevents a distributor from soliciting and obtaining consents for such advertising. This can be done in a number of ways such as direct mail or contact, solicitations in printed media, or telephone solicitation. Perhaps the best way to identify the parameters of this requirement is to furnish examples of restrictions that were found unrelated to the asserted interest. The City of Cincinnati, no doubt attempting to dissipate any image from its 19th century nickname "Porkopolous," enforced an ordinance limiting news racks in order to improve community esthetics. The result was a reduction of the over 1600 such racks by 62. The publications using these racks were not "mainstream" media. The reduction in unsightly news boxes was in the words of two courts "paltry" or "minute." The regulation, however, was found to have no relation to the stated governmental interest. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424 (1993).

Similarly, a ban on radio advertising of private state government authorized casino gambling by a federal regulation was found to have no relation to the recognized government interest of reducing gambling. This result was reached because the ban excluded promotion of Indian sponsored casinos and state run lotteries. *Greater New Orleans Broadcasting Assn. v. United States,* 527 U.S. 173 (1999).

This restriction directly and materially advances the governmental interest in the efficient operation of commercial enterprises. The cost to industry both in increased operating expenses and lost productivity, was amply demonstrated to Congress.

The defendants note the failure to include unsolicited non-commercial faxes supports their position that the goals of the government are not being advanced by the TCPA. These faxes also shift costs and disrupt the orderly conduct of business. They cite to decisions such as *Greater New Orleans and Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995). Each of these cases had one distinguishing fact, there was no basis to suggest the bans in those cases would advance the stated goals. Gambling would not be reduced because Indian sponsored casinos and lotteries could be promoted. Temperance would

6

not be promoted, because alternate means of advertising the alcoholic content of beer was available.

More importantly, the Congress heard evidence than private or non-commercial facsimile transmissions represented but a small percentage of unsolicited messages. Most recipients welcomed the message. Thus, no concern over this segment of unsolicited messaging was ever expressed to the Congress.

The other issues raised by the defendants are equally unpersuasive. The Supreme Court has noted that unsolicited junk mail cannot be prohibited because "the short, though regular journey from mail box to trash can...is an acceptable burden so far as the Constitution is concerned." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. at 72 quoting *Lamont v. Commissioner of Motor Vehicles*, 269 F. Supp. 880, 883 (S.D.N.Y. 1967). There can be no greater cost in taking the short regular walk to the telephone and hanging up on an unsolicited telemarketer. Some of our more imaginative fellow citizens may actually enjoy the exercise as a diversion from the inspid television, or tense moment at the dinner table.

The final prong is the determination that the regulation is not more extensive than necessary to serve the asserted interest. This, in the area of commercial speech, does not mean the least restrictive means. The case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (1999). The defendants posit that there were numerous less restrictive alternatives such as allowing one free fax allowing the recipient to notify the sender of the desire not to receive further messages. Another suggestion would be the creation of a "no-fax" list similar to that established by the government to reduce unwanted telemarketing. In their Reply brief, the Defendants point to recent activity in Congress to create an "established business relationship" exception to the TCPA. This, the Court is urged to find, is evidence of a congressional recognition that the current TCPA scheme is more restrictive than necessary.

The proponent of the statute must show that Congress "carefully calculated the costs and benefits associated with the burden on speech imposed by the regulations." *City of Cincinnati*, 507 U.S. at 417.

7

To make this determination, it appears to this Court it is important to understand the effect of the TCPA ban on unsolicited commercial telephone facsimile messaging. This statute does not prevent any person engaged in commercial activity from either sending or receiving information about that activity. In fact, it does not prohibit the use of telephone facsimile devices for advertising. It requires the advertiser to identify those persons who are willing to expend their resources both in time and money to receive the commercial messages being sent.

It prohibits the advertiser from passing part of its costs on to a potential consumer. From this understanding, the Court must determine if the restriction imposed while perhaps not the single best disposition is one whose scope is in proportion to the interest served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). There was a clear recognition of the substantial interference caused by the blast fax industry. It is not this Court's role to substitute its judgment for that of the Congress. The ban on unsolicited commercial telephone facsimile messaging is a reasonable means to the stated government end.

The recent activity in the Congress is not aimed at the regulatory scheme imposed by the TCPA, but rather on the overly restrictive and conflicting implementation by the FCC. The Court noted in a recent decision[5] that the TCPA must be interpreted broadly so as to not limit legitimate speech. This requires application of the ordinary reasonable man approach to defining terms such as "express permission or invitation." That can readily be ascertained from the circumstances under which the recipient of the message or phone number used was identified. As noted in that opinion some circumstances can be considered an express permission or invitation as a matter of law.

Finally, if the Congress does change the law or redefine terms of the TCPA, the effect can be determined at that time. Any other approach would be reaction to speculation. An exercise not favored by the courts.

The defendants additionally assert that the TCPA's damage clause violates the Due Process of the Fifth and Fourteenth Amendments, as well as, the excessive fine clause of the Eighth Amendment.

---

[5] *Zoes v Banctrust* 03 CH 17879

The Due Process Clause of the Fifth and Fourteenth Amendments prohibit federal and state governments, respectively, from imposing a "grossly excessive" punishment on a tortfeasor. TXO Production Corp. v. Alliance Resource Corp., 509 U.S. 443, 454 (1993). In order to make this determination, the Court must first identify the interest the government seeks to protect and then determine whether the award is grossly excessive in relation to those identified interests. TXO, 509 U.S. at 456.

The Court has already identified those interests as preventing the shifting of advertising costs to potential consumers and promoting the efficient operation of this nation's businesses. The Court also notes that each defendant received adequate notice of the potential penalty if their conduct deviated from the required norm. Thus, the Supreme Court's decision nullifying an award for punitive damages on the basis of lack of notice is inapposite. BMW of North American v. Gore, 517 U.S. 559 (1995). Unlike the situation before the Court here, BMW was not sufficiently informed that the same conduct which was acceptable in some jurisdictions, but not in others, was subject to a penalty 500 times greater than the actual loss. It is clear the penalty here is even greater, but unlike the operators of BMW who had no notice that the procedure employed ran afoul of the law in Alabama, the statute clearly proscribes the conduct before any defendant acted. Thus, the standard to be applied is more properly found in St. Louis, Iron Mountain & Southern Railway v. Williams, 251 U.S. 63 (1919). There the Court acknowledged the wide latitude that legislatures have in protecting public interest, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established law. This Court is wary of substituting its judgment for that of Congress. The Court is concerned about the potential damage claims in this case. However, no evidence has been introduced quantifying the amount of damages incurred by businesses in lost productivity. Thus, no mathematical certainty can be reached as to the relationship between actual damages and the penalty imposed. Any penalty computed by multiple violations would be a result of the defendants use of technology to aggressively violate a statute which is clear on its face. However, this issue must await full resolution until all of the evidence is heard, so a complete record can be established.

Thus, the Court does not find the TCPA imposes a sanction grossly disproportionate to the interests sought to be protected.

9

Turning now to the Eighth Amendment excessive fine issue. This analysis is similar to that under the prior Due Process inquiry. A fine is a valid exercise of legislative prerogative unless it is grossly disproportionate to the nature of the violation. *United States v. Bajakajian*, 524 U.S. 321 (1998). However, as the dissent in that decision noted, substantial deference must be given legislative determination as to sanctions for illegal authority. *Bajakajian*, 524 U.S. at 348. As noted, on this record, this Court cannot make such a determination, thus, the Motion to Dismiss is denied. Having found the TCPA constitutional the Court moves to analyze the remaining issues.

### B. Availability of a Private Right of Action

The defendants assert that no private action for violation of the TCPA can be maintained in Illinois Courts because Illinois has never authorized the prosecution of TCPA matters in its courts, providing only for criminal sanctions.

Article VI of the United States Constitution provides that the laws of the United States made pursuant to the Constitution "shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby."

In Testa v. Katt, 330 U.S. 386 (1947), the Court was called upon to determine whether Rhode Island's courts could properly refuse to hear a claim brought under the Emergency Price Control Act. Unlike the TCPA , this law gave concurrent jurisdiction to Federal, State, and Territorial Courts to entertain these claims. The basis for the declination by the Rhode Island Courts was the traditional right enjoyed by the states to enforce penal laws of a foreign state. The Court noted that since the time of the first congress, laws have been enacted conferring jurisdiction on state courts to enforce federal penal statutes. While disputes raged over the relationship between federal and state governments during the first half of the 19th Century and ultimately, albeit temporarily were resolved by war, the Supreme Court has been predictably steadfast in holding, "If an Act of Congress given a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not been forced, if not provided otherwise by some act of Congress, by a proper action in a State Court." Claflin v. Houseman, 93 U.S. 130, 137 (1876). Thus, in Testa, the Court dismissed as inadmissible the argument that the state's law must be consistent with the federal regulatory scheme.

The rationale in *International Science and Technology Institute, Inc., v. Inacom Communications, Inc.*, 106 F. 3d 1146 (4th Cir. 1997 is of significant interest. After determining the TCPA granted exclusive jurisdiction for the private right of action to state courts, the court noted that the TCPA was enacted, in part, in response to claims by several states that efforts to curb unsolicited facsimile messages were being thwarted by the simple fact that many of these messages were traveling in interstate commerce, an area the States designated to be regulated by Congress in ratifying the U.S. Constitution. The Court then acknowledged the role of the Supremacy Clause in our constitutional structure. After expressing concern that Congress not impermissively usurp state resources as prohibited by *New York v. United States*, 505 U.S. 144 (1992), the Court stated any potential conflict was avoided by allowing states to affirmatively deny access to its courts for the private prosecution of TCPA claims.

This reasoning is persuasive to this Court. This approach strikes a balance between the Congress' right to regulate interstate commerce and the state's right to allocate its resources to problems it deems necessary and important. The TCPA only encourages state participation in Congress' regulatory scheme. Local officials, accountable to their electors, make the decisions as to state priorities. This also recognizes the role of the Supremacy Clause in our dual sovereign form of government.

Thus, this Court finds no prohibition to the maintenance of a private right of action for violation of the TCPA in state courts because Illinois has not acted to decline jurisdiction over these matters.

### C. Conversion Claim

In their complaint, the Plaintiffs allege that the Defendants sent telephone facsimile messages to the Plaintiffs without obtaining prior permission. The complaint further alleges, prior to the initiation of the transmission, each plaintiff had purchased paper and toner for their respective use and had an immediate right to the possession and use of these items. Plaintiffs further allege that the receipt of the unsolicited facsimile message resulted in the unauthorized use of toner and paper by the defendant's which rendered these items unusable by the Plaintiffs.

To sufficiently allege conversion a plaintiff must allege: 1) the defendant's unauthorized and wrongful act of control, dominion or ownership over the plaintiff's

personal property: 2) the plaintiff's right in the property: 3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and, 4) the plaintiff's demand for possession of the property. *Roderick Development Investment Company, Inc. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052 (1996).

At the outset, it must be noted that the complaint does not allege conversion of the Plaintiff's fax machine, only its paper and toner. The Defendants assert that conversion cannot lie because the Plaintiffs had placed the paper and toner in the machine and prepared it for accepting facsimile messages from many sources. This act or series of acts, it is argued, parts with exclusive control of the property and defeats the claim.

This argument ignores the simple fact that the Plaintiffs can rely on others to obey the law. Federal and State law make the conduct engaged by the Defendants, if true, not only civilly, but also criminally wrong. The Plaintiff has the right to give up its exclusive control of its property as it deems appropriate. The Defendants cannot take it to advance commercial prospects.

Therefore, the Court finds there are sufficient allegations to state a claim for conversion.

### D. Illinois Consumer Fraud and Deceptive Practices Act

In their motion, the Defendants assert that the factual allegations are insufficient to support a claim that the defendants engaged in "deceptive" or "unfair" conduct prohibited by ICFA. Finally, they note that any statutes alleged to be violated by their conduct doe not support a "per se" violation of ICFA. The Court will analyze these arguments in the order perceived to be most useful.

Initially, it should be observed that the parties agree there are no allegations of deceptive practices. Thus, in order to establish a claim the Plaintiffs must allege ultimate facts that show the Defendants engaged in unfair practices. In *Robinson v. Toyota Motor Credit Corporation,* 201 Ill. 2d 403 (2002), our Supreme Court discussed the elements of such a claim. ICFA is a regulatory remedial statute designed to protect consumers against unfair business practices and is to be liberally construed to effectuate its purpose. *Cripe v. Leiter*, 184 Ill. 2d 185, 191 (1998).

In *Robinson*, the Court defined the elements of an unfair business practice. In essence, the Court adopted the three part test cited with approval in *F.T.C. v. Sperry & Hutchinson*

*Co.*, 405 U.S. 233 (1972). Therefore, in order to measure whether a business practice is unfair, a court msut consider the following factors: 1) whether the practice offends public policy; 2) whether it is immoral, unethical, oppressive or unscrupulous; and 3) whether it casues substantial injury to consumers. *Robinson*, 201 Ill. 2d at 417-418. The Court also noted that all three factors need not be met. Rather, the Court adopted the reasoning of the Connecticut Supreme Court in *Chesire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992). That Court, in a case involving "loan churning" observed that all three criteria need not be satisfied in order to support of unfairness. Rather, a practice may be unfair because of the degree to which it means one of the criteria or because to a lesser extent it meets all three. *Chesire*, 223 Conn. at 106.

As the claim is brought under ICFA the complaint must allege with particularity and specificity the unfair business practices of the defendants. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 502 (1996). The Plaintiffs fail to recognize that in a Section 2-615 Motion, the complaint must stand on its own, thus, reference to citations issued by the FCC, reports or hearings are not relevant to the issues and will not be considered in resolving this Motion.

The well pled facts, taken as true for purposes of this Motion, are set out above. There is no question that transmitting unsolicited telephone facsimile advertisements violates public policy. First, the Criminal Code of 1961, as amended, prohibits this activity. See, 720 ILCS 5/26-3. Knowledge is defined by the Code in Section 5/4-5. A person acts knowingly when he is consciously aware that a result is practically certain to be caused by his conduct. 720 ILCS 5/4-5(b). There can be no question than any individual who causes a telephone facsimile transmission to occur acts knowingly. In addition, the failure of Illinois to "opt out" of the private enforcement of the TCPA suggests that is the public policy of Illinois as well.

The Plaintiffs allege the conduct is oppressive, yet they allege only one three page facsimile transactions to the Plaintiff. This, by inference, suggests minimal disruption of one's business or occupation. This conduct does not rise to the level of oppression envisioned by the drafters of ICFA.

The final factor requires the allegation of substantial injury to the consumer. In discussing the count alleging conversion, the Court indicated the doctrine of *de minimus*

13

*non curat lex* had no application in this matter. A complete review of the movants'
authorities confirms this position. No case cited involved a tort claim. They involved
complaints of short redemption deposits in foreclosure cases, errors in summing damages
or computing interest. The Court acknowledges that the Plaintiff's are not entitled to
receive nominal or presumed damages in a claim under ICFA. *Duran v. Leslie
Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041 (1992). There are no facts from which the
Court can determine the amount of damages incurred by the suggested class plaintiff or
consumers as a whole. The term "substantial" is clearly a conclusion.

Thus, evidence of only one of the *Robinson* factors are found in the Plaintiff's
complaint. This Court concludes that the Plaintiff has not stated a claim under ICFA. In
reaching this decision, the Court recognizes that the failure to include Illinois' prohibition
against unsolicited telephone facsimile transmissions in Section 2Z of ICFA (815 ILCS
505/27, also prevents a finding of a per se violation of ICFA. *Illinois ex rel. Daley v.
Grady,* 192 Ill. App. 3d 330, 332 (1989).

Therefore, the Count of the Complaint alleging a violation of the Illinois Consumer
Fraud and Deceptive Practices Act is Dismissed.

### E. Adequacy of Class Allegations

The Defendants assert that under the rationale of *Weiss v Waterhouse Securities, Inc.,*
208 Ill. 2d 439 (2004). In order for this Court to allow the matter to continue as a class
action, the complaint must allege sufficient facts that, if true, establish a right of recovery
in each class member. This cannot be done, it is argued, because the Plaintiff's proof of
their claim would not necessarily establish that every person who received a telephone
facsimile message did not give express permission or invitation to the Defendants. This
argument fails.

First, it appears that the Defendants are attempting to expand the rather narrow scope
of the *Weiss* Court ruling. The Court acknowledged the significantly different standards
to be applied in determining whether a claim filed on behalf of a class is legally sufficient
to pass muster under a Section 2-615 analysis. This requires the allegation of facts, when
considered in the light most favorable to the pleader, that allege every element of the
claim, as well as, the prerequisites for a class action. *Weiss,* 208 Ill. 2d at 453-454. These
allegations are made in the absence of discovery related to class certification issues.

The motion to certify a class, however, requires that the elements to employ the procedural class action device be established by reference to facts admitted or gleaned through the discovery process. *Id.* at 453. It may well be that the Plaintiff was the only person aggrieved by the Defendants' transmission of the message. This could occur because there was only one facsimile message sent by the Defendants during the applicable statute of limitations. It may be that the telephone number to which the message was sent was the only one with whom the defendants had no prior existing relationship. These are evidentiary matters that cannot be used to support the potion of the 2-615 motion based on this point.

**IV.    Order**

A.  The Defendants' Motion to Dismiss is denied as it relates to the allegations justifying the use of the class action procedural devise, violation of the TCPA and conversion. It is granted as to the Plaintiff's ICFA claim. The Plaintiff is not given leave to replead this claim without leave of Court;

B.  The Defendants shall answer the Complaint within 28 days of the initial bench ruling on this matter.

Enter _____

**Judge**                              **1510**

# ENTERED

### OCT 1 2 2004

**JUDGE**
**PATRICK McGANN · 1510**