UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRA HOLTZMAN, Individually and as the representative of a class of similarly-situated persons | ) ) ) ) | |
| Plaintiff, | ) ) | No. 07 C 7279 |
| v. | ) ) | Judge Blanche M. Manning Magistrate Judge Cole |
| MICHAEL P. CAPLICE, d/b/a M. P. CAPLICE & ASSOCIATES | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM  IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND IN SUPPORT OF THE CONSTITUTIONALITY OF
THE TELEPHONE CONSUMER PROTECTION ACT**

INTRODUCTION

In the face of overwhelming contrary precedent, Defendant Michael Caplice has filed a

motion to dismiss this action challenging the constitutionality of the Telephone Consumer

Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").  The United States District Court for the

Northern District of Illinois, has recently addressed and rejected the identical constitutional

arguments which Defendant raises here.  See, e.g., Italia Foods, Inc v. Marinov Enterprises Inc.,

No. 07 C 2494, 2007 WL 4117626 (N.D. Ill. Nov. 16, 2007) (Anderson, J.) (Appx.); Phillips

Randolph Enters., LLC v. Rice Fields, No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007)

(Kocoras, J.) (Appx.).  The United States is aware of no precedent in any federal or state court

supporting Defendant's challenge to the constitutionality of the TCPA.[1]  Defendant's First and

---

[1] The only United States district court decision finding the TCPA unconstitutional was later reversed on appeal.  See Missouri ex rel. Nixon v. American Blast Fax, Inc., 196 F. Supp. 2d 920, 934 (E.D. Mo. 2002), rev'd 323 F.3d 649, 660 (8th Cir. 2003).  All state courts but three,

Fifth Amendment challenges to the TCPA are without merit and should be rejected.

## STATUTORY BACKGROUND

Addressing what it correctly understood to be the "explosive growth" of advertising via telephone facsimile ("fax") machine, Congress enacted the TCPA to prevent advertisers from: (1) shifting the costs of advertisements to fax machine owners, and (2) causing disruptions to businesses that rely on fax machines.  H.R. Rep. No. 102-317, at 10, 25 (1991).  The TCPA prohibits the use of any telephone fax machine, computer, or other device to send unsolicited advertisements to another fax machine unless the recipient has an "established business relationship" with the sender, or unless another exception applies.  47 U.S.C. § 227(b)(1)(C).  The TCPA creates a private right of action for recipients of unsolicited faxes and provides for the recovery of actual damages or statutory damages of $500 for each violation, whichever is greater.  Id. § 227(b)(3)(B).  The court may treble the damages available to the recipient if it finds that the sender acted "willfully or knowingly."  Id. § 227(b)(3)(C).

## FACTUAL OVERVIEW

Plaintiff filed this action in the Circuit Court of Cook County, Illinois, alleging that

---

that the United States is aware of, have found the TCPA constitutional.  The three that did not were also reversed on appeal.  See Rudgayzer & Gratt v. Enine, Inc., 779 N.Y.S.2d 882 (N.Y. App. Term 2004) (reversing two trial courts); The Chair King, Inc., v. GTE Mobilnet of Houston, Inc., No. 14-00-00711-CV, 2004 WL 964224 (Tex. App. May 6, 2004), rev'd, 184 S.W.3d 707 (Tex. 2006).  Additionally, Illinois state courts have uniformly upheld the TCPA.  See, e.g., Stonecrafters, Inc. v. Handleman Ins. Agency, Inc., No. 03 CH 434 (McHenry County Cir. Ct., June 22, 2004); Brill v. Becktold, No. 06 CH 1520 (Cook County Cir. Ct., October 28, 2006); Whiting Corp. v. MSI Mktg., Inc., 02 CH 6332 (Cook County Cir. Ct., Apr. 3, 2003); Eclipse Mfg. Co. v. T.J. Copy Prods., 03 CH 1344 (Lake County Cir. Ct., April 23, 2004); Robin Hill Dev. Co. v. JD&T Enters., Inc., No. 01 L 527 (DuPage County Cir. Ct., October 3, 2002).  All of these Illinois State Court decisions are included in the Appendix filed along with this memorandum.

Defendant violated the TCPA by faxing Plaintiff an unsolicited advertisement.  Class Action

Complaint ("Compl.") ¶ 11.  Defendant removed the case to this Court pursuant to 28 U.S.C. §

1441 on the basis of federal question jurisdiction.  Notice of Removal ¶ 1.  Defendant then filed a

motion to dismiss the complaint, arguing, inter alia, that the TCPA violates the First

Amendment's protection of freedom of speech and the Fifth Amendment due process protection

from excessive fines.  See Defendant's Motion to Dismiss ("Mot. to Dismiss") at 5-9.  Defendant

also argues that the TCPA does not apply to faxes received by computers and that Plaintiff's

failure to allege the manner in which the fax in question was received should result in a dismissal

of the TCPA claim.  Id. at 8-9.  The United States of America, on behalf of itself and the Federal

Communications Commission ("FCC"), has intervened in this action to defend the

constitutionality and application of the TCPA.

ARGUMENT

**I.      The TCPA Does Not Violate the First Amendment**

The TCPA's prohibition on unsolicited faxed advertisements comports with the First

Amendment's protection of the freedom of speech.  The TCPA does not target any particular

message or viewpoint, rather, it simply prevents advertisers from taking the property of others

without their consent, while still allowing commercial advertisers to send faxes to those who

agree to receive them.  Thus, several federal and state courts have held that the TCPA's limited

restrictions on commercial speech comport with the First Amendment.  See, e.g., Italia Foods,

Inc., 2007 WL 4117626 at *3; Phillips Randolph, 2007 WL 129052 at *3-4; Am. Blast Fax, Inc.,

323 F.3d at 660; Destination Ventures v. FCC, 46 F.3d 54, 57 (9th Cir.1995); Minnesota v.

Sunbelt Communs. & Mktg., 282 F. Supp. 2d 976, 984 (D. Minn. 2002); Witting Corp. v. MSI

-3-

Mktg., Inc., No 02 CH 6332 (Cook County, Ill. Apr. 3, 2003); Rudgayzer & Gratt, 779 N.Y.S.2d

at 888-90.  Despite these uniform findings to the contrary, Defendant argues that the TCPA

violates the First Amendment on free speech grounds.  Mot. to Dismiss 6.

The United States Supreme Court announced the appropriate test for determining whether

restrictions on commercial speech violate the First Amendment in Central Hudson Gas & Elec.

Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 100 S. Ct. 2343 (1980).  The Central

Hudson Court recognized the "distinction between speech proposing a commercial transaction,

which occurs in an area traditionally subject to government regulation, and other varieties of

speech," 447 U.S. at 562 (citations omitted), holding that "[t]he Constitution . . . accords a lesser

protection to commercial speech than to other constitutionally guaranteed expression."  Id. at

562-63.  Under Central Hudson, a four-part test applies to determine the validity of restrictions

placed on commercial speech.  First, the court must "determine whether the expression is

protected by the First Amendment."  Id. at 566.  Misleading speech or speech concerning

unlawful activity enjoys no First Amendment protection.  Id.  Here, the commercial speech at

issue is not alleged to be misleading or to promote unlawful activity, thus the court is required to

apply only the final three prongs of the Central Hudson test: whether the speech restrictions are

justified by a substantial governmental interest, whether they directly advance that interest, and

whether they are narrowly drawn to serve that interest.  Id.  The Central Hudson standard does

not require the legislature to employ "the least restrictive means" necessary to accomplish its

interest or to achieve a perfect fit between means and ends.  Bd. of Trs. of the State Univ. of N.Y.

v. Fox, 492 U.S. 469, 480 (1989).  The legislature need only achieve a "reasonable fit" by

adopting regulations "in proportion to the interest served."  Id. (citation omitted).

A.    **The United States Has a Substantial Interest in Eliminating the Cost-Shifting and Business Interruptions Caused by Unsolicited Commercial Faxes**

As Congress properly recognized, the United States has a substantial interest in eliminating both the disruptions and the unfair cost shifting associated with unsolicited commercial faxes. H.R. Rep. No. 102-317, at 10, 25. Numerous courts have concluded that these interests are substantial and adequately supported by the legislative record of the TCPA. See, e.g., Phillips Randolph, 2007 WL 129052, at *3; Whiting Corp. v. MSI Mktg., Inc., 02 CH 6332, at 14 (Cook Country Cir. Ct., Apr. 3, 2003); Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323 F.3d 649, 654 (8th Cir. 2003).

These substantial interests arise because the exploitation of fax machines creates two problems not seen in traditional advertising. First, the fax recipient "assumes both the cost associated with the use of the facsimile machine and the cost of the expensive paper used to print out facsimile messages." H.R. Rep. No. 102-317, at 25; See also Am. Blast Fax, Inc., 323 F.3d at 655 (finding that "the costs and amount of interference resulting from unrestrained fax advertising continue to be significant"). Second, because "[o]nly the most sophisticated and expensive facsimile machine can process and print more than one message at a time," the transmission of unsolicited advertisements precludes the fax machine owner from receiving desired messages or from sending fax messages of its own. H.R. Rep. No. 102-317, at 25. Such interruptions can last for several minutes or more at a time. Id. In contrast, the traditional junk mail recipient pays nothing for solicitations and is not inhibited from receiving other mail or from delivering its own messages. Id.

Defendant acknowledges the dual interests Congress considered in passing the TCPA, but

contends that "Congress never reviewed a single study of the magnitude of the problem" and argues that "'junk e-mails' might be even more annoying and a larger waste of time but remain unrestricted by statute." Mot. to Dismiss 7. Defendant's assertions are both incorrect and irrelevant. Defendant's assertions are incorrect because Congress clearly engaged in extensive fact-finding prior to enacting the TCPA. In 1991, Congress determined that 30 billion pages were faxed per year; that this phenomenon had been "accompanied by explosive growth in unsolicited facsimile advertising, or 'junk fax,'" H.R. Rep. No. 102-317, at 10 (1991); that a single fax advertiser "could easily deliver tens of thousands of unsolicited messages per week to other facsimile machines across the country"; and that a single junk faxer in California was routinely sending out 60,000 faxes per week and had assembled a database of 500,000 fax numbers as early as 1989. Hearing on H.R. 621, 2131 and 2184 Before the Subcomm. On Telecomm. And Fin. of the House Comm. on Energy and Commerce, 101st Cong., at 56 (1989) (Statement of Prof. Ellis). Using the price of fax paper that applied in 1989 (between 8 and 12 cents per sheet) and ignoring toner and other associated costs, that single junk faxer in California cost recipients between $250,000 and $375,000 per year. Moreover, this figure does not account for the additional costs associated with the disruption of normal fax transmissions. See 137 Cong. Rec. S9840-02, S9874 (1991), (statement of Sen. Hollings) ("These junk fax advertisers can be a severe impediment to carrying out legitimate business practices."); see also S. Rep. No. 102-178, at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1969 (finding that "unsolicited calls placed to fax machines . . . often impose a cost on the called party" and that "fax messages require the called party to pay for the paper used").

Defendant's assertions are irrelevant because appropriating the property of another

without consent is inconsistent with the time-honored view that property is significant regardless of how much is at stake.  See Phillips v. Wash. Legal Found., 524 U.S. 156, 170, 118 S. Ct. 1925, 1933 (1998) (noting the "longstanding recognition that property is more than economic value; it also consists of the group of rights which the . . . owner exercises in his dominion of the physical thing, such as the right to possess, use, and dispose of it") (internal citations and quotations omitted).  Congress appropriately recognized that although businesses have the right to advertise, they do not have the right to appropriate another's property in the process.  As such, the TCPA can be understood as an anti-conversion statute.

Defendant presents no reason for doubting the reasonableness of Congress's evidence or conclusions.  Conversely, there is strong evidence that the United States' interest in preventing the shifting of advertising costs and the interruption of fax lines is substantial.  See  Fla. Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995) (finding that the United States may justify restrictions on commercial speech "based solely on history, consensus, and simple common sense") (internal citations omitted).  These interests are similar to the range of interests that have previously been held to satisfy this element of the Central Hudson inquiry.  See, e.g., Lavey v. City of Two Rivers, 171 F.3d 1110, 1114 (7th Cir. 1999) (city's interests in traffic and aesthetics are substantial).  Thus, Congress's interests in passing the TCPA – preventing cost-shifting and interference – are sufficiently "substantial and real."  Texas v. Am. Blastfax, Inc., 121 F. Supp. 2d 1085, 1092 (W.D. Tex. 2000); see also Italia Foods, Inc., 2007 WL 4117626 at *2.

### B.    The TCPA Directly Advances the United States' Interests

In Phillips Randolph, this Court held that there "can be no question that the TCPA's prohibitions on unsolicited faxes materially alleviates the harms Congress identified as

associated with their receipt." 2007 WL 129052, at *3-4; see also Italia Foods, Inc., 2007 WL

4117626, at *3 (concluding that "the TCPA's ban on unsolicited commercial faxes directly

advances the government interest of reducing the unwanted costs that they impose"). The TCPA

is directed at that category of faxes – unsolicited commercial advertisements – which represents

the greatest burden to individuals and businesses. Prohibiting such faxes directly advances

Congress's twin objectives of preventing cost shifting and eliminating unwanted interruptions of

fax lines.

 Defendant's argument that the TCPA does not advance the government's asserted

interests because it does not ban all unsolicited faxes is without merit. The United States is not

required to "make progress on every front before it can make progress on one front."[2] United

States v. Edge Broad Co., 509 U.S. 418, 434 (1993); see also Moser v. FCC, 46 F.3d 970, 974

(9th Cir. 1995) ("Congress may reduce the volume of intrusive telemarketing calls without

completely eliminating the calls."). As this Court noted in rejecting a similar argument in

Phillips Randolph, "[f]ewer faxes mean potential recipients incur fewer costs and waste less

time." 2007 WL 129052, at *3. Moreover, commercial advertising faxes constitute the bulk of

unsolicited faxes. See Rudgayzer & Gratt v. Enine, Inc., 779 N.Y.S. 2d 882, 889 (N.Y. App.

Term 2004); see also Whiting, 02 CH 6332, at 17 (noting that Congress heard evidence that only

a small number of unsolicited messages were noncommercial).

 Defendant's reliance on City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410

(1993), is misplaced. There, the Supreme Court held that a regulation which prohibited

---

 [2] For the same reason, Defendant's argument that the TCPA does not serve a significant
government interest because it fails to ban so-called "junk e-mails," which Defendant contends
are "more annoying" and a "larger waste of time," is irrelevant. See Mot. to Dismiss 7.

-8-

newsracks which dispensed commercial handbills from public property, but allowed newsracks which dispensed newspapers on public property, bore "no relationship whatsoever to the particular interests [in safety and aesthetics] that the city h[ad] asserted." City of Cincinnati, 507 U.S. at 424 (emphasis in original). The City of Cincinnati Court also found that only a very small proportion of newsracks in question dispensed commercial material, making the regulation unlikely to materially advance the government's interests. Id. at 418.

In contrast, the TCPA bears a direct and strong relationship to the expenses and burdens incurred by fax recipients because commercial faxes are responsible for the bulk of unwarranted costs. See Rudgayzer, 779 N.Y.S. 2d at 889 ("[T]he fact that advertising faxes constitute the bulk of unsolicited faxes also distinguishes the present case from City of Cincinnati[.]"). Further, as the Eighth and Ninth Circuits have held, the "legislative history [of the TCPA] shows that TCPA's distinction between commercial and noncommercial fax advertising is relevant to the goal of reducing the costs and interference associated with unwanted faxes." Am. Blast Fax, Inc., 323 F.3d at 656 (emphasis in original); see also Destination Ventures, 46 F.3d at 57. Like non-commercial telephone calls, non-commercial faxes are "less intrusive to consumers because they are more expected." Italia Foods, Inc., 2007 WL 4117626, at *3 (citing H.R. Rep. No. 102-317, at 16). Defendant has offered no reason to doubt Congress's distinction or its conclusion that the a prohibition of unsolicited commercial faxes would directly advance the interests of the United States.

## C.    The TCPA's Limitations on Unsolicited Facsimile Advertisements Are No More Restrictive Than Necessary

The final inquiry of the Central Hudson test requires that the court determine "whether

-9-

[the regulation] is not more extensive than is necessary to serve [the asserted governmental] interest." 447 U.S. at 566; see also Fox, 492 U.S. at 480 (requiring a "reasonable fit" between the legislature's ends and the means chosen to accomplish those ends). This inquiry does not require that "there be no conceivable alternative" to the challenged regulation, "but only that the regulation not burden substantially more speech than necessary to further the government's legitimate interests." Fox, 492 U.S. at 478 (internal quotations omitted). Courts addressing the extent of TCPA's restrictions have routinely found that the "methods employed by the TCPA reasonably fit the goal of reducing the costs and wasted time produced in the receipt of unsolicited fax advertisements" and "[t]he restrictions within the TCPA are not more extensive than necessary to serve the expressed governmental interests[.]" Phillips Randolph, 2007 WL 129052, at *4.[3]

Defendant, nonetheless, suggests that Congress could have adopted a regulation allowing individuals to opt-out of receiving faxes by notifying senders that they do not want to receive more faxes. Mot. to Dismiss 8. Alternatively, Defendant claims that Congress could have established a do-not-fax list. Id. Defendant's suggestions have been considered and rejected in the context of a Central Hudson analysis. See, e.g., Italia Foods, Inc., 2007 WL 4117626, at *4; Am. Blast Fax, Inc., 323 F.3d at 659. Neither of the alternatives posited by Defendant would serve the substantial interests that Congress sought to advance as effectively as the TCPA does because, as this Court held in Phillips Randolph, "the 'alternatives' [defendant] proposes are not

---

[3] See also Brill v. Becktold, No. 06 CH 1520 (Cook County Cir. Ct., October 28, 2006); Eclipse Mfg. Co. v. T.J. Copy Prods., Inc., 03 CH 1344, at 7 (Lake County Cir. Ct. April 23, 2004); Whiting v. MSI Mktg., 02 CH 6332 (Cook County Cir. Ct., Apr. 3, 2003); Robin Hill Dev. Co. v. JD&T Enters., Inc., No. 01 L 527 (DuPage County Cir. Ct., October 3, 2002).

equivalent to those embodied in the TCPA in that they would place the burden of avoiding

unwanted faxes onto the recipient, thus undermining the remedy the statute embodies." 2007

WL 129052, at *4.

Defendant's suggestion that the existence of two conceivable alternatives restrictions

establishes the TCPA's unconstitutionality misses one of the central ideas behind the <u>Central

Hudson</u> standard of review. Congress does not need to choose the least restrictive means for

curbing the cost-shifting and interference caused by unsolicited faxes. <u>See Fox</u>, 492 U.S. at 480.

Rather, Congress need only implement regulations which are in proportion to these interests. <u>Id.</u>;

<u>see also Am. Blast Fax, Inc.</u>, 323 F.3d at 658-59 ("The Supreme Court has made it clear that the

'least restrictive means' test has no role in the commercial speech context.") (internal quotations

omitted). In assessing restrictions under the <u>Central Hudson</u> test, courts are called upon to

examine the existing regulations on their own merits to determine if they achieve a reasonable fit,

not to second-guess Congress by determining what hypothetical restrictions might be preferable.

<u>See Fox</u>, 492 U.S. at 478; <u>Kenro, Inc. v. Fax Daily</u>, 962 F. Supp. 1162, 1168-69 (S.D. Ind. 1997)

(the mere existence of "some imaginable alternative" does not establish that the TCPA is

improperly tailored to achieve Congress's purpose); <u>Whiting</u>, 02 CH 6332, at 8 ("It is not this

Court's role to substitute its judgment for that of the Congress.").

The TCPA's restrictions on fax advertising are not only reasonably fit to serve the United

States' interests, but they also have, at best, only a limited impact on the speech of advertisers.

As the Eighth Circuit explained:

> Advertisers remain free to publicize their products through any legal means; they
> simply cannot do so through an unsolicited fax. TCPA does not act as a total ban
> on fax advertising. Advertisers may obtain consent for their faxes through such

> means as telephone solicitation, direct mailing, and interaction with customers in their shops. *** It was not unreasonable for Congress to choose a system that protects those who would otherwise be forced to bear unwanted burdens over those who wish to send and receive unsolicited fax advertising. Given the cost shifting and interference imposed by unsolicited commercial faxes and the many alternatives left available to advertisers, TCPA's approach is in proportion to the interest served and is narrowly tailored to achieve the desired objective.

Am. Blast Fax, Inc., 323 F.3d at 659 (internal citations and quotations omitted). In addition to being reasonably tailored, the restrictions of the TCPA differ from the paradigmatic commercial speech case in that they are not "intended to protect the public from the content of the speech," rather, "Congress was not concerned with . . . the effect of the act of communicating." Id. at 659-60. As the TCPA's restrictions satisfy the Central Hudson test, the United States asks that this Court join numerous other courts in holding that the TCPA "passes constitutional muster" with respect to Defendant's First Amendment challenge. Phillips Randolph, 2007 WL 129052, at *4.

## II.    The TCPA Does Not Violate the Fifth Amendment

Defendant claims that the TCPA's statutory penalty of $500 per violation, see 47 U.S.C. § 227(b)(3), violates the due process guarantees under the Fifth Amendment. Mot. To Dismiss 5-6. This claim has no merit and has been squarely rejected by this Court. See Italia Foods, Inc., 2007 WL 4117626, at *4; Phillips Randolph, 2007 WL 129052, at *2-3; Sadowski v. Med1 Online, LLC, No. 07 C 2973, 2008 WL 489360, at *5 (N.D. Ill. 2008) (Aspen, J.) (Appx.). A statutory penalty comports with the Due Process Clause so long as it is not "so severe and oppressive as to be wholly disproportion[ate] to the offense and obviously unreasonable." St. Louis, Iron Mountain and S. Ry. Co. v. Williams, 251 U.S. 63, 67 (1919). Under Williams, the validity of a penalty cannot be measured, as Defendant suggests, by simply examining the ratio between the penalty and the actual damages. Id. (noting that when "the penalty is contrasted with

the overcharge possible in any instance it of course seems large, but, as we have said, its validity

is not be tested in that way").  Rather, the penalty must be "considered with due regard for the

interests of the public, the numberless opportunities for committing the offense, and the need for

securing uniform adherence to" the law.  <u>Id.</u>

As this Court has held, the TCPA readily satisfies due process requirements.  <u>See</u> <u>Phillips</u>

<u>Randolph</u>, 2007 WL 129052, at *2.  The purpose of the TCPA was not solely to compensate for

the physical cost of receiving and printing an unwanted fax advertisement, but also to account for

less easily quantified costs like business disruptions and waste of time, as well as to effectively

deter the prohibited behavior.  <u>Id.</u>; <u>see also</u> <u>Italia Foods, Inc.</u>, 2007 WL 4117626, at *4 (finding

that in calculating the penalty "Congress took into account the costs of business interruptions and

wasted time" and that "[t]he amount must be sufficient to serve as a disincentive . . . for any

potential likely senders").  Thus, while the statutory penalty may significantly exceed the cost of

printing a fax, it is appropriate in light of the larger costs associated with the proscribed behavior,

the public's interest in keeping fax lines opens, and the need to deter an increasingly problematic

practice.  <u>Phillips Randolph</u>, 2007 WL 129052, at *2-3; <u>see also</u> <u>Sadowski</u>, 2008 WL 489360, at

*5 (finding the TCPA's damage amount " not so severely disproportionate to congressional

concerns regarding junk faxes or so obviously unreasonable to make it unconstitutional").

Defendant's challenge to hypothetical damages that might be awarded for numerous

violations, Mot. to Dismiss 5, is not ripe for review at this time.  <u>Cf.</u>  <u>Murray v. GMAC Mortg.</u>

<u>Corp.</u>, 434 F.3d 948, 954 (7th Cir. 2006) (constitutional limits on damages "are best applied after

a class has been certified"); <u>Cheffer v. Reno</u>, 55 F.3d 1517, 1523 (11th Cir. 1995) (challenge

under Excessive Fines Clause not ripe until impending imposition of fine).  For this reason,

Defendant's reliance on <u>Texas v. Am. Blastfax, Inc.</u>, 164 F. Supp. 2d 892 (W.D. Tex. 2001), is misplaced. There, the Court did not rule on or even address the constitutionality of the damage provision of the TCPA. <u>Id.</u> at 900-01. Rather, the Court chose to award the plaintiff damages reflecting the plaintiff's "actual monetary loss." <u>Id.</u> (calculating the actual monetary loss to be seven cents per fax and citing the TCPA's provision allowing recovery of "actual monetary loss or . . . $500 in damages for each violation"). Further, in contrast to Defendant's contention that "a recipient's true damages are <u>de</u> <u>minimis</u>," Mot. to Dismiss 5, the Court in <u>Texas v. Am. Blastfax, Inc.</u> awarded the plaintiff $328,125.00 in <u>actual damages</u>. 164 F. Supp. 2d at 900-01 (awarding a total damage amount of $459,375 after trebling a portion of the actual damages). The fact that numerous violations of the TCPA could result in a very expensive fine does not undermine the validity of the penalty, for the Due Process Clause "does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations." <u>Phillips Randolph</u>, 2007 WL 129052, at *2; <u>see also</u> <u>Italia Foods, Inc.</u>, 2007 WL 4117626, at *4.

### III.    The TCPA Applies Broadly to All "Telephone Facsimile Machines"

Finally, Defendant argues that Plaintiff's failure to allege whether the unsolicited advertisement at issue was received via stand-alone fax machine or by a computer with a fax program should result in a dismissal of the TCPA count of Plaintiff's complaint. Although Defendant asserts this argument in the portion of his motion challenging the constitutionality of the TCPA, the argument substantively challenges the pleading requirements for a TCPA claim. <u>See</u> Mot. to Dismiss 9 ("Since Plaintiff fails to specify that the fax was received by stand-alone fax machine, Count I should be dismissed."). Without expressing an opinion as to the adequacy of Plaintiff's complaint, the government notes that the TCPA broadly applies to any "telephone

facsimile machine," which Congress defined as any "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."  47 U.S.C. § 227(a)(2).  This definition includes computers attached to or equipped with modems and computerized fax servers.[4]  See Federal Communications Commission Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, ¶ 201 ("FCC Report"), 18 FCC Rcd. 14014, 14133-34 (2003), available at http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf.

As explained above, Congress enacted the TCPA to address the disruptions and unfair cost shifting associated with unsolicited commercial faxes.  H.R. Rep. No. 102-317, at 10, 25.  Like unsolicited fax messages sent to conventional, stand-alone fax machines, unsolicited messages sent to personal computers attached to modems or sent to computerized fax servers may shift the costs of paper and toner to the recipient, if they are printed.  They may also disrupt modem lines or fax server lines, preventing or delaying the receipt of desired faxes.  As the FCC found, "such faxes may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business."  FCC Report, ¶ 203.  Additionally, "because a sender of a facsimile message has no way to determine whether it is being sent to a number associated with a stand-alone fax machine, or one associated with a personal computer or fax server, it would make little sense to apply different rules based

---

[4]  Computerized fax servers are devices which enable multiple desktops to send and receive faxes from the same or shared telephone lines.  FCC Report, ¶ 200.

on the device that ultimately received it."  Id.  Thus, if Plaintiff received the unsolicited

advertisement in question via a computer attached to a modem or fax server, his TCPA claim

should survive.[5]

CONCLUSION

For the above reasons, this Court should deny Defendant's motion to dismiss with respect

to the constitutionality of the TCPA.

---

[5]  Unsolicited facsimile messages sent as e-mail over the internet do not fall within the TCPA's prohibition because, like "junk e-mail" and "junk mail," recipients of those messages pay for nothing as a result of the solicitations and the recipients are not inhibited from receiving other mail or e-mail or from delivering their own mail or e-mail.  FCC Report, ¶ 200.

Dated: March 31, 2008                          Respectfully submitted,

                                               JEFFREY S. BUCHOLTZ
                                               Acting Assistant Attorney General

                                               PATRICK J. FITZGERALD
                                               United States Attorney

                                               THEODORE C. HIRT
                                               Assistant Branch Director

                                               /s/ Stephen J. Buckingham
                                               STEPHEN J. BUCKINGHAM
                                               Trial Attorney
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               20 Massachusetts Ave., NW Room 7119
                                               Washington, DC  20530
                                               Stephen.Buckingham@usdoj.gov
                                               (202) 514-3330

Local Counsel:                                 LINDA A. WAWZENKSI
                                               Assistant United States Attorney
                                               219 South Dearborn Street
                                               Chicago, Illinois 60604
                                               (312) 353-1994


                                               *Attorneys for the United States of America*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the following document:

> MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT

was served on March 31, 2008, in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.


      s/ Stephen J. Buckingham
STEPHEN J. BUCKINGHAM
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW Room 7119
Washington, DC 20530
Stephen.Buckingham@usdoj.gov
(202) 514-3330