UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRA HOLTZMAN, Individually and as the representative of a class of similarly-situated persons | ) ) ) ) | |
| Plaintiff, | ) ) | No. 07 C 7279 |
| v. | ) ) | Judge Blanche M. Manning Magistrate Judge Cole |
| MICHAEL P. CAPLICE, d/b/a M. P. CAPLICE & ASSOCIATES | ) ) ) | |
| Defendant. | ) | |

**UNITED STATES' APPENDIX OF UNPUBLISHED OPINIONS CITED IN ITS MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT**

The United States hereby files this appendix of unpublished opinions cited in its

Memorandum in Support of the Constitutionality of the Telephone Consumer Protection Act of

1991, 47 U.S.C. § 227, filed concurrently herewith.

Dated: March 31, 2008                    Respectfully submitted,


                                         JEFFREY S. BUCHOLTZ
                                         Acting Assistant Attorney General

                                         PATRICK J. FITZGERALD
                                         United States Attorney

                                         THEODORE C. HIRT
                                         Assistant Branch Director

                                         /s/ Stephen J. Buckingham
                                         STEPHEN J. BUCKINGHAM
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         20 Massachusetts Ave., NW Room 7119

Washington, DC  20530
Stephen.Buckingham@usdoj.gov
(202) 514-3330

Local Counsel:

LINDA A. WAWZENKSI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1994

*Attorneys for the United States of America*

vvestlaw.
Slip Copy
Slip Copy, 2007 WL 4117626 (N.D.Ill.)
(Cite as: Slip Copy)

Page 1

C
Italia Foods, Inc v. Marinov Enterprises, Inc.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
ITALIA FOODS, INC, Plaintiff,
v.
MARINOV ENTERPRISES, INC., Defendant.
No. 07 C 2494.

Nov. 16, 2007.

Brian J. Wanca, Ryan M. Kelly, Anderson & Wanca, Rolling Meadows, IL, Phillip A. Bock, Diab & Bock, LLC, Chicago, IL, for Plaintiff.
Jacqueline A. Criswell, James Kenneth Borcia, Panagiotis V. Albanis, Tressler, Soderstrom, Maloney & Priess LLP, Chicago, IL, for Defendant.
Linda A. Wawzenski, United States Attorney's Office, Chicago, IL, for Defendant United States.

### *MEMORANDUM OPINION AND ORDER*

WAYNE R. ANDERSEN, District Judge.
**\*1** This matter comes before the court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is denied.

### BACKGROUND

Plaintiff Italia Foods, Inc. ("Italia") brought a three-count complaint as a class action suit against defendant Marinov Enterprises, Inc. ("Marinov") in the Circuit Court of Lake County, Illinois alleging violations of the Telephone and Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 (Count I), the tort of conversion (Count II), and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 (Count III). Both parties are Illinois corporations. Defendant removed the action to federal court as a federal question, and the plaintiff subsequently voluntarily dismissed Counts

II and III.

The complaint alleges that the defendant faxed 25 unsolicited advertisements to the plaintiff's fax machine and at least 39 others in violation of the TCPA. Marinov moved to dismiss the complaint asserting that the TCPA is unconstitutional because: 1) the restrictions on commercial speech violate the First Amendment; 2) the excessive fines violate the Fifth and Eighth Amendments; and 3) the requirement that a state enforce a federal law violates the Tenth Amendment. The United States filed a motion to intervene, which was granted, and has submitted a brief in opposition to this motion.

### STANDARD OF REVIEW

Rule 12(b)(6) allows a motion to dismiss for failure to state a claim upon which relief can be granted. The court must accept all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in a light favorable to the plaintiff. *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 978 (7th Cir.1999). This motion tests the legal sufficiency of a pleading, not its factual accuracy. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 675 (7th Cir.2001). To survive a 12(b)(6) motion, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2). A complaint must describe the claim with sufficient detail as to give the defendants "fair notice of what the ... claim is and the grounds upon which it rests."*Bell Atl. Corp. v. Twombly,* ---U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, the "allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level.' "*EEOC v. Concentra Health Servs.,* 496 F.3d 773, 776 (7th Cir.2007) (citing *Bell Atlantic,* 127 S.Ct. at 1965).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## DISCUSSION

The TCPA prohibits using any fax machine, computer, or other device to send unsolicited advertisements to another fax machine unless the material meets an exception such as having an "established business relationship" with the sender. 47 U.S.C. § 227(b)(1)(C). The TCPA does not apply to noncommercial unsolicited faxes. A recipient of unsolicited fax advertisement has a private right of action and may recover actual damages or $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). The court may award up to $1500 per violation if the defendant acted "willfully or knowingly." 47 U.S.C. § 227(b)(3)(C). We will consider each of Marinov's constitutional challenges to the TCPA in turn.

### I. *First Amendment-Commercial Speech*

**\*2** The defendant argues that the TCPA violates the First Amendment on freedom of speech grounds. Before we begin our analysis, we note that many federal and state courts have heard this particular constitutional challenge, including this one, and found the TCPA's restriction of commercial speech to be a permissible one. *See Phillips Randolph Enters., LLC v. Rice Fields,* No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan 11, 2007); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,* 323 F.3d 649 (8th Cir.2003); *Destination Ventures v. FCC,* 46 F.3d 54, 57 (9th Cir.1995); *Minnesota v. Sunbelt Communs. & Mktg.,* 282 F.Supp.2d 976 (D.Minn.2002); *Witting Corp. v. MSI Mktg., Inc.,* No 02 CH 6332 (Cook County, Ill. Apr. 3, 2003); *CE Design, Ltd. v. Peripheral Solutions, Inc.,* No. 04 L 564 (Lake County, Ill. Mar. 8, 2005); *Rudgayzer & Gratt v. Enine, Inc.,* 4 Misc.3d 4, 779 N.Y.S.2d 882 (N.Y.App. Term 2004).

The Supreme Court has developed a four-part test to determine whether the restrictions placed upon commercial speech pass constitutional muster. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). First, we must ask whether the commercial speech concerns unlawful activity or is misleading. *Thompson v. Western States Med. Ctr.,* 535 U.S. 357, 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002); *Cent. Hudson,* 447 U.S. at 566. If so, then the commercial speech is not protected by the First Amendment. Second, if the commercial speech is protected, the governmental interest asserted must be substantial. *Thompson,* 535 U.S. at 367 (citing *Cent. Hudson,* 447 U.S. at 566). Third, the regulation must directly advance the governmental interest. *Thompson,* 535 U.S. at 367 (citing *Cent. Hudson,* 447 U.S. at 566). Finally, that regulation must not be "more extensive than is necessary to serve that interest."*Thompson,* 535 U.S. at 367 (citing *Cent. Hudson,* 447 U.S. at 566).

### a. *Substantial Government Interest*

In this case, the commercial speech at issue is not alleged to be misleading or concerning unlawful activity. Thus, we turn to the second prong of the *Central Hudson* analysis and ask whether the governmental interest asserted is substantial. In 1991, Congress noted that more than 30 billion pages of information were being faxed each year and that unsolicited advertisements, or "junk fax," had underwent an "explosive growth" in the past decade. H.R.Rep. No. 102-317, at 10 (1991). Unwanted faxes shift both the costs of advertising to the receiver and render the recipient's fax machine "unavailable for legitimate business messages while processing and printing the junk fax."*Id.* Other courts have held more recent evidentiary hearings on this issue and found that "unsolicited fax advertisements can shift to the recipient more than one hundred dollars per year in direct costs" and that "the costs and amount of interference resulting from unrestrained fax advertising continue to be significant."*Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,* 323 F.3d 649, 655 (8th Cir.2003); *see also Destination Ventures, Ltd. v. FCC,* 46 F.3d 54, 57 (9th Cir.1995). Even if the costs associated with printing faxes have been reduced in the past decade, as the defendant argues, the Supreme Court has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

long recognized that the taking of "property" is not excused even if the property lacks a positive economic or market value. *See Phillips v. Washington Legal Found.,* 524 U.S. 156, 169-170, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 452, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). Therefore, we find that the federal government has a substantial interest in preventing the costs and burdens associated with unsolicited commercial faxes.

b. *Directly Advance the Governmental Interest*

**\*3** Marinov argues that the distinction between unsolicited commercial and non-commercial faxes renders the TCPA ineffective and does not directly advance the governmental interest since both types of faxes shift costs to the recipient. The defendant likens this distinction to the regulation found unconstitutional in *City of Cincinnati v. Discovery Network, Inc.,* which treated newsracks differently depending upon whether they dispensed commercial handbills or newspapers. 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), Since both types of newsracks were afoul of the governmental stated objective-to promote the safety and attractive appearance of its streets and sidewalks, the regulation did not directly advance that purpose. *Discovery Network,* 507 U.S. at 417. This argument was specifically rejected by both the Eighth and Ninth Circuits, which found that the, "legislative history here shows that TCPA's distinction between commercial and noncommercial fax advertising is relevant to the goal of reducing the costs and interference associated with *unwanted* faxes."*Am. Blast Fax, Inc.,* 323 F.3d at 656;*see also Destination Ventures,* 46 F.3d at 57. When the TCPA was enacted, Congress found that "non-commercial calls ... are less intrusive to consumers because they are more expected."H.R.Rep. No. 102-317, at 16 (1991). The Eighth Circuit stated that "[t]here is no reason to doubt that Congress also believed for the same reason that noncommercial faxes did not present the same problem as commercial faxes and therefore distinguished between them."*Am. Blast Fax, Inc.,* 323 F.3d at 655-656. We agree and conclude that the TCPA's ban on unsolicited commercial faxes directly advances the governmental interest of reducing the unwanted costs that they impose.

*c.Not More Restrictive Than Necessary*

Having concluded that the TCPA directly advances a substantial governmental interest, the final inquiry is whether the ban on unsolicited commercial faxes is more restrictive than necessary. We note from the outset that commercial speech is not entitled to the higher protection of the "least restrictive means" test, but that there must be a "fit between the legislature's ends and the means chosen to accomplish those ends."*Am. Blast Fax, Inc.,* 323 F.3d at 658-659 (citing *Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 632, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)). Marinov contends that the nationwide "do-not-call registry" could be expanded and the same rules governing a right of action for an unauthorized telemarketing call could apply to unsolicited faxes. While these may be viable alternatives, as noted above, Congress is not required to choose the least restrictive means, merely those that are "in proportion to the interest served."*Florida Bar,* 515 U.S. at 632 (internal quotations omitted). We find that the TCPA satisfies this requirement as it places the burden on the senders of unsolicited commercial faxes to obtain consent, rather than upon the recipient to "opt-out" as defendant's proposal would so impose. *See Am. Blast Fax, Inc.,* 323 F.3d at 659;*Phillips Randolph Enters.,* 2007 WL 129052 \*4.

**\*4** Having found that all prongs of the *Central Hudson* test have been satisfied, we conclude that the TCPA's ban on unsolicited commercial faxes is a permissible restriction on commercial speech not in violation of the First Amendment.

IV. *Fifth and Eight Amendments-Due Process and Excessive Damages*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The TCPA imposes actual damages or $500 (for inadvertent violations) to $1500 (for knowing or willful violations) per each violation, whichever is greater. 47 U.S.C. § 227(b)(3). The defendant contends that these are excessive damages that violate the due process clause of the Fifth Amendment and impose excessive fines that violate the Eighth Amendment. Marinov may correctly recognize that such damages are 10,000 times the actual cost in the case of inadvertent faxes and 30,000 times in the case of knowing or willful violations, but is mistaken in suggesting that the damages must be proportional to the harm inflicted by unsolicited faxes in order to withstand the due process clause of the Fifth Amendment. *St. Louis, I.M. & S.R. Co. v. Williams,* 251 U.S. 63, 66-67, 40 S.Ct. 71, 64 L.Ed. 139 (U.S.1919); *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Communs., L.P.,* 329 F.Supp.2d 789, 809-810 (D.La.2004). In arriving at such a penalty, Congress also took into account the costs of business interruptions and wasted time. The amount must be sufficient to serve as a disincentive to the practice of faxing unsolicited advertisements for any potential likely senders. H.R.Rep. No. 102-317, at 10 (1991). Thus, these damages are not "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."*Williams,* 251 U.S. at 67.

With regard to defendant's Eighth Amendment argument, because these damages are paid to the individual plaintiff, not the government, it is not a fine within the meaning of the Constitution. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219, (1989) ("[T]he word 'fine' was understood to mean a payment to a sovereign as punishment for some offense."); *Austin v. United States,* 509 U.S. 602, 609-610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) ("The Excessive Fines Clause thus limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'").

Having found that the damages assessed by the TCPA do not constitute excessive fines or violate due process, we turn to defendant's Tenth Amendment challenge.

### V. *Tenth Amendment-Illinois State Courts*

The defendant argues that because Illinois law does not provide an express right of action for plaintiffs in state court, requiring Illinois courts to enforce the TCPA violates the Tenth Amendment. We find no basis for this argument as the Seventh Circuit has expressly concluded that TCPA claims brought in state court may be removed to federal court based upon either diversity or "arising under" jurisdiction. *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 451 (7th Cir.2005); *see also Benedia v. Super Fair Cellular, Inc.,* No. 07 C 01390, 2007 WL 2903175, at *1 (N.D.Ill.2007). The *Brill* Court recognized that its decision conflicted with other federal circuits that have held that state courts possess exclusion jurisdiction over TCPA claims. 427 F.3d at 450. Finally, although the Illinois Supreme Court has been silent on this matter, the Illinois Appellate Court has explicitly recognized a private right of action in Illinois for TCPA claims. *First Capital Mortg. Corp. v. Union Fed. Bank of Indianapolis,* 374 Ill.App.3d 739, 313 Ill.Dec. 324, 872 N.E.2d 84, 87 (Ill.App. 1st Dist.2007). Thus, defendant's Tenth Amendment argument also fails.

### CONCLUSION

*5 For the foregoing reasons, defendant's motion to dismiss [17] on the grounds that the TCPA is unconstitutional is denied.

It is so ordered.

N.D.Ill.,2007.
Italia Foods, Inc v. Marinov Enterprises, Inc.
Slip Copy, 2007 WL 4117626 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 129052 (N.D.Ill.)
**(Cite as: Slip Copy)**

Page 1

**C**
Phillips Randolph Enterprises, LLC v. Rice Fields
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
PHILLIPS RANDOLPH ENTERPRISES, LLC,
Plaintiff,
v.
RICE FIELDS d/b/a Baisi Thai Restaurant, Inc.,
Thai Oakbrook, Inc., Ying C. Chen; teh Huei Lu,
and John Does 1-10, Defendants.
**No. 06 C 4968.**

Jan. 11, 2007.

Thomas A. Zimmerman, Jr., Zimmerman and Asso-
ciates, Chicago, IL, for Plaintiff.
James R. Branit, Bryan Eliot Curry, Bullaro & Car-
ton, Chicago, IL, for Defendants.

*MEMORANDUM OPINION*

KOCORAS, J.
*\*1* This matter comes before the court on the mo-
tion of Defendants Rice Fields, Inc., Thai Oak-
brook, Inc., Ying C. Chen, Teh Huei Lu, and John
Does 1-10 (collectively referred to herein as "Rice
Fields") to dismiss the complaint of Plaintiff Phil-
lips Randolph Enterprises LLC ("Phillips"). For the
reasons set forth below, the motion is denied.

BACKGROUND

According to the complaint, Rice Fields, or
someone acting under their direction, faxed Phillips
a one-page menu for a Chicago restaurant called
Baisi Thai, Phillips alleges that it had no prior rela-
tionship with Rice Fields and did not authorize Rice
Fields to send it advertisements by fax. In addition
to a listing of available dishes and corresponding
prices, the menu provided information on how to
"have your number removed," which apparently
would allow recipients to indicate that they did not
wish to receive additional faxes.

Phillips filed a three-count complaint in the Circuit
Court of Cook County, asserting violations of the
Telephone Consumer Protection Act ("TCPA"), 47
U.S.C. § 227; violations of the Illinois Consumer
Fraud Act, 815 ILCS 505/2; and the tort of conver-
sion. The complaint also set forth class allegations,
interpreting the statement regarding removal of
numbers to indicate that Rice Fields had sent the
unsolicited fax to others as well.

Rice Fields removed the case to our court and
moved to dismiss the complaint in its entirety pur-
suant to Fed.R.Civ.P. 12(b)(6). Phillips then volun-
tarily dismissed the two state law claims, leaving
solely the TCPA count.

LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test
the legal sufficiency of a complaint. *Gibson v. City
of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). In
ruling on a motion to dismiss, a court must draw all
reasonable inferences in favor of the plaintiff, con-
strue allegations of a complaint in the light most fa-
vorable to the plaintiff, and accept as true all well-
pleaded facts and allegations in the complaint.
*Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d
459, 461 (7th Cir.1993); *Perkins v. Silverstein,* 939
F.2d 463, 466 (7th Cir.1991). The allegations of a
complaint should not be dismissed under this rule
unless it is patently clear that the plaintiff cannot
prove any set of facts in support of the claim that
could entitle him to relief. *SeeConley v. Gibson,*
355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80
(1957). A pleading need only convey enough in-
formation that the defendant is able to understand
the gravamen of the complaint. *Payton v. Rush-
Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623,
627 (7th Cir.1999). With these principles in mind,
we consider the instant motion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

DISCUSSION

In pertinent part, the TCPA prohibits using a fax machine, computer, or other device to send unsolicited advertisements to fax machines. 47 U.S.C. § 227(b)(1)(C). Recipients of unsolicited fax advertisements may sue for actual damages incurred from the receipt of the advertisement or $500 per violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). If a violation is found to be willful or knowing, the damage award may be trebled. 47 U.S.C. § 227(b)(3).

*2 Rice Fields contends that the complaint fails to state a claim because the TCPA is unconstitutional. It sets out two challenges to the statute's validity. First, it contends that the minimum $500 award is so large in comparison to the amount of damages alleged by Phillips that application of the TCPA in this setting would offend the due process guarantee of the Fifth Amendment. Second, it argues that the statute on its face is a violation of the First Amendment under the test set forth in *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). We examine each argument in turn.

A. Due Process Challenge

Though, as noted above, the complaint contains class allegations, no class has yet been certified. Thus, we confine our consideration to Phillips' individual assertions. In support of its argument that the $500 minimum award would be unconstitutionally excessive in this case, Rice Fields relies heavily on recent Supreme Court jurisprudence striking down state jury awards of punitive damages that vastly exceed corresponding compensatory awards. *State Farm Mutual Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Rice Fields insists that the standards set out in those cases apply to statutory settings as well as jury awards because those cases sought guidance from

others involving statutory damages, such as *St. Louis, Iron Mountain, and Southern Railway Co. v. Williams,* 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919) and *Waters-Pierce Oil Co. v. Texas,* 212 U.S. 86, 29 S.Ct. 220, 53 L.Ed. 417 (1909).

*State Farm* and *BMW* both examined jury awards and focused on issues of notice to defendants of the severity of punishment that could be imposed. While it is certainly true the results reached in *State Farm* and *BMW* were in part based upon guidance from cases involving legislatively determined damage amounts, considerations pertinent to the validity of jury awards are not the same as those attendant to damage amounts set by statutes. Rather than looking retrospectively at a particular and established fact situation, the legislature must choose a benchmark that will be appropriate to many different situations, as well as taking into account considerations such as the public interest. When, as in this case, there are "numberless opportunities for committing the offense," the legislature is justified in establishing an amount of damages that could be oppressive in other settings. *Williams,* 251 U.S. at 67, 40 S.Ct. at 73.

Contrary to Rice Fields' contention, the harm suffered from the actions targeted by the statute are not limited to the cost of materials used to print the fax. In choosing $500 as the minimum penalty for the TCPA, Congress also took into account harm that would be difficult to quantify, such as business interruption costs and wasted time. *See Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1166 (S.D.Ind.1997). In addition, the statute aimed to curb the practice of shifting advertising costs to an unwilling recipient even if only in a single instance. *Id.* The amount chosen is high enough to serve as a disincentive to this practice in the industry as a whole. As a result, the severity of the potential punishment is not out of proportion with the offense or obviously unreasonable, even where the transmission consists of a single page. *See Williams,* 251 U.S. at 67, 40 S.Ct. at 73.

*3 In its reply, Rice Fields states that $500 would

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be a financially feasible amount if it were imposed, but the potential damages that could result from a class action involving many separate violations would result in crippling numbers. This argument is a nonstarter. Though the amount of damages could become very high if the statute is violated numerous times, as in the context of a class action, the purpose of the statute is to combat transmission of unsolicited fax advertisements. The statute accomplishes that purpose by making the practice prohibitively expensive, which is an acceptable means of accomplishing the statute's goal of deterrence. Contrary to Rice Fields' implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.

B. First Amendment Challenge

In its second challenge, Rice Fields contends that the TCPA represents an unconstitutional abridgement of its First Amendment right to engage in commercial speech by faxing its menus. According to Rice Fields, the TCPA cannot pass muster under the four-part test established for commercial speech in *Central Hudson Gas & Elec. Corp. v. Publ. Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Under this test, if commercial speech is within the ambit of the First Amendment (i.e., concerns lawful activity and is not misleading), the government must have a substantial interest in regulating it. *Seeid.* The regulation must directly advance the interest at issue, and it must not be more extensive than necessary to serve the interest the government has asserted. *Seeid.*

There is no dispute that the menu concerned lawful activity and was not misleading, so the first part of the test is satisfied. With regard to the second prong, Rice Fields contends that Congress did not advance any empirical data to support the significance of the asserted interests of preventing cost shifting and time wasted. In support of its contention that such data is a necessary prerequisite to a legislated restriction on speech, Rice Fields relies on *Edenfield v. Fane,* 507 U.S. 761, 771, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993). However, nothing in *Edenfield* undermines the validity of the TCPA. The case states that a governmental body seeking to restrict commercial speech must set forth harms that are real, not speculative or the product of conjecture. *Seeid.* As the Eighth Circuit noted in examining a similar challenge to the TCPA, a legislative body can establish the reality of a harm by means other than the empirical studies that Rice Fields insists are mandatory, and Congress used acceptable alternative bases when enacting the TCPA. *Missouri ex rel. Nixon v. American Blast Fax, Inc.,* 323 F.3d 649, 654 (8th Cir.2003).

With respect to the third factor, Rice Fields contends that exceptions within the statute for certain types of faxes render the TCPA incapable of directly advancing the government interest in protecting against unsolicited faxes. However, there can be no question that the TCPA's prohibitions on unsolicited faxes materially alleviates the harms Congress identified as associated with their receipt. *SeeEdenfield,* 507 U.S. at 771, 113 S.Ct. at 1800. Fewer faxes mean potential recipients incur fewer costs and waste less time.

*4 Finally, Rice Fields argues that the provisions of the TCPA are more extensive than necessary to serve the interest identified because there were other means that Congress could have employed, such as allowing fax recipients to opt out of receiving additional faxes by contacting the advertiser or seeking inclusion on a "do not fax" list. This argument fails for two reasons. First, the Supreme Court has made clear that *Central Hudson* does not require a legislature to choose the least restrictive means available in order to satisfy the last factor of the test it sets forth. *SeeLorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 556, 121 S.Ct. 2404, 2422, 150 L.Ed.2d 532 (2001). The methods employed by the TCPA reasonably fit the goal of reducing the costs and wasted time produced in the receipt of unsolicited fax advertisements, so the restriction is not more extensive than necessary. *Seeid.* Second, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"alternatives" Rice Fields proposes are not equivalent to those embodied in the TCPA in that they would place the burden of avoiding unwanted faxes onto the recipient, thus undermining the remedy the statute embodies. The restrictions within the TCPA are not more extensive than necessary to serve the expressed governmental interests, and the statute passes constitutional muster under *Central Hudson.* Consequently, Count I of the complaint states a claim upon which relief can be granted, and the motion to dismiss must be denied.

## CONCLUSION

Based on the foregoing, Rice Fields' motion to dismiss Count I of the complaint is denied.

N.D.Ill.,2007.
Phillips Randolph Enterprises, LLC v. Rice Fields
Slip Copy, 2007 WL 129052 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                   Page 1
Slip Copy, 2008 WL 489360 (N.D.Ill.)
(Cite as: Slip Copy)

Sadowski v. Med1 Online, LLC
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Dr. Francis SADOWSKI, Plaintiff,
v.
MED1 ONLINE, LLC, and Joes Does 1-10, De-
fendants.
No. 07 C 2973.

Feb. 20, 2008.

Cathleen M. Combs, Daniel A. Edelman, Dulijaza
Clark, James O. Latturner, Edelman, Combs, Lat-
turner & Goodwin, LLC, Chicago, IL, for Plaintiff.
Spencer J. Marks, Bruce Michael Friedman, Jonath-
an D. Rosen, Laser, Pokorny, Schwartz, Friedman
& Economos, P.C., Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge.
**\*1** Presently before us are Plaintiff Dr. Francis Sad-
owski's ("Plaintiff") Preliminary Motion for Class
Certification, Defendant Med1Online, LLC's
("Med1") Motion to Strike Plaintiff's Preliminary
Motion for Class Certification, and Med1's Motion
to Dismiss. For the reasons set forth below, we
deny all of the above motions.

### BACKGROUND

Plaintiff alleges that on or about October 13, 2006,
he received two identical unsolicited faxes advert-
ising Med1's products, despite no prior relationship
with Med1. (Compl.¶¶ 7, 12). He also alleges that
Med1 was responsible for sending these faxes and
derived economic benefit from them. (*Id.* ¶¶ 9, 10).

On May 2, 2007, Plaintiff filed its first amended
complaint in Illinois state court against Med1, a
Colorado corporation, and John Does 1-10, the

"other natural or artificial persons that were in-
volved in the sending of the facsimile advertise-
ments."(*Id.* ¶¶ 4, 5). His complaint alleged viola-
tions of the Telephone and Consumer Protection
Act, 47 U.S.C. § 227 ("TCPA"), violations of the
Illinois Consumer Fraud Act, 815 ILCS 505/2
("ICFA"), and a state law conversion claim. On
May 29, 2007, Med1 removed this action to our
court.

Since removal, there have been numerous motions
filed. Med1 filed a Motion to Dismiss on July 18,
2007. On September 7, 2007, Plaintiff filed a Pre-
liminary Motion for Class Certification. On
November 27, 2007, Med1 filed a motion to strike
Plaintiff's class certification motion. Also on
November 27, 2007, Med1 filed a Rule 68 Offer of
Judgment. On December 11, 2007, Plaintiff filed a
Motion to Declare Offer of Judgment Ineffective.
Finally, on December 13, 2007, we granted the
United States's Motion to Intervene.

### ANALYSIS

As indicated above, this Opinion involves three
motions: (A) Med1's Motion to Strike Plaintiff's
Preliminary Motion for Class Certification; (B)
Plaintiff's Preliminary Motion for Class Certifica-
tion; (C) Med1's Motion to Dismiss. We address
each of these motions in turn below.

### A. Med1's Motion to Strike Plaintiff's Prelimin-
ary Motion for Class Certification

Med1 argues that we should strike Plaintiff's Mo-
tion for Class Certification because it is premature,
intended only to delay its pending Motion to Dis-
miss, and brought in bad faith. We disagree.

First, Federal Rule of Civil Procedure 23(c)(1) re-
quires that a district court decide class certification
issues "at an early practicable time." In spite of this
language, Med1 argues that its Motion to Dismiss

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

should be decided before Plaintiff's class certification motion because it was filed as Med1's "opening move" and therefore fits within the exceptions listed in *Illinois State Rifle Ass'n v. State of Illinois,* 717 F.Supp. 634, 639 n. 12 (N.D.Ill.1989) (deciding motion to dismiss first because it was defendant's "opening move" and the complaint was "facially suspect in more than one respect that appeared incurable"). However, the Seventh Circuit has rejected this reasoning and has maintained that "[t]he court must decide promptly whether the case should proceed as a representative action, without regard to the virtues of the plaintiffs' legal theory."*Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992); *see also Hart v. Sheahan,* 396 F.3d 887, 894 (7th Cir.2005). Therefore, we must decide Plaintiff's Motion for Class Certification even before turning to Med1's motion to dismiss.

**\*2** Med1 also contends that we should strike the Motion for Class Certification because it lacks good faith. Med1 argues that Plaintiff filed its motion prematurely only to avoid the risk that Med1 would file a Rule 68 Offer of Judgment, which might render class certification moot. *See White v. Humana Health Plan,* No. 06 C 5546, 2007 WL 1297130, at \*6-7 (N.D.Ill. May 2, 2007). Plaintiff's filing may have been a strategic move, however, that is not a reason for striking its motion. This is particularly the case given that Plaintiff could have filed the motion for certification up to ten days after the filing of an Offer of Judgment and still avoided mootness. *See W. Ry. Devices Corp. v. Lusida Rubber Prods. Inc.,* No. 06 C 0052, 2006 WL 1697119, at \*2-3 (N.D.Ill. June 13, 2006) (demonstrating the uniform consensus in the Northern District of Illinois that "filing a motion to certify a class during the ten day period after a defendant makes an offer of judgment prevents mootness of a plaintiff's claim").

Finally, Med1 argues that Plaintiff's bad faith is evidenced by the fact that he is unable to establish *that anyone other than Plaintiff received the faxes* at issue. Regardless of the motivation behind

Plaintiff's motion for class certification, if Plaintiff's motion is "premature" (i.e., if Plaintiff cannot establish the class requirements of Rule 23), then the class certification motion will be denied and need not be stricken. Accordingly, Med1's Motion to Strike is denied.

## B. Plaintiff's Preliminary Motion for Class Certification

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."Fed.R.Civ.P. 23(a). If the numerosity, commonality, typicality, and adequacy requirements are satisfied, the plaintiff must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b). Fed.R.Civ.P. 23(b); *Cavin v. Home Loan Ctr., Inc.,* 236 F.R.D. 387, 391 (N.D.Ill.2006). Here, Plaintiff seeks certification under Rule 23(b)(3), which permits class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy."Fed.R.Civ.P. 23(b)(3).

Plaintiff bears the burden of showing that the proposed class meets the requirements for certification and that the "class is indeed identifiable as a class."*Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir.2006); *see also Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 596 (7th Cir.1993); *Hernandez v. Midland Credit Mgmt., Inc.,* 236 F.R.D. 406, 410 (N.D.Ill.2006). In evaluating a motion for class certification, we do not examine the *merits* of the case. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974); *Retired Chi. Po-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*lice Ass'n,* 7 F.3d at 598. In addition, we retain broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir.1998); *Cavin,* 236 F.R.D. at 391;*Murray v. New Cingular Wireless Servs., Inc.,* 232 F.R.D. 295, 298 (N.D.III.2005).

**\*3** Before considering the list of Rule 23 requirements, we must address the implied requirement that the class as defined should be sufficiently identifiable. *Oshana,* 472 F.3d at 513;*see also Alliance to End Represssion v. Rochford,* 565 F.2d 975, 977-78 (7th Cir.1977) (explaining that a class definition must be "sufficiently definite to permit ascertainment of the class members"); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* No. 06 C 949, 2007 WL 43 653 59, at \*2 (N.D.III.Dec. 13, 2007); *Pastor v. State Farm Mut. Auto. Ins. Co.,* No. 05 C 1459, 2005 WL 2453900, at \*2 (N.D.III. Sept.30, 2005), *aff'd,*487 F.3d 1042 (7th Cir.2007). If a class definition requires "the court to conduct an inquiry into the merits of each class member's claim," then it is not sufficiently definite. *Id.; see also Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D.Ind.1997); *Drinkman v. Encore Receivable Mgmt., Inc.,* No. 07-C-363-S, 2007 WL 4458307, at \*2 (W.D.Wis. Dec.7, 2007).

Plaintiff's class definition includes:
(a) all persons with Illinois fax numbers; (b) who, on or after a date four years (Telephone Consumer Protection Act-Count I), three years (Illinois Consumer Fraud Act-Count II), or five years (conversion-Count III), prior to the filing of this action, (c) were sent advertising faxes by defendant *(d) and with respect to whom defendant cannot provide evidence of express consent or an established business relationship prior to the transmission of the faxes.*

(Plaintiff's Mot. for Class Cert. at 1) (emphasis added). The fourth requirement of this class virtually mirrors the statutory language of the TCPA and would require the court to investigate-and the Defendants to provide evidence regarding-the relation-

ship between each potential class member and the Defendants. *Kenro,* 962 F.Supp. at 1169. In a practical sense, requiring a court to evaluate the facts surrounding the alleged transmission of each fax would "swamp the benefits of class-action treatment."*Pastor,* 487 F.3d at 1047 (discouraging class-action treatment if a separate evidentiary hearing is required for each class member's claim). Thus, Plaintiff's class is not sufficiently identifiable to permit certification.[FN1]

> FN1. While we treat this issue as failure to define a sufficiently identifiable class, we also note that some courts have addressed this issue as a failure to meet the "commonality" and "typicality" requirements of Rule 23. *See Kenro,* 962 F.Supp. at 1169;*Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 404 (E.D.Pa.1995). In addition other courts have treated it as a failure to meet the predominance requirement of Rule 23(b)(3).*Kenro,* 962 F.Supp. at 1169 n. 6. Regardless of the precise name given to the requirement, however, Plaintiff's alleged class is improper.

In addition, federal courts have denied class certification in cases involving nearly identical class definition language. *See G .M. Sign, Inc.,* No. 06 C 949, 2007 WL 4365359, at \*3 (denying class certification based upon a virtually identical class definition because it would improperly require the defendant to show the "lack of defense, namely proof of express permission or invitation prior to the receipt of the fax advertisement"); *Kenro,* 962 F.Supp. at 1169 (holding that an investigation into whether faxes were sent with express invitation or permission requires a factual inquiry with regard to each class member and thus is not permitted); *Forman,* 164 F.R.D. 400 (denying class certification based on identical language because it would improperly require the court to delve into liability issues).

**\*4** Plaintiff argues that we should certify the class nonetheless because other courts have certified

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

class actions under the TCPA. However, we note that many of Plaintiff's cases involve state law and also that none of these cases are binding on this court. In addition, Plaintiff argues that class certification here is proper because defendants have the burden of proving an established business relationship under the TCPA. We agree with Plaintiff's argument that defendants have the burden of proving an established business relationship under the TCPA. *In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006,* 21 F.C.C.R. 3787, 3794 (April 6, 2006) [hereinafter "FCC Order"]. However, the issue presented at this juncture is not whether or not Med1 will have the burden of proof regarding its defenses, but instead whether Plaintiff's alleged class is ascertainable and whether class treatment is the proper vehicle for determining liability in this case. Because the determination of Plaintiff's class would involve highly fact-specific inquiries into the circumstances surrounding the transmission of each fax, we find that the class is not sufficiently identifiable and deny Plaintiff's Preliminary Motion for Class Certification.

### C. Med1's Motion to Dismiss

Med1 argues that we should dismiss Plaintiff's complaint because: (1) the TCPA violates the Due Process Clause and (2) the faxes at issue were not "unsolicited advertisements" under the TCPA. In addition, Med1 argues that if we dismiss Plaintiff's TCPA claim, we should also decline to exercise supplemental jurisdiction over Plaintiff's ICFA and conversion claims. We address these arguments in turn below.

### *1. Standard of Review*

A court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) when "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir.1990). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."*Bell Atlantic Corp. v. Twombly,* ---- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).

### *2. Due Process*

Med1 argues that Plaintiff's complaint should be dismissed because the TCPA's $500 statutory damage award is disproportionate to the offense and therefore violates the Due Process Clause of the Fifth Amendment.

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, any unsolicited advertisement."47 U.S.C. § 227(b)(1)(c). The statute authorizes a court to impose the greater of actual damages or $500 for each violation. *Id.* § 227(b)(3). In addition, the court has discretion to award up to $1500 for knowing or willful violations. *Id.* The congressional purpose behind this statute was two-fold. First, it was aimed at deterring the practice of shifting advertising costs to unwilling recipients, such as the cost of the materials used to print unsolicited faxes. *Phillips Randolph Enters., LLC v. Rice Fields,* No. 06 C 4968, 2007 WL 129052, at *2 (N.D. Ill. Jan 11, 2007); *see also*H.R. Rep. 102-317, at 10. Second, Congress recognized the unquantifiable harmful effects of occupying the recipient's fax machine, "such as business interruption costs and wasted time."*Phillips,* No. 06 C 4968, 2007 WL 129052, at *2;*see also*H.R. Rep. 102-317, at 10.

**\*5** The Supreme Court has held that a statutory damages provision, such as the one at issue, only

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

violates Due Process if it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."*St. Louis, Iron Mount & S. R.R. Co. v. Williams,* 251 U.S. 63, 67, 40 S.Ct. 71, 64 L.Ed. 139 (1919); *see also Arrez v. Kelly Servs., Inc.,* 522 F.Supp.2d 997, 1008 (N.D.Ill.2007)."In determining whether the penalty is grossly disproportionate, 'the fine need only bear some relationship to the offense's gravity; this is not a proportionality inquiry.'"*Id.* (quoting *United States ex rel. Tyson v. Amerigroup Ill., Inc.,* 488 F.Supp.2d 719, 744 (N.D.Ill.2007)).

Courts have routinely upheld the constitutionality of TCPA's statutory damages provision.[FN2]For example, in *Phillips,* the court explained that TCPA's statutory damage provision is constitutional because the amounts are high enough to further the statute's purpose and "the severity of the potential punishment is not out of proportion with the offense or obviously unreasonable, even where the transmission consists of a single page."*Phillips,* No. 06 C 4968, 2007 WL 129052, at *2;*see also Italia Foods Inc. v. Marinov. Enters., Inc.,* No. 07 C 2494, 2007 WL 4117626, at *4 (N.D.Ill. Nov.16, 2007) (justifying the TCPA's statutory damages because "[t]he amount must be sufficient to serve as a disincentive to the practice of faxing unsolicited advertisements for any potential likely senders").[FN3]

> FN2. The courts that have found this provision unconstitutional all appear to have been reversed on appeal. *See Missouri ex. rel. Nixon v. Am. Blast Fax,* 196 F.Supp.2d 920, 934 (E.D.Mo.2002), *rev'd,*323 F.3d, 649, 660 (8th Cir.2003); *see also Rudgayzer & Gratt v. Enine, Inc.,* 193 Misc.2d 449, 749 N.Y.S.2d 855 (Civ.Ct.2002), *rev'd,*4 Misc.3d 4, 779 N.Y.S.2d 882 (App. Term 2004); *The Chair King, Inc. v. GTE Mobilnet of Houston,* 135 S.W.3d 365 (Tex.App. 14th Dist.2004), *rev'd,*184 S.W.3d 707 (Tex.2006).

> FN3. We acknowledge that much of Med1's motion focuses upon the alleged

flawed reasoning of the court in *Kenro Inc.,* 962 F.Supp. 1162. (Mot. to Dismiss at 6-8). However, other courts in our district, such as in *Phillips* and *Italia Foods,* have upheld the statute based upon their own independent legal analysis, as we do here.

Med1 argues that in spite of these cases the provision is unconstitutional because the legislative record contains no specific empirical findings to support imposition of a $500 penalty. Med1 contends that this is particularly egregious because the statutory penalty amounts to "approximately 2500 times the actual damage."(Mot. to Dismiss at 9). Med1 is correct that the congressional record does not include precise damage calculations, such as the cost of ink and paper for each unsolicited fax, however, the record does contain information to justify the damages amount. For example, Congress justified the penalty because unwanted faxes not only force a recipient to bear the costs of advertising, such as ink and paper, but also less quantifiable costs, such as the interference with and interruption of the recipient's actual business communications. H.R.Rep. No. 102-317, at 10, 25. Given Congress's explanation, we find that the amount is not so severely disproportionate to congressional concerns regarding junk faxes or so obviously unreasonable to make it unconstitutional. *See also Italia Foods,* No. 07 C 2494, 2007 WL 4117626, at *4 (finding no Due Process violation even though a defendant may be required to pay up to 30,000 times the recipient's actual cost of receiving an unwanted fax).

Med1 also argues that Supreme Court jurisprudence forbids damages which are so disproportionate to the actual harm suffered. To support this argument, Med1 cites to *BMW v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and *State Farm Mutual v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Those cases are clearly distinguishable, however, because they involve the constitutionality of excessive punitive damages awarded by juries and not statutorily-prescribed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

damage awards. *See Arrez,* 522 F.Supp.2d at 1008 ("[T]hose cases are not relevant to statutory penalties."); *Phillips,* No. 06 C 4968, 2007 WL 129052, at *2 ("[C]onsiderations pertinent to the validity of jury awards are not the same as those attendant to damage amounts by statute.").

*6 Med1 claims that these cases are still relevant to class actions where statutory damages are aggregated to amounts which could potentially bankrupt a small business defendant. (Mot. to Dismiss Reply at 5). The Seventh Circuit has held, however, that such reasoning as applied to statutory damages is impermissible. *Murray v. GMAC,* 434 F.3d 948, 953 (7th Cir.2006) (reversing district court decision that denied class certification even though the defendant would face billions of dollars for violations of the Fair Credit Reporting Act because "[t]he reason that damages can be substantial ... does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1000 per person").[FN4]

> FN4. In any event, this argument is probably moot given that we are denying class certification.

For the reasons stated above, Med1's arguments are unavailing and we hold that the statute is constitutional.

### 3. Unsolicited Advertisement

Med1 argues that even if the TCPA is constitutional, Plaintiff's claim must still be dismissed because the faxes at issue do not qualify as "unsolicited advertisements," as defined in the statute.

The statute defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without the person's prior express invitation or permission, in writing or otherwise."47 U.S.C. § 227(a)(5). Thus there are at least two permissible fax types under the TCPA: (1) where the sender and the recipient have

an established business relationship; or (2) if the fax is noncommercial in nature.

To qualify as the first permissible fax type, the FCC focuses on the relationship between the sender and the recipient to determine whether a fax qualifies as an"unsolicited advertisement." FCC Order at 3813-14. If the sender and the recipient already have an established business relationship, then the fax is deemed "transactional" and permitted. *Id.* In this case, Plaintiff alleges that he had no prior relationship with Med1 and that he had not authorized any fax transmission. (Compl.¶ 10). Since we must accept all of Plaintiff's allegations as true at this stage of the proceedings, we may not dismiss Plaintiff's claim based upon an existing relationship with Med1.

Second, even without an established business relationship, a fax is not an "unsolicited advertisement" when it contains "messages that do not promote a commercial product or service."FCC Order at 3810; *see also Phillips Randolph Enters., LLC v. Adler-Weiner Research Chi., Inc.,* No. 06 C 5111, 2007 WL293928, at *1 (N.D.Ill. Jan. 30., 2007). For example, this includes "messages involving political or religious discourse, such as a request for a donation to a political campaign, political action committee or charitable organization."FCC Order at 3810. In addition, faxes are considered noncommerical if they are purely informational, such as industry news articles, legislative updates, or employee benefit information, and the sender's "primary purpose is informational, rather than to promote commercial products."*Id.* at 3814.

*7 Med1 argues that Plaintiff's TCPA claim must be dismissed because the fax was noncommercial, since it did not promote a product or service, and because the faxes were merely informational. Plaintiff's complaint alleges that Med1, "as the entity whose products or services were advertised in the faxes, derived economic benefit from the sending of the faxes."(Compl.¶ 10). In addition to the alleged economic benefit Med1 may have received from the faxes, an examination of the two identical

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

faxes at issue appears to support to Plaintiff's allegations regarding the potential commercial in nature of the faxes.[FN5] Therefore, Plaintiff has adequately stated a claim that Med1's faxes amounted to a "unsolicited advertisements" under the TCPA, and Med1's motion to dismiss is denied.

> FN5. While we do not hold as a matter of law that the faxes at issue are "commercial" at this point in the litigation, the information in the faxes is sufficient to support the potential accuracy of Plaintiff's allegations. For example, the faxes explicitly state that Med1 is in the "Asset Acquisition Services" business and appear to use language that might be geared toward acquiring new customers. While Med1 does not list any prices on its forms, it does claim to pay "TOP DOLLAR" for used medical equipment, describes its company as "a better way to buy medical equipment," and urges recipients to "Call us!" or visit its website.

### CONCLUSION

For the reasons described above, we deny Med1's Motion to Strike Plaintiff's Preliminary Motion for Class Certification, Plaintiff's Preliminary Motion for Class Certification, and Med1's Motion to Dismiss. It is so ordered.

N.D.Ill.,2008.
Sadowski v. Med1 Online, LLC
Slip Copy, 2008 WL 489360 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

STONECRAFTERS, INC. an Illinois )
Corporation, individually and as )
the Representative for a Class of )
Similarly-Situated Persons, )
)
                 Plaintiff )
)
              vs. )         CASE NO.   03 CH 434
)
HANDLEMAN INSURANCE, )
AGENCY, INC., )
)
            Defendant )

FILED
McHENRY COUNTY, ILLINOIS
JUN 2 2 2004
VERNON W. KAYS, JR.
CLERK OF THE CIRCUIT COURT

## ORDER ON MOTIONS TO DISMISS

      This cause has been under advisement by the Court on the Defendant's Motions to Dismiss brought under Section 2-619 and Section 2-615 of the Code of Civil Procedure. The 2-619 Motion seeks dismissal of Count I (Violation of the Telephone Consumer Protection Act, 47 U.S.C. Section 227) on the basis that no fax provision of the TCPA violates the freedom of speech protections of the First Amendment of the United States Constitution. The 2-615 Motion seeks dismissal of Count II (Conversion) and Count III (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2) on the basis that each Count (Count II and Count III) failed to state a cause of action.

      With leave of Court, the United States of America through the United States Department of Justice has intervened in this cause to respond to the 2-619 Motion attacking the constitutionality of the TCPA.

The Court has received and reviewed the written submissions (complaint, motions, responses, replies, memoranda, statutory authority, case law authority from Courts of Review and Decisions from other trial courts) as to both motions. The Court has heard the oral arguments as to both motions.

This Court will not attempt to restate all of the arguments and analysis of the issues in this case which have been ably presented by the parties and have been previously scrutinized in decisions from other courts, primarily other trial courts in this state and in other jurisdictions.

Having considered all of the materials and the arguments presented, this Court FINDS:

1. The Telephone Consumer Protection Act 47 U.S.C. Section 227 does not violate the provisions of the First Amendment of the United States Constitution by authorizing improper restrictions on commercial speech. Specifically, this Court finds that the TCPA's ban on unsolicited fax advertising:

    a.    Is not more extensive than necessary to serve the interest asserted by the government;

    b.    Does directly advance the government interest asserted; and

    c.    Does serve a substantial governmental interest.

2. The allegations of Count II are sufficient to state a cause of action for Conversion.

3. The allegations of Count III are sufficient to state a cause of action for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

4. As to Defendant's Motion to Strike Plaintiff's prayer for "costs of suit" in Count II, the Court finds no basis to strike the prayer for "costs of suit". Article V of the Code of Civil Procedure (735 ILCS 5/5-101, etal) govern the assessment of court costs. The thrust of Defendant's argument appears to be directed towards attorney's fees, but the Plaintiff's prayer is for "costs of suit".

THEREFORE, IT IS ORDERED THAT:

1. Defendant's 2-619 Motion is denied as to Count I.

2. Defendant's 2-615 Motions are denied as to Count II and Count III.

3. Defendant is granted 21 days to answer the Complaint.

ENTERED _June 22, 2004_      ENTER _Michael Sullivan_

                                   MICHAEL J. SULLIVAN
                                   CIRCUIT JUDGE

COPY

FILED
McHENRY COUNTY, ILLINOIS
JUN 2 2 2004
VERNON W. KAYS, JR.
CLERK OF THE CIRCUIT COURT

2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| JAMES BRILL, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06 CH 1520 |
| BECKTOLD ENTERPRISES, INC., | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This cause comes before the court on Defendant Becktold Enterprises, Inc.'s
motion to dismiss Plaintiff James Brill's Class Action Complaint pursuant to 735 ILCS
5/2-619.1. The court has been fully advised of the premises herein.

Brill's case is one of more than 50 related cases currently assigned to this
Calendar which involve claims for violations of the Telephone Consumers Protection Act
of 1991 ("TCPA"), the Illinois Consumer Fraud Act, and for common law conversion.
The cases have been divided into Groups A, B, and C. Becktold's motion to dismiss has
been designated as the "Master Motion" for Group A and all the Group A cases have
joined in the Master Motion. A list of the Group A cases is attached at Exhibit A.
Defendant International Card Establishment, Inc. has filed a Supplemental Memorandum
of Law in support of the Master Motion raising additional grounds for dismissal of the
consumer fraud claims.

TCPA Claims.

*Private Right of Action under TCPA:*

Plaintiffs allege that Defendants violated the federal Telephone Consumer
Protection Act ("TCPA"), 47 USCS §227 (2004), which prohibits using any telephone
facsimile machine, computer, or other device to send an unsolicited advertisement to
another telephone facsimile machine. Section 227 allows for state jurisdiction over
private causes of action under the TCPA and reads as follows:

> (3) Private right of action. A person or entity may, if otherwise permitted by the
> law or rules of court of a State, bring in an appropriate court of that State –
>> (A) an action based on a violation of this subsection or the regulations
>> prescribed under this subsection to enjoin such violation,
>> (B) an action to recover for actual monetary loss from such a violation, or
>> to receive $500 in damages for each such violation, whichever is
>> greater, or

1

(C) both such actions.

47 USCS §227 (2004).

Defendants argue that the individual States are required to pass an enabling statute before a claim can be brought pursuant to the TCPA in state court. Of the numerous courts that have considered this issue, only one court, a Texas appellate court, Autoflex Leasing, Inc. v. Manufacturers Auto Leasing, Inc., 16 S.W.3d 815 (Tex. App. 2000), held that it was necessary for States to pass enabling legislation. This decision was later rejected by a different Texas appellate court, The Chair King, Inc. v. GTE Mobilnet of Houston, Inc., 135 S.W.3d 365 (Tex. App. 2004). The "opt in" approach is illogical given the wording of §227.

Rejecting the "opt in" approach, several State courts have found that the language "if otherwise permitted by the law or rules of court of a State" acknowledges the principle that States have the right to structure their courts as desired and are not obligated to change the structure of their courts or their procedural rules to accommodate TCPA claims. E.g., R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc., 857 A.2d 1, 11 (Md. 2004); Condon v. Office Depot, Inc., 855 So.2d 644 (Fla. App. 2003); Schulman v. Chase Manhattan Bank, 268 A.D.2d 174 (N.Y. App. Div. 2000). This interpretation is in keeping with the language of the statute and the legislative history and takes into account constitutional requirements. R.A. Ponte, 857 A.2d at 7, 13. "[I]f the exercise of a State court's ordinary jurisdiction under established local laws is 'appropriate to the occasion and is invoked in conformity with those laws,' a state court may not refuse jurisdiction over a claim based on Federal law." Schulman, 268 A.2d at 179, citing, Mondou v. New York, New Haven & Hartford R.R. Co., 223 U.S. 1, 57.

Other State courts have found that the language "if otherwise permitted by the law or rules of court of a State" supports an "opt out" approach where states may pass legislation prohibiting such actions in their State courts, but otherwise must hear these actions. E.g., The Chair King, Inc. v. GTE Mobilnet of Houston, Inc., 135 S.W.3d 365 (Tex. App. 2004); Hooters of Augusta, Inc. v. Nicholson, 537 S.E.2d 468 (Ga. App. 2000).

Regardless of whether the "acknowledgement" or "opt out" approach is used, and the "acknowledgment" approach is the better reasoned one, it is clear that Illinois is not required to pass enabling legislation in order for suits to be brought pursuant to the TCPA in Illinois courts. This court is a court of general jurisdiction and has the ability to hear TCPA claims without further legislation.

Defendants argue that Illinois has opted out of the TCPA. Defendants, however, have not cited to any statute expressly opting out of the TCPA. Defendants point to 720 ILCS 5/26-3, passed one year *before* the enactment of the TCPA. A statute passed prior to the enactment of the TCPA cannot constitute an "opt out." Defendants also contend that Illinois has impliedly opted out of the TCPA by making unsolicited fax advertising a petty criminal offense and by not amending consumer fraud laws to take into account fax

solicitations. This argument is illogical and without merit. This court has the jurisdiction to hear TCPA cases unless hearing such cases would be prohibited by the laws or rules of this court. Defendants have not pointed to any law or rule which prohibits this court from exercising jurisdiction over TCPA claims. Such a prohibition cannot be "implied" from the circumstances relied upon by Defendants.

Plaintiffs can pursue a private right of action under the TCPA in this court.

*Constitutional Arguments:*

Excessive Penalties:

Defendants first contend that the TCPA is unconstitutional as it violates the Fifth and Fourteenth Amendments of the U.S. Constitution. Defendants argue that the TCPA's statutory fines are unconstitutionally excessive in violation of the Due Process clause of the Fifth and Fourteenth Amendments. This argument has been soundly rejected by the courts which have considered the issue.

The TCPA allows an individual to recover the actual monetary loss for each violation of the TCPA or $500 in damages, whichever is greater. 47 U.S.C. §227(b)(3)(2006). Defendants claim that this penalty violates due process, but a statutory penalty violates due process ". . . only where the penalty prescribed is so severe and oppressive as to be wholly disproportional to the offense and obviously unreasonable.'" United States v. Citrin, 972 F.2d 1044, 1051 (9th Cir. 1992)(citation omitted). The TCPA penalty does not rise to this level.

As noted by the court in Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1165 (S.D. Ind. 1997), "[t]he fact that the TCPA establishes as a remedy a damage award of $500, even when actual monetary damage is less than $500, does not itself make the award excessive and unreasonable." The penalty fashioned by Congress was concerned with more than the actual cost of fax paper and toner; the remedy was fashioned to take into account "the difficult to quantify business interruption costs imposed upon recipients of unsolicited fax advertisements, effectively deter the unscrupulous practice of shifting these costs to unwitting recipients of 'junk faxes,' and 'provide adequate incentive for an individual plaintiff to bring suit on his own behalf.'" Id. at 1166. The TCPA's $500 penalty "when measured against the overall harms of unsolicited fax advertising and the public interest in deterring such conduct, is not 'so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable.'" State of Texas v. American Blast Fax, Inc., 121 F. Supp. 2d 1085, 1091 (W.D. Tex. 2000)(citation omitted).

*First Amendment:*

Defendants next contend that the TCPA violates the First Amendment. This argument has been just as soundly rejected. The test for whether regulations of commercial speech violate the First Amendment has been set forth by the U.S. Supreme Court in Central Hudson Gas & Electric Corp. v. Public Service Corp., 447 U.S. 557

3

_(1999); Central Hudson,_ regulations of commercial speech are valid as long as they involve a substantial governmental interest, directly advance that interest, and are narrowly tailored to serve that interest. _Id._ at 563.

It is clear that the TCPA involves a substantial governmental interest contrary to Defendants' argument. There is a substantial governmental interest "in restricting unsolicited fax advertisements in order to prevent the cost shifting and interference such unwanted advertising places on the recipient." _State of Missouri ex. rel. Nixon v. American Blast Fax, Inc.,_ 323 F.3d 649, 655 (8th Cir. 2000); _see also, State of Texas v. American Blast Fax, Inc.,_ 121 F. Supp. 2d at 1092 ("Congress' interests in passing the TCPA – preventing 'unwitting customers' from bearing the brunt of advertising costs and preventing unwanted fax machine interference – are substantial and real."); _Destination Ventures, Ltd. v. Federal Communications Comm'n,_ 46 F.3d 54, 56 (9th Cir. 1995). Defendants claim that Congress lacked the necessary "findings" to establish a significant governmental interest, but this claim has been previously, and correctly, rejected. _State of Missouri ex. rel. Nixon v. American Blast Fax, Inc.,_ 323 F.3d at 654.

The TCPA also clearly meets the requirement that regulations of commercial speech directly advance the governmental interest. Like other defendants before them, the Defendants before this court claim that the TCPA does not directly advance the government's interest. Defendants argue that the TCPA fails to meet this requirement by banning only commercial speech. Defendants' argument is without merit. As set forth in _Destination Ventures,_ 46 F.3d at 56, "[b]ecause Congress's goal was to prevent the shifting of advertising costs, limiting its regulation to faxes containing advertising was justified." "By placing restrictions on those responsible for a large portion of the problem, the TCPA directly and materially advances the congressional goal of limiting the harm arising from unsolicited fax advertisements. _State of Missouri ex. rel. Nixon v. American Blast Fax, Inc.,_ 323 F.3d at 655.

Defendants' contention that the TCPA's ban of unsolicited fax advertisements is not narrowly tailored is also without merit. Congress was not required to use the "least restrictive means" necessary to address the problem of unsolicited fax advertisements. _Board of Trustees of the State Univ. of N.Y. v. Fox,_ 492 U.S. 469, 480 (1989). Rather, Congress was required to employ "a means narrowly tailored to achieve the desired objective." _Id._ Given the fact that Congress's desired objective in enacting the TCPA was to protect consumers from the cost shifting and interference imposed by unsolicited fax advertisements, the TCPA's ban on such faxes is narrowly tailored. _E.g., State of Missouri ex. rel. Nixon v. American Blast Fax, Inc.,_ 323 F.3d at 659; _Destination Ventures,_ 46 F.3d at 56; _State of Texas v. American Blast Fax, Inc.,_ 121 F. Supp. 2d at 1091-92; _Kenro, Inc. v. Fax Daily, Inc.,_ 962 F. Supp. at 1168-69.

Defendants next claim that the TCPA violates the First Amendment because it unconstitutionally imposes "strict liability" by failing to include a knowledge requirement. Defendants claim that an advertiser could have permission to send a fax but mistakenly dial the wrong number subjecting the advertiser to a $500 fine. In effect,

4

Defendants are making an "overbreadth" argument contending that the TCPA would punish advertisers who did not intend to violate the TCPA.

Unfortunately for Defendants, the Plaintiffs before this court all allege that Defendants engaged in mass campaigns of sending unsolicited fax advertisements and Defendants have not presented any evidence to this court that the faxes they sent to Plaintiffs were solicited by others and Defendants merely misdialed. As noted by Plaintiffs, "facial invalidity" does not apply to commercial speech, Central Hudson, 447 U.S. at 565, n. 8; Board of Trustees of the State of N.Y., 492 U.S. at 481, and Defendants must show that the TCPA is unconstitutional as applied to them. They cannot do so.

Vagueness:

Defendants next argue that the TCPA is unconstitutionally vague. This argument is wholly lacking in credibility. The TCPA's language is plain and clear and does not meet the standard of unconstitutional vagueness, E.g. Roberts v. United States Jaycees, 468 U.S. 609, 629 (1984)(A statute is unconstitutionally vague when it is so unclear that two different individuals "must necessarily guess at its meaning").

Tenth Amendment:

Finally, Defendants argue that the TCPA is unconstitutional because the Tenth Amendment to the U.S. Constitution precludes Congress from conferring exclusive jurisdiction over a Federal claim upon State courts. Federal courts, however, have held that they do have jurisdiction over TCPA claims, E.g. 427 F.3d 446 (7th Cir. 2005). Defendants' argument is without merit.

The TCPA is constitutional.

Illinois Consumer Fraud Act

Preemption:

In its Supplemental Memorandum, Defendant International Card Establishment, Inc. ("ICE") argues that any claims under the Illinois Consumer Fraud Act ("ICFA") are preempted by the TCPA because Illinois lacks jurisdiction over interstate telecommunication transmissions. Initially, Plaintiffs Linda Hoppa and Jeffrey Brown argue that ICE's preemption argument is premature because the Class Action Complaint directed toward ICE does not allege that ICE sent the offending faxes from out-of-state. This argument is disingenuous. The Class Action Complaint alleges that ICE, a California corporation, sent faxes into Illinois, (Brown Complaint, ¶¶4-6). There are no facts alleged in the Class Action Complaint which indicate that ICE sent any intrastate faxes.

The TCPA contains no express preemption of state laws on the same subject. The TCPA contains only the following provision which provides as follows:

5

NOV-03-2006  17:00        ECLG LLC                                                3124120375        P.07

(1) STATE LAW NOT PREEMPTED. Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements of regulations on or which prohibits.—

    (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements . . .

47 USC §227(e)(1).

"In areas of traditional state regulation, [the U.S. Supreme Court] assume[s] that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005). The above language does not, contrary to ICE's arguments, clearly and manifestly express an intention to preempt consumer fraud claims for interstate fax solicitations.

The cases cited by ICE, Klein v. Vision Lab Telecommunications, Inc., 399 F. Supp. 2d 528 (S.D. N.Y. 2005), and Chamber of Commerce of the United States of America v. Lockyer, 2006 WL 462482 (E.D. Cal. 2006), do not support ICE's preemption argument. In both Lockyer and Klein, the courts considered state laws which specifically regulated the unsolicited sending of fax advertisements. In Lockyer, the regulation at issue was more restrictive than the TCPA, and in Klein the regulation at issue was less restrictive. The purpose of the ICFA, unlike the statutes at issue in Klein and Lockyer, is not to regulate interstate fax advertisements but to address deceptive and unfair practices in general. Nothing in the ICFA is in direct conflict with the TCPA and there is nothing in the language of the TCPA which clearly and manifestly shows an intention to preempt general state consumer laws which provide an additional remedy for the sending of unsolicited fax advertisements. Bates, 544 U.S. at 449; Klein, 399 F. Supp. 2d at 541.

Plaintiffs' ICFA claims are not preempted by the TCPA.

*Failure to State a Claim:*

Defendants first argue that Plaintiffs have failed to state a claim under the ICFA because the allegations do not satisfy the test for whether conduct amounts to an unfair practice set forth in Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403 (2002). This court has already considered, and rejected, this argument in a written memorandum and order issued in Telecommunications v. Bach, 03 CH 9246.

The ICFA allows for claims for unfair practices as well as deceptive acts. In determining whether conduct is unfair, a court should consider: (1) whether the conduct offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. Id. at 417-18. All three prongs do not have to be satisfied to support a finding of unfairness. Id. at 418. "'A

practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Id.

It is clear that the conduct alleged by Plaintiffs offends the public policy of both the Federal government, as evidenced by the passage of the TCPA, and of Illinois which has criminalized Defendants' conduct. Defendants argue, however, that their conduct is not oppressive and Plaintiff has not shown substantial injury. While it is true that there is no substantial injury to any one individual Plaintiff before this court, the alleged conduct is unscrupulous and greatly offends the public policy of Illinois which has criminalized this conduct. The public policy prong alone justifies a finding of an unfair act. Robinson is clear that it is not necessary for a plaintiff to satisfy all criteria and that meeting one criterion can be sufficient.

Defendants also argue that Plaintiffs cannot state claims under the ICFA because they cannot show the existence of actual damages. Defendants' theory is that each Plaintiff sustained only *de minimis* damages of a few cents as a result of Defendants' conduct. Any argument regarding the actual amount of damages is not only premature, but also ignores the fact that the cases before the court are class actions. Finding that Plaintiffs were not damaged because each plaintiff was only damaged in small amounts would allow Defendants to escape any consequences for their alleged conduct "by committing many small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy." Christakos v. Intercounty Title Co., 196 F.R.D. 496, 502 (N.D. Ill. 2000). Defendants rely on Judge Patrick McGann's opinion in Whiting Corp. v. MSI Marketing, Inc., 02 CH 6332, which addressed the substantiality of damages with regard to the Robinson factors. Judge McGann offered no opinion on whether Plaintiffs could show the existence of actual damages.

Defendants have not cited a single case on point which supports their argument. Defendants are of the opinion that Plaintiffs have not suffered any cognizable damage. The court disagrees.

Plaintiffs have sufficiently stated claims under the ICFA.

Conversion

Defendants argue that Plaintiff cannot state a claim for conversion. Conversion is an unauthorized deprivation of property from a person entitled to its possession." IOS Capital, Inc. v. Phoenix Printing, Inc., 348 Ill. App. 3d 366, 370 (4th Dist. 2004). "To prove conversion, the plaintiff must establish (1) a right in the property; (2) a right to immediate possession; (3) wrongful control by the defendant, and (4) a demand for the property." Id.

Defendants first argue that Plaintiffs have not alleged a wrongful or unauthorized deprivation of property. This argument is wholly without merit. The sending of unsolicited fax advertisements is prohibited under the TCPA and Illinois has criminalized

this conduct. Defendants cannot credibly argue that their conduct was not wrongful or unauthorized.

Defendants next argue that Plaintiffs cannot allege a right to immediate possession of their toner and paper used by the fax machine. While the owner of a fax machine does expect that paper and toner will be used, the owner reasonably expects that the fax machine and supplies will be used for the business purposes of the owner. Plaintiffs allege that Defendants hijacked their machines for their own advertising purposes without consent using Plaintiffs' toner and paper. Plaintiffs had an immediate right of possession of their toner and paper.

Defendants also argue that Plaintiffs do not allege that they were dispossessed of their property, but this argument is disingenuous. Once Defendants' advertisements were printed with Plaintiffs' paper and toner, Plaintiffs were dispossessed of the paper and toner.

Defendants next argue that Plaintiffs have not alleged that they made any demand upon Defendants to return the toner and paper. Again, this argument is disingenuous. Once the advertisements were printed out by the fax machines, the paper and toner were irretrievably lost. Plaintiffs were not required to demand the return of property permanently converted by Defendants.

Finally, Defendants argue that Plaintiff cannot plead substantial damages, but this is not an element of a conversion claim. Plaintiffs have alleged that Defendants converted their property and they are not required to do more.

**IT IS HEREBY ORDERED** that the Master Motion to Dismiss for Group A is denied in its entirety.



ENTERED

JUDGE DAVID R. DONNERSBERGER - 1941

OCT 2 8 2008

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge David R. Donnersberger

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| WHITING CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | No. 02 CH 6332 |
| | ) | |
| v. | ) | Judge Patrick E. McGann |
| | ) | |
| MSI MARKETING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| INSPE ASSOCIATES, LTD., | ) | |
| | ) | 03 CH 10965 |
| Plaintiff, | ) | and related cases as indicated on |
| | ) | Exhibit "A" attached |
| v. | ) | |
| | ) | |
| CHARTER ONE BANK, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes on for hearing on the Motion of Charter One Bank to dismiss the amended complaint of Inspe Associates, Ltd. seeking relief for alleged violations of the Telephone Consumers Protection Act of 1991, 47 USC 227 ("TCPA"); the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 ("ICFA"); common law conversion and property damage.   This case is one of a number, now exceeding seventy, of related cases assigned to this Calendar by the Presiding Judge of the Chancery Division of this Court. This motion has been joined in by the parties in the cases listed in Exhibit "A" attached hereto as the motion raises issues that are common to those parties. This Court has allowed all Defendants who have participated in this motion to present motions that raise individual legal defenses to the claim of their respective Plaintiff. This Court has or will issue rulings on each of those individual motions.

Charter One Bank ("Charter One" or "the Bank") seeks to dismiss Count I seeking relief for violation of the TCPA by asserting affirmative matter that seeks to avoid the legal effect of or defeating the claim. 735 ILCS 5/2-619. The Bank asserts that

the statutory scheme envisioned by the Congress in enacting the TCPA requires a state to create, by affirmative legislative action, a state cause of action for violation of the TCPA. As an alternative position, Charter One suggests that legislative conduct subsequent to the passage of the TCPA clearly shows that Illinois has opted out of the TCPA's private right of action scheme.

The Bank also argues that the $500.00 per fax statutory penalty is so radically disproportionate to the actual damage suffered by a recipient of an unsolicited telephone facsimile message that it violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

Finally, Charter One posits that the TCPA's total ban on commercial fax advertising discriminates against speech based on its content when a less restrictive approach would satisfy the governmental interest sought to be protected by the regulation. Hence, the TCPA violates the freedom of speech rights guaranteed by the First Amendment to the United States Constitution.

As to the remaining counts, the Bank contests the legal sufficiency of each claim. 735 ILCS 5/2-615. The conversion claim must fail, it argues, because the Plaintiff does not assert that the mere fact of sending a telephone facsimile message is illegal. Hence, the Plaintiff can claim no greater interest in the paper and toner consumed by the message than the sender.

Charter One posits that the ICFA claim must fail because it fails to enumerate a violation of the Illinois statute prohibiting commercial telephone facsimile messages[1] as a per se ICFA violation. In addition, the Defendant argues that the mere sending of a commercial telephone facsimile message does not rise to the level of an unfair or deceptive act as defined by Illinois law.

Finally, the Bank suggests that, because the paper and toner consumed by the message has no residual value, a claim for property damage will not lie.

## I.    LEGAL STANDARD

### A.    2-619 MOTION

Section 2-619 affords a means of obtaining a summary disposition of issues of law

---

[1] 720 ILCS 5/23-3

or easily proven issues of fact. Subsection (a)(9) permits dismissal where "the claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating a claim."

The phrase affirmative matter encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. For that reason, it is recognized that a 2-619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action much in the same way that a 2-615 motion to dismiss admits a complaint's well-pleaded facts. Kedzie & 103rd Currency Exchange v. Hodge, 156 Ill. 2d 112, 115 (1993).

In making that last statement, the Illinois Supreme Court cited with approval the discussion of this issue in Barber-Coleman v. A & K Midwest Insurance Co., 236 Ill. App. 3d 1065 (1993). There, the court reasoned that affidavits in support of a 2-619 (a)(9) motion cannot be used to attack the factual sufficiency of a claim because the defendant admitted, for the purpose of the motion, those facts which are necessary to the plaintiff's claim.

A 2-619(a)(9) motion contrasts with a summary judgment motion in that the latter allows the movant to contest by affidavit the truth of the allegations made. In other words, by the use of affidavits the opposing party states that the material facts alleged in support of the claim or defense are not true. To the contrary, a 2-619(a)(9) motion asserts there exists other affirmative matter avoiding the legal effect or defeating the claim. Hence, a 2-619(a)(9) motion admits all well pled facts that are essential to the claim, but not any of the facts that may touch on the affirmative matters raised in the motion.

**B.    2-615 MOTION**

A section 2-615 motion attacks the legal sufficiency of the Plaintiff's claim. The motion does not raise affirmative factual defenses, but rather alleges defects only on the face of the complaint. The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. Vernon v. Schuster, 179 Ill. 2d 338, 344 (1997); Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 86-87 (1996).

3

## II.    DISCUSSION

The facts alleged in the Amended Complaint are rather straightforward and will be discussed in the context of the analysis of the Defendant's grounds for dismissal.

### A.    COUNT I – TCPA

### 1.  NECESSITY OF STATE ACTION

The initial argument raised by Charter One involves a discussion of the legislative intent expressed by the United States Congress in the language used in the TCPA as well as the intent of the legislators who debated or discussed the bill during the deliberative process leading to its passage.

The TCPA, in pertinent part, prohibits the transmission of an unsolicited advertisement to a telephone facsimile machine.[2] An unsolicited advertisement is defined in the statute as any material advertising the commercial availability or quality of any property, goods or services...[3] The statute also states that "any person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State...an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater..."[4] It    is    the language, "if otherwise permitted by the laws or rules of court of a State," that is the focus of the Bank's first argument

This text, it suggests, requires an affirmative authorization by a state before such private litigation may be brought in state court.  No other conclusion, the Defendant asserts, can be culled from this language.  Hence, in the Bank's view, a State must opt in before its courts may entertain a TCPA action.

This position is also buttressed, the Bank posits, by statements made by Senator Ernest Hollings, one of the TCPA's sponsors.  On November 7, 1991, Senator Hollings discussion of the Bill's creation of a private right of action is quoted in the Congressional Record.  After stating that the bill allows a private right of action in state courts, he recognizes the federal principle of state sovereignty by recognizing that the Federal Government cannot, because of constitutional restraints, dictate to the States "which court in each State shall be the proper venue for such an action. Nevertheless, it is my

---

[2] 47 U.S.C. 227 (6)(I)(c)
[3] 47 U.S.C. 227 (a)(4)
[4] 47 U.S.C. 227 (6)(3)(B)

4

hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims courts..."[5] The Senator then suggests these matters should not involve attorneys and the neutral fairness of the amount of damages allowed. Finally, he stated: "I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill."[6]

Finally, Charter One points to the decision of the Court of Appeals in International Science & Technology Institute, Inc. v. Inacom Communications, Inc., 106 F.3d 1146 (4th Cir. 1997). It argues that many courts have misinterpreted the Court's reasoning. The Bank suggests that the opening paragraph of the opinion states the true result of the ruling. Judge Niemeyer, writing for the Court, stated "[Today this Court decides] that states have been given, subject to their consent, exclusive subject matter jurisdiction over private actions authorized by the [TCPA]."[7]

In order to determine Congress' intent in any law or statute, Court's must first analyze the text of the Act. New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645, 656 (1995). Only if the intent cannot be determined by the language of the Act should a court move on to analyze the structure and purpose of the Act in which it occurs. Id.

The language of the TCPA statute "if otherwise permitted" seemingly supports Charter One's argument that Congress envisioned a series of positive actions by state governments incorporating this new regulatory remedy into state law. However, such a reading ignores the context of the federal/state relationship created by the United States Constitution as well as the essential distinction between federal and state courts. When these factors are considered, it is clear that Congress created a remedy for a wrong, but recognized the rights of the several states to apportion their limited resources to address issues deemed important by the local electorate.

In 1944, Alfred Testa purchased an automobile in Providence, Rhode Island, for $210 above the ceiling price set under the then existing Emergency Price Control Act. After learning of the auto dealer's misfeasance, he filed suit in state court to recover "penal" damages for this wrong. Congress had, in creating the law, conferred concurrent

---

[5] 137 Cong. Rec. 516205-06 (emphasis added)
[6] Id.
[7] 106 F3d 1150

jurisdiction on federal and state courts for claims arising from any alleged violation. The Rhode Island Supreme Court reversed the award of damages obtained by Mr. Testa on the basis that, absent Rhode Island's consent, the Congress could not require its courts to entertain such claims. The Supreme Court unanimously reversed the Rhode Island Court. Testa v. Katt, 330 U.S. 386 (1947). The Court noted that Article VI, Section 2 of the Constitution provides:

> "This Constitution, and the Laws of the United States which shall
> be made in Pursuance thereof; and all Treaties made, or which
> shall be made, under the Authority of the United States, shall be
> the supreme Law of the Land; and the Judges in every State
> shall be bound thereby, and anything in the Constitution or Law
> of any State to the Contrary not withstanding." (capitalization in original)

This "supremacy clause" has, since the first Congress convened, thereafter been interpreted as conferring jurisdiction on state courts to enforce federal civil laws. Subsequent Congresses expanded such jurisdiction to federal crimes and actions for penalties and forfeitures. Testa, 330 U.S. at 390-391. The Court went on to observe that this view was the subject of much controversy, some violent, until the end of the Civil War. Indeed, since Claflin v. Houseman, 93 U.S. 130 (1876), a principle of constitutional law has been that wherever Congress creates a remedy there is no valid reason why it should not be enforced in a proper action in state court. Id. at 137. Hence, in this Court's judgment, not only were private claims under the TCPA permitted in all states, but all states from the date of enactment are required, except as discussed below, to entertain such claims. This principle may also explain Senator Hollings' precise use of the word venue instead of jurisdiction.

This view is also supported by the distinction between the federal district courts and the trial courts of Illinois. The former are created by Acts of Congress which has the authority to limit the jurisdiction of such courts in accordance with Article III of the United States Constitution. As observed by the Court in International Science, the Congress has used this power to direct certain justiciable matters to the Federal Court of Claims, Court of International Trade or to strip district courts of original jurisdiction. International Science, 106 F.3d at 1155-1156.

6

The trial courts of Illinois are constitutional courts vested with jurisdiction over all justiciable matters. Article 6 Sections 1 and 9 of the Constitution of 1970. The only exception is the constitutionally recognized right of the legislature to create administrative bodies. Hence, under our federal system, the trial courts of Illinois, in accordance with the supremacy clause of the United States Constitution, have original jurisdiction to hear claims seeking a remedy granted by the laws of the United States.

In addition, one issue not discussed by the parties is the disjunctive language used by the Congress. The words selected are "permitted by the laws or rules of court." Courts do not have the authority to limit by rule their jurisdiction over cases that are properly brought before them. Admittedly, in some circumstances, Courts for good reason may decline to exercise jurisdiction over a particular case; e.g. interstate *forum non conviens*. Rules of Court are used to prescribe procedures or determine assignment of cases properly before the Court. This disjunctive language also suggests that the Congress was attempting to facilitate the prosecution of these claims while, as will be discussed, acknowledging the sovereignty of the individual state. This determination is borne by the comments of Senator Hollings who strongly urged these matters be handled efficiently, without the participation of lawyers, in a small claims court. As discussed during argument, the distinguished gentleman form South Carolina probably never envisioned the use of class action procedures in an effort to remedy what appears to have been perceived by the Congress as a pervasive, but highly individualized, issue adversely affecting commerce.

It is important to observe that the Court in Testa v. Katt, *supra*, did not discuss the implication of the 10th amendment to the United States Constitution. That amendment reserves to the states all power not delegated to the United States by the Constitution or prohibited to the states by that compact. While one could argue that the supremacy clause resolves any issue in favor of the constitutionality of the TCPA, recent court decisions cast some doubt upon that perspective. *See* e.g. New York v. United States, 505 U.S. 144 (1992). A more modern approach to this issue is found in the court's reasoning in International Science. Congress cannot, consistent with the 10th Amendment, invade the province of state sovereignty. Thus, unless a state has affirmatively enacted a similar *regulatory scheme, Congress cannot direct a state to enforce a federal claim. Here,*

Congress did not so act.  The Congress, in choosing the language of the TCPA, encouraged the several states to enforce a national and uniform policy on this issue but gave each state the unfettered right to direct its judicial resources in response to the needs of its electorate by refusing to allow private claims under the TCPA.  As stated by the Court in International Science:

> "Congress enacted the TCPA to assist states where they lacked
> jurisdiction; it empowered states themselves to enforce the TCPA
> in federal court; it authorized private enforcement exclusively
> in state courts; and it recognized state power to reject Congress'
> authorization." 106 F.3d at 1159. (emphasis added)

Hence, this Court concludes that the TCPA created an "opt out" scheme which allows claims for the federally created remedy absent affirmative legislative action limiting or eliminating said claim.

This rationale is also consistent with the constitutional principle that states have great latitude in establishing the structure and jurisdiction of their own courts.  Howlett ex rel. Howlett v. Rose, 496 U.S. 356, 372 (1990).  Thus, states are under no obligation to create special courts or change procedural rules to facilitate prosecution of claims arising under federal law.  However, consistent with the supremacy clause and absent any explicit state statutory directive, an unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests, there is a presumption of state court jurisdiction over federal claims.  Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478 (1981).

This determination also resolves the second issue raised by Charter One.  The Bank suggests the failure of the legislature to include a private state right of action for the transmission of a commercial fax in 2000, when it created such a claim for unsolicited telephone advertising, [8] evidences an intent to reject Congress' authorization or "opt out" of the TCPA private right of action regulatory scheme.  This intent, it is urged, can also be determined from the legislature's rejection, on two occasions, of attempts to include a TCPA type violation as part of consumer protection laws under ICFA.

Although Gulf Offshore Co., supra., dealt with the question of concurrent jurisdiction over a federal claim, in the absence of contrary authority, its analysis, with a

---

[8] 815 ILCS 413/25

slight modification, of this issue is most helpful. There, the Court held that a legislative body's intent to limit a court's jurisdiction over a claim could be determined by an explicit statutory directive, unmistakable implication from legislative history or by a clear incompatibility between state court jurisdiction and federal interests. Gulf Offshore Co., 453 U.S. at 478.

There is no explicit action by the state legislature declining to accept jurisdiction over these claims. The third Gulf Offshore factor should best be modified to determine if there is any incompatibility between state interests and this federal remedy. The answer again is in the negative. Indeed, one of the central purposes of the TCPA was to enable states to have jurisdiction over an issue that largely affected interstate commerce.

The final issue to be resolved under this analysis is the implications found in the actions of the state legislature. The failure to include a remedy for TCPA prohibited conduct can hardly be conclusive evidence of the legislature's intent to reject Congress' authorization for such claims. First, the remedy of attorney's fees found under ICFA is not available under the TCPA. The legislature could have determined that such a remedy exceeded the congressional authorization to assist in the regulation of interstate commerce by expanding what was designed to be a *pro se* claim into a much more complex and expensive litigation process.

The second argument by the Bank is the failure to include a private right of action in state court for unsolicited telephone facsimiles in the Telephone Solicitations Act. First of all, the statute had a specific focus, regulating telephone solicitations. There is nothing in this Court's or the legislative record that telephone facsimile advertising was even considered in the Bill or any proposed amendments. The lack of such historical information would result not in an unmistakable understanding of legislative action but guess and conjecture as to legislative intent.

Finally on this point, the Bank asserts that the failure of the legislature to amend the Illinois penal statute relating to the transmission of unsolicited telephone facsimile messages[9] which predate the TCPA expresses a legislative decision to reject the Congressional authorization of private rights of action. In support of their position they cite to R.A. Ponte Architects Ltd. v. Investor's Alert, Inc., 815 A.2d 816 (C.S.A. MD.

---

[9] 720 ILCS 5/26-3

2003), *cert grtd* 822 A.2d 1224 (2003). There, the Maryland Special Court of Appeals found that the failure of the Maryland legislature to amend its pre-TCPA statute to grant a private cause of action for money damages, and the failure to enact three bills dealing with issues somewhat related to the use of facsimile machines demonstrated an intent to prohibit a private cause of action in state court for violation of state or comparable federal law. 815 A.2d at 828.

Initially, it must be noted that this decision has been found to express a minority position on the issue. Condon v. Office Depot, Inc., 855 So.2d 644, 648 (Fla. Dist. Ct. App. 2003). A clear reading of the decision indicates that contrary to its pronouncement that Court adopted the "opt in" position rejected by this Court. Finally, it appears the Ponte Court failed to use the proper standard in reaching its conclusion that the failure of the Maryland legislature to create a cause of action it never considered or to so act when it considered other issues meant there was no private right of action. Thus, the decision in R. A. Ponte is not persuasive.

### 2. DUE PROCESS CLAUSE VIOLATION

Charter One urges this Court to conclude that the statutory penalty of $500 or $1,500 (if knowing or willful) per fax for a violation of the TCPA (47 U.S.C. 227 (b)(3)) constitutes an unconstitutional taking of property without due process of law. This conclusion is easily reached, the Bank asserts, when one considers that the damage to the consumer is but a few pennies but the remedy in the context of this class action could result in an award in the tens of millions of dollars. They suggest by example that a class may consist of a defendant who has sent 100,000 facsimile messages in violation of the statute. This may have cost consumers $10,000. The penalty for such conduct is $50 million with a potential multiplier to reach $150 million. This gross disproportionality violates the due process clause and must be struck down. The Bank points to the recent decision of the United States Supreme Court in State Farm Mutual Automobile Insurance Co. v. Campbell, 123 S.Ct. 1513 (2003), as the most recent pronouncement by the Court on this issue.

In State Farm, its insured, Mr. Campbell, attempted to pass six vehicles on a two laned road; his judgment in this regard proved to be poor and resulted in the death of one person and the total permanent disability of another. Mr. Campbell was sued for

damages by the injured parties. The Plaintiffs offered to settle the matter for the $50,000 policy, but State Farm declined. Despite strong counsel to the contrary, State Farm took the case to trial assuring Mr. Campbell his assets were secure. The jury found that he was 100% at fault and awarded damages in the amount of $185,849. State Farm refused to pay this amount, filed an appeal bond and advised Mr. Campbell to place his home for sale to satisfy the amount of the claim. Ultimately, State Farm paid the judgment after the Utah Supreme Court affirmed the jury's verdict.

Mr. Campbell and the injured parties joined forces to bring a bad faith action against State Farm. During discovery it was learned that State Farm had a national policy to cap losses that Mr. Campbell claimed, and apparently the jury agreed, were tortious. A verdict of $145 million in punitive damages was returned against State Farm.

In reversing the judgment of the Utah Supreme Court, the Court acknowledged the legal principle that the Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. State Farm, 123 S. Ct. 1520-1521. This concern, the Court noted, dates back to the Magna Carta. The common law procedure for imposition of punitive damages, the Court believes, poses an acute danger of the arbitrary deprivation of property. The reason is that elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also the severity of the penalty that a state may impose. BMW of North America v. Gore, 517 U.S. 558, 574 (1996). The State Farm Court found that the defendant was impermissibly called to answer for unrelated incidents in states other than Utah. The Court reasoned, in part, that conduct lawful in one State cannot be used to aggravate a penalty in a State where such conduct is illegal. This defeats the Due Process requirement of notice. Here, the TCPA claim is a statutory remedy that clearly announces the proscribed conduct and defines the potential penalties. Moreover, the TCPA regulations existed for many years before the allegations of wrongdoing made by the Plaintiff herein. The decisions of the Supreme Court in State Farm and its rather recent ancestors, *see* State Farm, 123 S. Ct. 1528 (Ginsburg, J. dissenting), simply have no application to the matter before the Court.

As suggested by this Court in its earlier decision rejecting a similar argument, the standard to be applied here is found in St. Louis Iron Mountain and Southern Railway v. Williams, 251 U.S. 63 (1919). In Williams, the Court was called upon to determine the constitutionality of an Arkansas statute which created a private right of action for railroad passengers who were charged more than the rate set by regulation. An aggrieved passenger was entitled to recover a penalty of "not less than fifty dollars nor more than three hundred dollars" for each offense as well as costs of suit and attorneys fees. Williams recovered a seventy-five dollar penalty and twenty-five dollars in attorney's fees after successfully prosecuting such a claim. The standard to be applied is whether the penalty is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." Williams, 251 U.S. at 67. This determination of validity is not to be made merely by contrasting the penalty with the possible overcharge in an individual case. The court must consider the interest of the public, the numberless opportunities for committing the offense and the need for securing uniform adherence to the law. Williams, 251 U.S. at 68. The focus of the Court at this point in the proceedings is to determine the facial constitutionality of the TCPA remedy. In doing so, there must be given recognition to the wide latitude a government is given in protecting public interest. This Court should not be anxious to substitute its judgment for that of the Congress. As suggested in this Court's prior decision in Whiting Corporation v. MSI Marketing, Inc., 02 CH 6332, this decision as to the constitutionality of the remedy as applied may best be resolved once a class is certified. Subsequent research by the Court indicates this issue may impact on the very issue of class certification. *See* Foreman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D. Pa. 1995) and Kenro v. Fax Daily, Inc., 962 F. Supp 1162 (S.D. Ind. 1997).

The Court cannot conclude that the remedy provided by Congress in the TCPA is an unconstitutional deprivation of property without Due Process of Law on this record.

### 3. FIRST AMENDMENT ISSUES

The Defendant asserts that the TCPA scheme unconstitutionally impacts on its right of free speech in the commercial setting of advertising. The main thrust of its argument is that the statute fails to withstand scrutiny under the test set out in Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557 (1980). The

Bank posits that the content based restriction on commercial speech is not based upon a constitutionally sufficient rationale; to wit, that assuming a governmental interest is present, the prohibitions set out in the TCPA do not directly advance that interest. The Defendant also urges this Court to conclude that less restrictive alternatives could satisfy any interest identified by the Congress.

Prior to analyzing the arguments of Charter One, it is important to note that there are no allegations that any of the "unsolicited advertisements" were false, misleading or promoted illegal conduct. Hence, analysis under the Central Hudson test is proper.

Charter One's brief suggests there are two prongs to determining whether there is sufficient rationale to justify this Congressional restriction on speech. The first prong is a determination that the governmental restriction is substantial. The burden falls upon the Government to establish this factor. Edenfield v. Fane, 507 U.S. 761 (1993).

Charter One contends the legislative record consists of such anecdotal evidence that, in reality, no governmental interest was identified by the Congress. The Defendant acknowledges that the TCPA scheme was designed to prohibit the cost shifting effect of commercial advertising by telephone facsimile messages as well as the time and expense incurred when a fax machine is being used to accept and print these unsolicited transmissions. However, the Bank argues that there was insufficient evidence in the record to allow Congress to make that determination.

In support of their position, the Defendant points to Turner Broadcasting, Inc. v. FCC, 520 U.S. 180 (1997). However, it appears to this Court that a careful reading of Turner actually supports the Congressional determination of the policy espoused by the TCPA. In that decision, the Court upheld the "must carry" commercial non-cable broadcast provisions of statutes regulating the cable television industry. There, the Court analyzed the materials submitted to Congress and its determinations. The Court noted that the question to be answered by a court in making a determination of constitutionality is not an objective determination of whether the legislative policy was the correct approach to the issue. Rather, the Court stated, the question is whether the legislative conclusion was reasonable and supported by substantial evidence in the record. Turner, 520 U.S. at 212. The Court will now turn to a discussion of the Congressional deliberations.

13

During the deliberations on the TCPA legislation, the Congress entertained testimony from many sources. In addition, Members related personal as well as constituent experiences and complaints concerning this practice. For example, as to the cost shifting issue, the Congress heard testimony that, in 1989, California's consumers lost between $250,000-375,000 per year in printing these unsolicited materials. Hearing before the Subcomittee on Telecomm. And Fina. Of the House Committee on Energy and Commerce, 101st Cong., 56 (1989) (statement of Prof. Ellis). This testimony also related that one company engaged in this activity had by that time assembled a database of 500,000 fax numbers and was routinely sending out 60,000 fax messages per week.

The Congress also heard testimony that this industry would steadily increase its technological capabilities and its attendant ability to transmit massive volumes of fax messages. The intervenor's brief cites to a website of a defendant in another related case to support the Congress' predictive judgment. It boasts, in 2004, of being one of more than 400 entities engaged in transmitting facsimile advertisements. The site claims that its sponsor personally sends more than one million such messages per week. (Int. Br. pp 16-17).

Finally, the Congress heard significant testimony on the disruption of business by the "seizure" effect such messages have on telephone lines and facsimile machines.

In contrast, Charter One advances no evidence as to the accuracy of the information presented to the Congressional subcommittee and presented to the Congress. Given the substantial deference that Courts must give to the predictive judgments of Congress, indeed the Court's role is limited to assuring that, in formulating its policy, Congress has drawn reasonable inferences based on substantial evidence. Turner Broadcasting Systems, Inc. v. FCC, 512 U.S. 622, 666 (1994), this Court can reach no other conclusion but that unsolicited telephone facsimile messages disrupt business by interrupting its orderly flow and unfairly shifts advertising costs from the merchant to the consumer. These are substantial interests that Congress in its constitutional responsibility to regulate commerce can protect. Moreover, the material submitted by the Intervenor validates Congress' predictive judgment.

The Defendant next posits that, assuming protectable interests exists, the total ban of unsolicited facsimile advertisements does not directly advance the government interest

14

asserted. Rubin v. Coors Brewing Co., 514 U.S. 476 (1995). The Bank acknowledges that Congress need not make progress on every front before it can make progress on any front. United States v. Edge Broadcasting Co., 509 U.S. 418 (1993). Nevertheless, Charter One posits there is not the reasonable fit required between the TCPA total ban on unsolicited telephone facsimile advertising and the interests advanced. The main thrust of their position focuses on the failure of Congress to ban facsimile messages that contain political, "junk" or charitable messages. These messages consume the same amount of paper and ink as the banned messages. This permitted form of speech also disrupts business by "seizing" control of the recipients business equipment.

To support its position, the Defendant cites to cases in this area such as Edenfield v. Fane, *supra*., and City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410 (1993). In Edenfield, the Court struck down as violative of the First Amendment Florida's total ban on client solicitation by Certified Public Accountants. The Court began its analysis by acknowledging that "solicitation is a recognized form of speech protected by the First Amendment." International Society for Krishnar Consciousness v. Lee, 501 U.S. 672, 677 (1992). It then examined the two asserted interests the regulation was designed to protect; *i.e.* eliminating fraud or overreaching by CPA'S and maintaining the independence of the audit process. Each, the governing board advanced, would be compromised as competitors would be increasingly called upon to cut prices or be more compliant to a client's needs to obtain or retain business. The Court acknowledged the substantial nature of the governmental interest.

However, the Court found that a total ban on such solicitation did not directly advance the interests involved. In making that determination, the Court noted that 21 States place no restrictions on solicitations by CPA's, only three States besides Florida have enacted a total ban. The Court also observed the ban was enacted without any evidence, study or even anecdotes to suggest the stated interest would be served by the ban. Edenfield, 507 U.S. at 772. Indeed, the Court found the one report proferred in support of the ban actually undermined the regulator's position. *Id.* at 772-773. Nor could the ban, the Court found, be justified as prophylactic in nature. In rejecting the position that the setting of such solicitations, *i.e.*, private offices or conversations were prone to abuse and difficult to regulate, the Court emphasized the training of members of

15

the accounting profession, and the absence of any threat of overreaching due to the emotional status of the party being solicited. The Court noted that decisions to hire an accountant are deliberate in nature and any potential for harm is minimal. This, the Court found was different from the partial ban approved on lawyer solicitations of accident victims. Ohralik v. Ohio State Bar Assn., 436 U.S. 447 (1978). In the later situation the Court acknowledges a prophylactic ban was appropriate because the harm sought to be avoided would have occurred at the outset of the solicitation. Id. at 777.

In Discovery Network, the Court struck down the application of an existing ordinance prohibiting the distribution of handbills to limit the placement of dispensing racks to distribute the defendant's commercial paper. In making this determination, the Court noted that the ordinance had long been in existence before the City determined that it was a potential tool to ease the perceived blight and promote traffic safety. The Court also observed that only 62 of the offending racks were being removed while between 1, 500 and 2,000 remained in place unaffected by enforcement efforts. These racks were used to distribute "newspapers," a category not defined by the ordinance but by executive fiat. It was significant, the Court observed, what is patent to anyone who peruses our daily "newspapers," that 70% of their content is devoted to advertising the availability of goods or services. Discovery Network, 507 U.S. at 420 (fn.16). This fact, the Court determined, eliminated any distinction between the publications that were banned or permitted. In its opinion, the Court reminded the litigants that speech proposing a commercial transaction was entitled to lesser protection than other constitutionally protected expression. See Ohralik v.Ohio State Bar Assn., 436 at, 455-456. Thus, the Court recognized that a distinction has historically been drawn between commercial and non-commercial speech, but found that on the record there was no appreciable difference in content between the Defendant Discovery Network's publication and those classified as "newspapers." The Court reasoned that as a result the distinction drawn by Cincinnati bore no appreciable relationship to the restrictions imposed. The Court specifically declined to determine whether, given certain facts and under certain circumstances, differential treatment of commercial and non-commercial speech is justified. Discovery Network, 507 U.S. at 429.

16

It is clear to the Court that the definition of "unsolicited advertisement" found in the TCPA is consistent with the definition of a commercial transaction as defined by the Supreme Court; *i.e.*, proposal for a commercial transaction. <u>Board of Trustees of the State University of N.Y. v. Fox</u>, 492 U.S. 469, 473-474 (1989). The TCPA's ban on commercial speech does have a prophylactic effect on unsolicited telephone facsimile advertising. This can be justified under <u>Ohralik</u>, *supra.*, because the harm sought to be prevented occurs at the time the transmission is made. In addition, unlike the total ban on solicitation in <u>Edenfield</u>, Congress recognized a significant negative impact on commerce and enacted a closely tailored statute. In contrast to the glaring absence at the state level of regulation of solicitation by CPA's, the Congress received evidence that efforts by an increasing number of states to regulate in this area were thwarted by the interstate nature of the telephone facsimile issue. Hence, this Court finds that the restriction directly advances the valid regulatory concerns identified by Congress.

Moreover, there is a clear relationship between banning commercial speech and allowing charitable and political use of this medium of communication. First, Congress received evidence that only a small number of unsolicited messages were non-commercial. In addition, the public had no serious objection to receiving such information. The Congress, as noted above, pointed to the actual damage to business owners by way of additional costs of doing business as a result of receiving commercial messages. In addition, evidence suggested the additional burdens, not easily calculable, imposed by a lack of timely access to necessary business equipment during the increasingly frequent times the unsolicited commercial telephone facsimiles are sent was adversely affecting commerce.

The cases relied on by the Defendant have for the most part, in subsequent proceedings, followed the Eighth Circuit Court of Appeals decision in <u>Missouri ex.rel. Nixon v. American Blast Fax, Inc.</u>, 323 F3d 649 (C.A. 8th 2003), *cert. den.* 124 S.Ct. 1043 (2004). *See* <u>Rudgayzner & Grath v. Enine, Inc.</u>, 204 N.Y. Misc. Lexis 420 (4/14/04).

Finally, the restriction chosen by the Congress is not more extensive than necessary to advance the interest at stake. The Bank recognizes that there must be a reasonable "fit" between the regulation and the interest sought to be protected. <u>Board of</u>

17

Trustees v. Fox, *supra.* Charter One argues that at least two alternatives are less restrictive and hence a better "fit." First, the Defendant points to the California "opt out" scheme. This allows the sender of the message to furnish the recipient with a toll free number which will prevent the recipient from receiving further facsimiles. The second is a national "do not fax" list. Anyone who does not desire to receive this type message can sign up and be placed on a list and will not receive these communications. The Defendant suggests this would better identify those individuals who welcome this information and separate those persons from consumers who desire to receive only certain types of unsolicited messages or no messages at all.

The analysis of this issue does not permit the Court to substitute its judgment for that of the Congress. Rather, the Court must examine the existing regulations on their own merit and determine whether they achieve a reasonable fit. Rubin v. Coors Brewing Co., 514 U.S. 476 (1995). The TCPA scheme does act to prevent the cost shifting goal set forth by the Congress. Moreover, the Defendant suggests an affirmative duty should be imposed upon businesses and private persons in order to protect their property and be free to conduct their businesses. Those persons who desire to enter into commercial transactions have numerous and cost effective ways of reaching customers. They can conduct direct mailings, purchase advertising in "newspapers" or other media. Indeed, they can create low cost websites that can be easily "googled." There is no reason to suggest the TCPA fails to pass muster on the fourth prong of the Central Hudson test.

Hence, the Court can find no First Amendment infirmities in the TCPA regulatory scheme.

### 4. COUNT II – CONVERSION

The Defendant correctly sets out the elements of the tort of conversion. The gist of the Bank's argument appears to be that, by placing paper in a fax machine, an owner is parting with control, dominion or ownership of that property. By analogy, the Court surmises, if one were to leave their bicycle on the front porch for friends to see and the newspaper delivery person decided that it would be handy and takes it, there would be no theft. The Bank's argument ignores the plain fact that the sending of unsolicited advertisements is illegal. Everyone has the right to rely on others obeying the law. Hence, the Plaintiff has made out a claim.

5.   COUNT III ILLINOIS CONSUMER FRAUD AND DECEPTIVE
PRACTICES ACT (ICFA)

In Count three of the Plaintiff's complaint, it is alleged that the sending of one telephone facsimile message is a violation of the Illinois Consumer Fraud and Deceptive Practices Act. In Whiting Corporation v. MSI Marketing, 02 CH 6332, this Court extensively analyzed the requirements for a valid complaint under the Act. As the ICFA does not list a violation of the Illinois fax statute as a *per se* violation, the Plaintiff must satisfy the requirements set forth in Robinson v. Toyota Motor Credit Corporation, 201 Ill. 2d 403 (2002). A plain reading of the Plaintiff's complaint yields that the Count alleging a violation of the ICFA is legally insufficient. However, as indicated in the Whiting opinion, the Plaintiff may be able to set out a valid claim in individual cases. Finally, the Plaintiff should analyze this issue in terms of the right of Congress to regulate interstate commerce.   Therefore, the Plaintiff is given leave to file amended Counts alleging an ICFA violation in those Class B and C category cases that are subject to the ruling entered today.

6.   COUNT IV – PROPERTY DAMAGE

Property damage is to this Court's understanding an element of a form of intentional or negligent tortius conduct.  It is not an independent tort. This Count will be dismissed with prejudice.

IV.   ORDER

A. The Defendant's Motion to Dismiss Counts I & II are denied;

B. The Defendant's Motion to Dismiss Counts III & IV are granted, the Plaintiff is given leave to file amended complaints alleging violations of ICFA consistent with this Memorandum of Opinion and Order against any individual defendant;

C. The Class A and B cases are set for case management on July 13, 2004 at 1:00 P.M;

D. Any discovery stay order in Class B cases is hereby lifted.

ENTER:                    _____
                         Judge                    1510

19

STATE OF ILLINOIS          )
                           )          ss
COUNTY OF LAKE             )

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

Eclipse Manufacturing Co.,       )
          Plaintiff,             )
                                 )
v.                               )          03 CH 1344
T.J. Copy Products, Inc. and     )          Judge David M. Hall
Tracy J. Wertz,                  )
          Defendants             )

## ORDER

Before this court is a motion by the Defendants to dismiss the complaint brought by

Eclipse Manufacturing Company ("Eclipse") concerning the propriety of unsolicited

facsimile transmissions sent by the Defendants. Defendants assail the complaint on

several fronts. They contend that the Telephone Consumer Protection Act ("TCPA")

violates numerous constitutional rights and must be invalidated by this court. Defendants

also assert that several of Eclipse's claims fail to state a cause of action. Defendants'

contentions will be addressed in turn.

### 1. Sections 2-615 and 2-619

Defendants move this court to dismiss or strike "portions" of Plaintiff's Complaint or

to move this court for judgment on the pleadings. Defendants rely on 735 ILCS 5/2-615

and 735 ILCS 5/2-619 in support of these proposed actions. A Section 2-619 motion

raises certain defects or defenses and questions whether judgment should be entered as a

matter of law. *Illinois Graphics Co. v. Nickum*, 159 Ill.2d 469, 494 (Ill. 1994). In turn, a

1

section 2-615 motion questions whether a complaint states a valid cause of action. *Id.* at 488.

As an initial matter, this court will consider the threshold issues before it, addressing Plaintiff's standing and statutory right to bring this suit.

### 2. Defendants' Jurisdictional Arguments are Without Merit

Plaintiff has adequately demonstrated in its complaint that it received a commercial facsimile from T.J. Copy Products, allegedly in violation of the TCPA. The TCPA provides a statutorily conferred cause of action, enabling Plaintiff to bring suit in this court. Since Plaintiff has alleged that the Defendants have acted in contravention of federally established law, it would appear that there is a viable case before this court.

A statutory challenge under the Illinois Constitution requires a direct injury from the enforcement of a statute that is: (1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be redressed by granting the relief requested. *Glisson v. City of Marion*, 188 Ill.2d 211, 221 (Ill. 1999). Plaintiff has adequately pleaded a distinct and palpable injury - the transmission of the unsolicited, commercial fax. The transmission was fairly traceable to the Defendants' actions because it originated from T.J. Products, Inc. Lastly, the relief requested should provide Plaintiff with redress because an injunction would serve to stop the actual injury and a monetary award would compensate the public harm caused by unfettered, unsolicited, commercial faxes. The court finds that Plaintiff has standing to maintain this action.

Defendants suggest that Illinois provides no private right of action enabling the Plaintiff to bring suit. This view has been conclusively rejected by courts nationwide. *See, e.g., Murphey v. Lanier*, 204 F.3d 911, 914 (9th Cir. 2000); *International Science &*

*Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir. 1997); *Erienet, Inc. v. Velocity Net*, 156 F.3d 513, 515 (3rd Cir. 1998). The TCPA expressly creates a private cause of action for violations of the Act to be had in state courts. 47 U.S.C. § 227(b)(3). States *may* choose to prevent their courts from hearing private actions under the TCPA. *See International Science*, 106 F.3d at 1156. There is no indication that Illinois has done so here. As a result, the court finds that Plaintiff has presented a viable private claim before this court.

Defendants' final attack on the procedural posture of Plaintiff's claim centers on the fact that the TCPA prohibits "persons" from making unsolicited, commercial facsimile transmissions and not "entities." A brief review of the United States Code reveals that "persons" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1 (2004). The court finds that Plaintiff is a person under the Act.

### 3. The TCPA has Been Upheld as Universally Constitutional

Without regard to numerous judicial determinations upholding the constitutionality of the TCPA, Defendants assail the constitutional propriety of the TCPA. Defendants assert that the TCPA violates the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. A wide variety of federal and state courts have thoroughly examined the constitutionality of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In addition to satisfying general constitutional concerns, the universal consensus among the courts is that the TCPA easily satisfies concerns raised under the First Amendment relating to the regulation of commercial speech pursuant to *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980).

3

Defendants have not presented any new bases to support their argument that the prohibition of unsolicited, commercial speech, in the form of facsimile transmissions, is unconstitutional.

This court will individually address the array of Defendants' constitutional challenges.

### a. The First Amendment Challenge

Illinois courts employ the well-accepted *Central Hudson Gas* analysis when determining whether restrictions on commercial speech are constitutional. *See, e.g., Vuagniaux v. Department of Professional Regulation*, 802 N.E.2d 1156 (Ill. 2003). To pass constitutional muster under the *Central Hudson Gas* analysis, the court must consider four factors. First, it must be determined whether the speech concerns unlawful activity, or whether it is misleading. *Id.* at 1167. Commercial speech which advocates unlawful activity or is misleading in nature receives no First Amendment protection. *Id.* Second, the court must analyze whether the asserted governmental interest in regulating the speech is substantial. *Id.* Third, the court must determine "whether the regulation directly advances the governmental interest asserted." *Id.* Lastly, it must be examined whether the regulation is more extensive than necessary to serve the governmental interest. *Id.*

Since *Central Hudson Gas* is controlling authority on this matter and has been employed by all courts considering this issue, it is appropriate for this court to do the same here. This is because the TCPA, by its plain meaning, prohibits the solicitation of commercial speech only. Moreover, the speech in question here, the unsolicited fax sent to Eclipse, is undoubtedly commercial in nature. It includes phrases such as:

"Unbelievable Deals!" and "Limited Inventory!! Call Now." As such, it is apparent that the communication at issue, and the statutory reach of the TCPA, are clearly limited to commercial speech. The TCPA easily passes the factors announced under the *Central Hudson Gas* analysis.

### i. The Speech at Issue is not Unlawful or Misleading

Because the first factor, whether the speech is unlawful or misleading, is not at issue in this litigation, it is considered satisfied for purposes of this analysis. The court finds that the speech in question is not unlawful or misleading.

### ii. There is a Substantial Interest in Eliminating Unwanted Commercial Faxes

In enacting the TCPA, Congress found that there was a substantial national interest in eliminating the ability of commercial fax marketers to shift the costs of advertisers to individuals through unsolicited, commercial facsimile transmissions. Further, there are also substantial interests in eliminating interruptions and interference commonly associated with unwanted faxes. Federal courts considering this issue have routinely held these interests as substantial or compelling. *See, e.g., Missouri v. American Blast Fax, Inc.,* 323 F.3d 649, 655 (8th Cir. 2003); *Destination Ventures, Ltd. v. FCC,* 46 F.3d 54, 55 (9th Cir. 1995). Moreover, three sister Illinois Circuit Courts have found a substantial interest in the TCPA as well. *See, e.g., Whiting Corp. v. MSI Marketing, Inc.,* No. 02 CH 6332 (Cook County, Illinois April 3, 2003) ("[I]t appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity"); *Robin Hill Development Co. v. JD&T Enterprises, Inc.,* No. 01 L 527 (DuPage County, Illinois, October 3, 200) (upholding the substantial interest analysis); *Mark Chair Co. v. Mortgage Managers, Inc.,* No. 02 LK

247 (Kane County, Illinois, December 20, 2002) (explaining that the "government interest in obviating the cost shifting of unsolicited fax advertising from the sender to the recipient thereof and preemption of the recipient's use of its fax machine is substantial").

A well-documented legislative history underscores the fact that explosive growth in unsolicited facsimile advertising posed a realistic threat of economic harm to Americans with facsimile machines. This court will not belabor this well-established fact. Since unrestricted, unsolicited, commercial faxes cause considerable, demonstrated economic injury, the State has a strong interest in protecting fax owners and preventing these unsolicited transmissions.

It is manifestly clear that both the United States of American and Illinois have a substantial interest in protecting unwitting owners of facsimile machines from bearing the costs of unwanted, commercial fax advertising. The TCPA is undoubtedly directed towards preventing the unjustified cost-shifting associated with unsolicited facsimile transmissions and the business disruptions and delays common in the practice of "junk faxes." Like many courts before, this court holds that the TCPA easily passes the substantial governmental interest analysis.

### iii.  The TCPA Directly Advances the Interest in Prohibiting Unsolicited, Commercial Facsimile Transmissions

A properly tailored restriction "focuses on the source of the evils the [government] seeks to eliminate . . . and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 n. 7 (1989). Plaintiffs have the burden of demonstrating that the restriction imposed by the TCPA will not only advance the governmental interest but will do so to a material degree. *44 Liquormart, Inc. v.*

*Rhode Island*, 517 U.S. 484, 505 (1996). Since unsolicited, commercial facsimile

transmissions are responsible for the bulk of advertising cost shifting, banning

*unsolicited*, commercial facsimiles is a reasonable method to achieve Congress' goal of

reducing cost shifting. *See, e.g., Destination Ventures*, 46 F.3d at 56. The TCPA is a

narrow response to the "evil" that prompted it - unsolicited, commercial facsimile

transmissions. It prohibits no more communication than is necessary because it

proscribes the very activity that causes the economic harm at issue here and extends no

further.

    The TCPA directly advances the government's interest of protecting consumers from

bearing the costs of unwanted advertising. By carefully prohibiting only unsolicited,

commercial faxes, it satisfies the third *Central Hudson Gas* analysis.

### iv. The TCPA is not More Expansive Than Necessary

    The last inquiry to be made involves whether the regulation is more extensive than

necessary to serve the governmental interest. *Vuagniaux*, 802 Ill.2d at 1167. It should be

first noted that the "least restrictive means" test has no role in the commercial speech

context. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995). The test employed

here is not whether Congress used the least restrictive means, but rather whether there:

> is a 'fit' between the legislature's ends and the means chosen to accomplish those
> ends, a fit that is not necessarily perfect, but reasonable; that represents not
> necessarily the single best disposition but one whose scope is 'in proportion to the
> interest served,' that employs not necessarily the least restrictive means but . . . a
> means narrowly tailored to achieve the desired objective.

*American Blast Fax, Inc.*, 323 F.3d at 659 (internal quotations and citations omitted).

    In this case, the TCPA leaves open ample alternative means of communication for

commercial advertisers to engage in. Those who wish to communicate advertisements by

facsimile transmission are still allowed to do so as fax advertising is permissible with the prior consent of recipients. *See id.* Those impacted by the law are, of course, also still free to advertise in other media formats, such as television or newspaper, where the advertiser bears the cost of publishing the advertisement. The TCPA is not excessively expansive; instead, it protects the owners of facsimile machines from the very evil that prompted the legislation.

The central inquiry here is whether the scope of the TCPA's speech restriction is proportionate to the interests served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). The interests here include the burdensome shift of costs from the advertiser to the consumer and the disruption of the use of facsimile machines. It is apparent that Congress' decision to prohibit only those facsimile transmissions that caused the economic injuries described represents a reasonable fit between the "legislature's ends" and the "means chosen to accomplish those ends" – the implementation of the TCPA. *American Blast Fax, Inc.*, 323 F.3d at 659 (internal quotations and citations omitted).

"It was not unreasonable for Congress to choose a system that protects those who would otherwise be forced to bear unwanted burdens over those who wish to send and receive unsolicited fax advertising." *Id.* The restriction employed by the TCPA is adequately tailored to protect consumers from the unwanted burdens of receiving unsolicited faxes. This is not a case where a complete ban of speech is in place. Rather, several alternative channels of communication remain open to commercial speakers. Because it has already been determined that the TCPA directly advances the substantial interest of protecting consumers from unwanted commercial faxes, and that it leaves open

alternative channels of communication, the court finds that the TCPA achieves a reasonable fit between the means adopted and the ends it seeks to serve.

The court finds that, as written, the TCPA satisfies all four elements of the *Central Hudson Gas* analysis.

### b.  Vagueness Challenges

Defendants assert that the TCPA is void for vagueness because it "does not define what constitutes prior express invitation or permission nor what would constitute a facsimile." Mot. to Dismiss at 4. Because of this, Defendants assert, they cannot know what is necessary to avoid liability. Memo. in Support of Mot. to Dismiss at 10. Criminal laws may be deemed unconstitutionally vague when they "fail to provide the kind of notice that would enable a person of ordinary intelligence to understand what conduct is prohibited." *People v. Law*, 202 Ill.2d 578, 582 (Ill. 2002) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)). Criminal laws may also be declared unconstitutionally vague when they fail to provide explicit standards of enforcement. *Id.*

Before this court can conduct a vagueness analysis, it must first turn its attention to the conduct of the Defendants challenging the law. *Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 495 (1981). "A Plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* In this case, the Defendants have allegedly sent an unsolicited, commercial facsimile transmission to the Plaintiff. As a result, their conduct is "clearly proscribed" by the TCPA and they are not proper parties to contest its alleged vagueness. Nor is it possible for Defendants to assert a facial challenge against the statute, where the statute clearly applies to their conduct, because the overbreadth doctrine does not apply to

commercial speech. *See Waters v. Churchill*, 511 U.S. 661, 670 (1994). <u>The court finds that the Defendants lack standing to make a vagueness challenge to the TCPA.</u>

Defendants also assert that 720 ILCS 5/26-3, an Illinois criminal provision prohibiting unsolicited, commercial facsimile transmissions, is unconstitutionally vague. Plaintiff, however, has not based its causes of action on this statute and Defendants' challenge is, accordingly, not ripe. Hypothetical cases or controversies, challenging laws that are not being enforced against the Defendants, do not satisfy the requirements of the ripeness doctrine. *Simcox v. Simcox*, 131 Ill.2d 491, 498 (citing *Poe v. Ulman*, 367 U.S. 497, 507 (1961)).

Even if Defendants could properly raise the issue of vagueness, the terms "prior express invitation or permission" and "facsimile" do not suffer from the constitutional malady of vagueness. To guide the Defendants, this court looks to Funk & Wagnall's New International Dictionary of the English Language for assistance. Funk & Wagnall's Dictionary defines "prior" as "preceding in time, order, or importance." Funk & Wagnall's New International Dictionary of the English Language 1002 (2003). It defines "express" as "to put (thought or opinion) into spoken or written words." *Id.* at 448. Funk & Wagnall's defines "invitation" as "the act of inviting; courteous solicitation to come to some place or to do some act; especially a requesting of another's company: a standing *invitation* to dinner." *Id.* at 670. "Permission" is defined as "the act of permitting or allowing; license granted; formal authorization; consent." *Id.* at 941. Lastly, "facsimile" is defined as "an exact copy or reproduction, often differing in scale but always identical or closely imitative in detail, material, etc." *Id.* at 453. These are hardly unfamiliar words or phrases with uncertain meaning.

10

To be successful in their void for vagueness claim, Defendants must be able to illustrate why the challenged phrases "fail to provide the kind of notice that would enable a person of ordinary intelligence to understand what conduct is prohibited." *Law*, 202 Ill.2d at 582. Instead, Defendants make vague and conclusory allegations. The court finds that the challenged terms share a common and well-understood meaning which would otherwise deny the Defendants' vagueness challenge.

### c. The TCPA Does not Violate Due Process or Provide for Excessive Fines

Defendants next argue that the TCPA violates their right to Due Process and that the award of statutory damages would violate the Eighth Amendment's prohibition against excessive fines. The Due Process Clause of the Fifth and Fourteenth Amendments prohibits governments from imposing "grossly excessive" punishments. *TXO Production Corp. v. Alliance Resource Corp.*, 509 U.S. 443, 454 (1993). The TCPA provides that a defendant, if found liable, must compensate the plaintiff for actual monetary loss per violation or $500 in damages, whichever is greater. *See* 47 USC § 227(b)(3). Defendants explain that allowing damages of $500 per violation of the TCPA is "wholly disproportionate to the offense and completely unreasonable."

A statutory penalty violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919). At least two federal courts have upheld the damages provided by the TCPA under similar challenges. *See, e.g., Texas v. American Blast Fax, Inc.*, 121 F.Supp.2d 1085, 1090 (W.D. Texas 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1167 (S.D. Ind. 1997). As the *American Blast Fax, Inc.* court explained:

> [T]he TCPA damages provision was not designed solely to compensate each
> private injury caused by unsolicited fax advertisements, but also to address and
> deter the overall public harm caused by such conduct. As the court stated in
> Kenro, the TCPA was meant to take into account the difficulty to quantify
> business interruption costs imposed upon recipients of unsolicited fax
> advertisements, effectively deter the unscrupulous practice of shifting these costs
> to unwitting recipients of junk faxes, and provide adequate incentive for an
> individual plaintiff to bring suit on his own behalf. The Supreme Court has stated
> that statutory damages designed to address such public wrongs need not be
> confined or proportioned to [actual] loss or damages; for, as it is imposed as a
> punishment for the violation of a public law, the Legislature may adjust its
> amount to the public wrong rather than the private injury, just as if it were going
> to the state.

121 F.Supp.2d at 1090 (internal quotations omitted). The propriety of a penalty must be

tested "with due regard for the interests of the public, the numberless opportunities for

committing the offense, and the need for securing uniform adherence" to the law.

*Williams*, 251 U.S. at 67.

The $500 minimum damages provision withstands constitutional scrutiny when

measured against the overall public harm attributed to unsolicited, commercial faxes.

These identified harms include substantial interference with facsimile machines and the

shifting of advertising costs from the advertiser to the consumer. *American Blast Fax,*

*Inc.*, 121 F.Supp.2d at 1091. <u>Minimum damage clauses that are addressed to remedying</u>

<u>a public wrong do not violate the Due Process Clause. The court finds that the TCPA</u>

<u>passes constitutional muster under the Due Process Clause.</u>

With regard to the Eighth Amendment excessive fine issue, fines are valid unless they

are grossly disproportionate to the nature of the violation. *United States v. Bajakajian,*

524 U.S. 321 (1998). However, in *Browning-Ferris Indus. Of Vermont, Inc. v. Kelco*

*Disposal, Inc.*, 492 U.S. 257, 264 (1989), the Supreme Court explained that the excessive

fine provision of the Eighth Amendment "does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." The excessive fines provision was concerned with the prosecutorial power of the state, not the extent or purposes of civil damages. Since the TCPA has allowed for private causes of actions, as demonstrated here, that provides for money damages, it does not implicate the Eighth Amendment. Accordingly, the court finds that the TCPA's monetary damages do not amount to excessive fines prohibited by the Eighth Amendment.

### 4. Conversion

Plaintiff alleges that the Defendants used Plaintiff's paper, ink, or toner for Defendants' advertising purposes. That rendered the paper, ink, and toner unusable by Plaintiff. Defendants, in turn, suggest that Plaintiff has failed to plead a sufficient cause of action for the tort of conversion. Specifically, Defendants attack Plaintiff's alleged failure to plead that the Defendants assumed control, dominion, or ownership of the paper and ink or toner. Several considerations are helpful in making the determination of whether a proper cause of action for conversion has been pleaded.

"The essence of conversion is not acquisition by the wrongdoer, but a wrongful deprivation of the owner thereof." *Dickson v. Riebling*, 30 Ill.App.3d 965, 967 (1st Dist. 1981). In fact, all that is required to demonstrate a successful showing of conversion is that the Defendants exercised control over the chattel "in a manner inconsistent with the plaintiff's right of possession." *Jensen v. Chicago & W.I.R. Co.*, 94 Ill.App.3d 915, 932 (1st Dist. 1981). In general, four factors must be established to succeed on a conversion claim: (1) the defendant wrongfully and without permission assumed control, dominion,

13

or ownership over the property; (2) the plaintiff has a right to the property; (3) plaintiff

has an absolute and unconditional right to the immediate possession of the property; (4)

the plaintiff made a demand for possession. *Western States Ins. Co. v. Louis E. Olivero &*

*Assoc.*, 283 Ill.App.3d 307, 310 (3d Dist. 1996).

At least one other court has already held that the first three factors of conversion are

met when a defendant sends unsolicited, commercial faxes to another's facsimile

machine because it shifts the costs of advertising onto the recipient. *See, e.g., Whiting*

*Corp. v. MSI Marketing, Inc.*, 02 CH 6332 at 14-15 (Cook County, Illinois April 3,

2003). This court adopts the reasoning of *Whitting Corp.* as persuasive. The Plaintiff has

an unqualified possessory ownership interest in its facsimile machine, paper, ink, and

toner. Beyond that, Defendants assumed control of the property when they sent

unsolicited facsimile transmissions to the Plaintiff. These facts alone satisfy the first

three factors of conversion. *See id.* Also, under established Illinois case law, Plaintiff

need not make a demand for conversion where there is another independent act of

conversion that can be demonstrated. *Jensen v. Chicago & Western Indiana R.R. Co.*, 94

Ill.App.3d 915, 933 (1st Dist. 1981). Since paper, toner, and ink would be consumed

while the facsimile machine was overtaken by Defendants' facsimile transmission, other

independent acts of conversion are reasonably found here, thus eliminating the

requirement that the Plaintiff need make a demand for possession for there to be a proper

claim of conversion. *See Whiting Corp.*, 02 CH 6332 at 15 (Cook County, Illinois April

3, 2003). The court finds that conversion has been sufficiently plead.

### 5. The Illinois Consumer Fraud and Deceptive Business Practices Act

The Defendants have asked that Plaintiff's Consumer Fraud claim be dismissed because it fails to state a cognizable cause of action. The Act protects consumers against any deceptive or unfair acts. 815 ILCS 505/2. In *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403 (2002), the Supreme Court of Illinois laid forth the elements for a successful claim under the Consumer Fraud Act. To determine whether a business practice is unfair or deceptive, a court must consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers. *Id.* at 417-18. It is not required that all three factors be met for a successful Consumer Fraud action to be illustrated. *Id.* at 418. Rather, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Chesire Mortgage Services, Inc. v. Montes*, 223 Conn. 80, 106 (Conn. 1992)).

In analyzing the first factor, transmitting unsolicited, commercial facsimile transmissions violates established Illinois public policy. The public policy of Illinois is found in its Constitution, its statutes, and its judicial decisions. *Reed v. Farmers Ins. Group*, 188 Ill.2d 168, 174-75 (Ill. 1999) (citing *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill.2d 333, 341 (Ill. 1989)). The Illinois Legislature has prohibited the transmission of unsolicited, commercial facsimiles, pursuant to 720 ILCS 5/26-3(b), and this reflects the public policy of Illinois by prohibiting the unsolicited facsimile transmission of commercial advertisements. Thus, the act of sending unsolicited, commercial facsimile transmissions violates recognized public policy of Illinois, satisfying the first factor in *Robinson*.

The second factor this court must analyze in determining whether a violation of the
Consumer Fraud Act exists is whether the act in question is immoral, unethical,
oppressive or unscrupulous. *Robinson*, 201 Ill.2d at 417-18. In this instance, the Plaintiff
has attached one facsimile to its Complaint as a demonstration of the communications
sent by the Defendants. From the allegations contained in Plaintiff's Complaint, this
court must determine whether Defendants' actions are immoral, unethical, oppressive or
unscrupulous. Yet, it remains to be seen, by means of the discovery process, whether
additional evidence will be produced evidencing conduct that is oppressive in this case.
Certainly the transmission of one unsolicited, facsimile communication is annoying, but
hardly oppressive. Yet, Plaintiff brings a class action complaint, alleging that Defendants
may be engaged in a pattern of sending excessive amounts of faxes, thus amounting to an
oppressive practice. The determination of this factor will require further evidence and
development of the class action in this suit. As a result, it would be improper to dismiss
this count at such a preliminary stage.

Considering the third factor, the Plaintiff must allege a substantial injury as a result of
the Defendants' actions. There is no basis for the award of nominal or presumed
damages under the Consumer Fraud Act. *Duran v. Leslie Oldsmobile, Inc.*, 229
Ill.App.3d 1032, 1041 (2d Dist. 1992). And there are not initial facts before the court
from which it could make a determination about whether the aggregate injuries sustained
are substantial. As a result, dismissing this class action count on this accord would be
premature at this stage.

16

The court finds that Plaintiff has pleaded the minimum requirements for a claim under the Consumer Fraud Act.

### 6. *De Minimis Non Curat Lex*

Defendants also buttress their claims supporting the dismissal of Plaintiff's Complaint with assertions that the damages are so infinitesimal that damages should not be awarded. T.J. Copy Products cites the doctrine of *de minimus non curat lex* as a maxim that precludes relief in this case. Illinois recognizes the rule that where a party has established the infringement of a right, damages are presumed. *Ainsworth v. Century Supply Co.*, 295 Ill.App.3d 644, 649-50 (2d Dist. 1998) (citing *Leslie Oldsmobile, Inc.*, 229 Ill.App.3d at 1040). This presumption entitles parties to nominal damages. In this case, the TCPA demonstrates that Plaintiff's rights may have been infringed, allowing for the award of, at minimum, nominal damages. Thus, no basis for dismissal is apparent as a result of Defendants' assertions

Furthermore, Plaintiff correctly notes that both Illinois and the United States have a firmly established public policy against the transmission of unsolicited, commercial facsimile transmissions. In fact, the TCPA itself provides for damages to be awarded up to $500 per violation of the Act. 47 U.S.C. § 227(c). The TCPA was born out of a concern about the impact of unwanted, commercial faxes being sent to fax machines. The TCPA addresses this concern and creates a financial disincentive for this to occur. Thus, because the TCPA provides for statutorily conferred damages to compensate for the public wrongs addressed by the Act, it cannot be said that the damages at issue are *de minimis.*

## FINDINGS

The court makes the following findings that:

1.  Defendants' Jurisdictional Arguments are Without Merit.

    a.  Plaintiff has standing to maintain this action.
    b.  Plaintiff has presented a viable private claim before this court.
    c.  Plaintiff is a person under the TCPA.

2.  The TCPA is Constitutional.

    a.  The TCPA Satisfies First Amendment Concerns
        i.   The speech at issue is not unlawful or misleading.
        ii.  The TCPA easily passes the substantial governmental interest analysis.
        iii. The TCPA directly advances the government's interest of protecting consumers from bearing the costs of unwanted advertising.
        iv.  The TCPA achieves a reasonable fit between the means adopted and the ends it seeks to serve.

    b.  The TCPA Satisfies the Vagueness Analysis
        i.   The Defendants lack standing to make a vagueness challenge to the TCPA.
        ii.  The challenged terms share a common and well-understood meaning which would otherwise deny the Defendants' vagueness challenge.

    c.  The TCPA passes constitutional muster under the Due Process Clause.

    d.  The TCPA's monetary damages do not amount to excessive fines prohibited by the Eighth Amendment.

3.  Conversion has been sufficiently pleaded.

4.  Plaintiff has pleaded the minimum requirements for a claim under the Consumer Fraud Act.

5.  The damages at issue are not *De Minimis*.

18

The court finds that the Defendant has not demonstrated that the TCPA is unconstitutional under the First, Fifth, Eighth or Fourteenth Amendment to the United States Constitution.  The court also finds that the Plaintiff has adequately pleaded legally cognizable causes of action.

## HOLDING

It is therefore hereby ordered that Defendants' motion to dismiss is denied in its entirety.  Defendants shall answer or otherwise plead within 28 days.

ENTER:_____DAVID M. HALL_____
              JUDGE DAVID M. HALL

Dated this _____ April 2004 at Waukegan, Illinois

19

**IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, WHEATON, ILLINOIS**

ROBIN HILL DEVELOPMENT ) 
COMPANY, an Illinois corporation )
On behalf of itself and on behalf of all )
Others similarly situated, )
 )
     Plaintiff, )
 )
        -vs- )    01 L 527
 )
JD&T ENTERPRISES, INC. )
D/b/a TRAVEL TO GO, )
A California Corporation and )
DIANE, TROY and JEANETTE NUNEZ, )
 )
     Defendants )

**FILED**
02 OCT -3 AM 11:10
CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

## ORDER

    The defendant has filed a motion to dismiss the above captioned case alleging that the Telephone Consumer Protection Act, 47 U.S.C., Sec. 227 (T.C.P.A.) violates U. S. Constitution.

    The parties agree that this issue has been litigated in a number of jurisdictions. They also agree that the standard to be applied to this motion is the four part standard set forth in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557 (1980).

    First, the parties agree that the commercial speech is not alleged to be false or misleading.

    Second, the interest in preventing the cost shifting effect of unsolicited fax advertising is substantial to protect the owners of fax machines from the cost shifting aspects inherent in this type of advertising.

    Third, the T.C.P.A. naturally furthers the interest in preventing cost shifting effects that result from fax advertising even if it does not eliminate them altogether.

    Finally this restriction is not more restrictive than necessary to advance the interest in preventing the cost shifting effects that result from fax advertising in actual cost and the disruption of business.

The T.C.P.A. need not contain a scienter element. The court accepts the reasoning set forth in <u>Texas</u> v. <u>American BlastFax, Inc.</u>, 121 F.Supp.2d 1085, 10092 N10. (W.D.Tex 2000).

The T.C.P.A. sets forth the conduct it prohibits and the severity of the penalty of $500 for a single violation. The damage provision is reasonable as a means to deter unsolicited fax advertisement and creating an incentive for plaintiffs to sue.

Now therefore, the court finds that the T.C.P.A. does not violate the Constitution and the motion to dismiss is denied.

Date: Oct 3, 2002

ENTER: