**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| IRA HOLTZMAN, individually and as the representative of a class of similarly-situated persons,<br>   Plaintiff,<br><br>v.<br><br>MICHAEL P. CAPLICE d/b/a M. P. CAPLICE & ASSOCIATES,<br>   Defendant. | No. 07 C 7279<br><br>Judge Manning<br><br>Magistrate Judge Cole |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, IRA HOLTZMAN, responds as follows to the Motion to Dismiss filed by defendant, MICHAEL P. CAPLICE d/b/a M.P. CAPLICE & ASSOCIATES.

**INTRODUCTION**

Defendant illegally faxed advertisements to Plaintiff and others without first obtaining their express permission or invitation. Plaintiff filed this putative class action in Illinois state court alleging claims against Defendant under the federal Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, (Count I), common law conversion of paper, toner and time (Count II), and an unfair practice prohibited by the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA") (Count III). On May 3, 2007, Defendant removed the case to this Court for federal question jurisdiction, citing the Appellate Court's decision in *Brill v. Countrywide Home Loans*, 427 F. 3d 446 (7th Cir. 2005). Doc. 1 at ¶ 1.

Defendant has moved for dismissal pursuant to Rule 12(b)(6), arguing that Plaintiff's TCPA claim fails to state a claim upon which relief may be granted. Defendant argues that: (1) the TCPA is unconstitutional; (2) Plaintiff must plead that Defendant's faxed advertisement was received on Plaintiff's fax machine; (3) Plaintiff has not sufficiently alleged his conversion

claim; and (4) Plaintiff has not sufficiently alleged a claim for ICFA.

Defendant's arguments are incorrect because: (1) the TCPA's prohibition of junk faxes and its statutory damage remedy are constitutional; (2) the FCC has held that junk faxes need not be sent to a stand-alone fax machine in order for the sender to violate the TCPA; (3) Plaintiff need not allege that Defendant asserted control or ownership over the property nor allege a demand for return of the property to state a claim for conversion; and (4) Plaintiff has adequately alleged an unfair practice. Therefore, the Court should deny Defendant's Motion to Dismiss.

## FACTS

On or about November 13, 2007, Defendant faxed an advertisement to Plaintiff. ¶ 11.[1] Plaintiff had not invited or given Defendant permission to fax advertisements. ¶ 12. Defendant faxed the same and similar advertisements to Plaintiff and more than 39 other recipients without first receiving their express permission or invitation. ¶ 12. By faxing these unsolicited advertisements, Defendant improperly and unlawfully converted the recipients' fax machines, toner, and paper to its own use. ¶ 34. Defendant also converted their employees' time to Defendant's own use. ¶ 34. Finally, Defendant's unsolicited fax practice is an unfair practice, because it violates public policy and forced Plaintiff and the other class members to incur expense without any consideration in return. ¶ 46. Defendant's practice effectively forced Plaintiff and the other class members to pay for Defendant's advertising campaign. ¶ 46.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests not whether the defendant will prevail on the merits, but whether the plaintiff has properly stated a claim for which relief may be granted. *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115 (7th Cir. 1995). The court must

---

[1] References to the Class Action Complaint are by paragraph numbers, "¶ ___."

2

accept as true all of the plaintiff's well-pleaded factual allegations, as well as all reasonable inferences generating therefrom. *Id.* The court should dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford v. Sullivan*, 105 F.3d 354 (7th Cir. 1997). Ambiguities are construed in favor of plaintiff. *Curtis v. Bembenek*, 48 F.3d 281 (7th Cir. 1995).

## ARGUMENT

**I.     THE TCPA DOES NOT VIOLATE THE FIRST AMENDMENT TO THE U.S. CONSTITUTION.**

Federal and state courts, including at least three judges in this Court, have thoroughly examined the TCPA's constitutionality and rejected the constitutional arguments Defendant makes here. *See Centerline Equipment Corp. v. Banner Personnel Service, Inc.*, 2008 WL 597604 (N.D. Ill. March 3, 2008)(Pallmeyer, R.)(Ex. A); *Italia Foods, Inc. v. Marinov Enterprises, Inc.*, 2007 WL 4117626 (N.D. Ill. Nov. 16, 2007)(Ex. B); *Phillips Randolph Enterprises, LLC v. Rice Fields*, 2007 WL 129052 (N.D. Ill. Jan. 11,2007)(Kocoras, J.)(Ex. C).

These courts found that the TCPA satisfies concerns raised under the First Amendment relating to the regulation of commercial speech, pursuant to *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). Under this test, if commercial speech is within the ambit of the First Amendment (*i.e.*, concerns lawful activity and is not misleading), the government must have a substantial interest in regulating it. *See id.* The regulation must directly advance the interest at issue, and it must not be more extensive than necessary to serve the interest the government has asserted. *See id.* The TCPA satisfies the test.

**A.     First, The United States Has A Substantial Interest In Eliminating The Cost-Shifting And Interruptions Unsolicited Advertising Faxes Cause.**

In enacting the TCPA, Congress recognized that the United States has a substantial

3

interest in stopping fax marketers from shifting their advertising costs to fax recipients without their consent and in stopping interruptions caused by unwanted faxes. Both are substantial interests under the Supreme Court's commercial-speech jurisprudence.

Congress recognized that unsolicited facsimile advertising shifts the costs of advertising from the sender to the recipient. H.R. Rep. No. 102-317, at 10 (1991). Fax advertising differs from other advertising because when an advertiser sends a fax solicitation, the recipient assumes both the cost of using the fax machine, and the cost of the fax paper, whereas when an advertiser sends junk mail, "the recipient pays nothing." H.R. Rep. No. 102-317, at 25.

In addition to preventing unfair cost-shifting, Congress recognized a substantial governmental interest in preventing the business disruptions that result from unsolicited fax advertising. Congress correctly recognized that a facsimile requires several minutes to receive and print a fax, during that time it is unable to process business communications, and most fax machines cannot handle more that one message at a time. H.P. No. 102-317, at 25.

Federal courts considering this issue have found these interests substantial or compelling. *Missouri v. American Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 55 (9th Cir 1995); *Phillips Randolph*, 2007 WL 129052 ("[T]here can be no question that the TCPA's prohibitions on unsolicited faxes materially alleviates the harms Congress identified as associated with their receipt.")(Ex. C).

Courts in Illinois have found a substantial interest in the TCPA, too. *See CE Design, Ltd. v. Peripheral Solutions, Inc.*, No. 04 L 564 (Lake County, Illinois March 8, 2005)("It is clear that both the United States and Illinois have a substantial interest in protecting unwitting owners of facsimile machines from bearing the costs of unwanted, commercial fax advertising.") (Ex. D); *Eclipse Manufacturing Co. v. T.J. Copy Products, Inc.*, 03 CH 1344 (Lake County, Illinois April

23, 2004) ("Like many courts before, this court holds that the TCPA easily passes the substantial governmental interest analysis.") (Ex. E); *Whiting Corp. v. MSI Marketing, Inc.*, No. 02 CH 6332 (Cook County, Illinois April 3, 2003) ("[I]t appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity") (Ex. F); *Mark Chair Co. v. Mortgage Managers, Inc.*, No. 02 LK 247 (Kane County, Illinois, December 20, 2002) (explaining that the "government interest in obviating the cost shifting of unsolicited fax advertising from the sender to the recipient thereof and preemption of the recipient's use of its fax machine is substantial") (Ex. G); *Italia Foods,* 2007 WL 4117626 ("We find that the federal government has a substantial interest in preventing the costs and burdens associated with unsolicited commercial faxes.") (Ex. B).

**B.     Second, The TCPA Directly Advances The United States' Interests.**

The TCPA directly advances substantial interests identified by Congress. Since unsolicited, commercial facsimile transmissions are responsible for the bulk of advertising cost shifting, Congress's act of banning unsolicited, commercial facsimiles is a reasonable method to achieving its goal of reducing cost shifting. *Destination Ventures, Ltd. v. FCC*, 844 F. Supp. 632, 637 (D. Or. 1994). As an Illinois state court judge explained:

> The TCPA is a narrow response to the "evil" that prompted it – unsolicited, commercial facsimile transmissions. It prohibits no more communication than is necessary because it proscribes the very activity that causes the economic harm at issue here and extends no further. The TCPA directly advances the government's interest of protecting consumers from bearing the costs of unwanted advertising. By carefully prohibiting only unsolicited, commercial faxes, it satisfies the third *Central Hudson Gas* analysis. [*Eclipse Manufacturing*, 03 CH 1344 (Ex. E).]

*See also Italia Foods,* 2007 WL 4117626 ("We agree and conclude that the TCPA's ban on unsolicited commercial faxes directly advances the governmental interest of reducing the unwanted costs that they impose.") (Ex. B); *Centerline Equipment,* 2008 WL 597604 ("[t]he TCPA directly advances the legitimate government interest in controlling the costs of unwanted

5

faxes.") (Ex. A).

### C. Third, The TCPA Is Not More Expansive Than Necessary.

The last inquiry is whether the regulation is more extensive than necessary to serve the governmental interest. *Vuagniaux*, 802 Ill. 2d at 1167. It should be first noted that the "least restrictive means" test has no role in the commercial speech context. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995). The test is not whether Congress used the least restrictive means, but whether there:

> Is a "fit" between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is "in proportion to the interest serve," that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective. [*American Blast Fax, Inc.*, 323 F.3d at 659.]

As an Illinois state court judge explained:

> [T]he TCPA leaves open ample alternative means of communication for commercial advertisers to engage in. Those who wish to communicate advertisements by facsimile transmission are still allowed to do so as fax advertising is permissible with the prior consent of recipients. Those impacted by the law are, of course, also still free to advertise in other media formats, such as television or newspaper, where the advertiser bears the cost of publishing the advertisement. The TCPA is not excessively expansive; instead, it protects the owners of facsimile machines from the very evil that prompted the legislation. [*Eclipse Manufacturing*, 03 CH 1344 (Ex. E).]

*See also Italia Foods,* 2007 WL 4117626 ("We find that the TCPA satisfies this requirement as it places the burden on the senders of unsolicited commercial faxes to obtain consent, rather than upon the recipient to "opt out" as defendant's proposal would so impose") (Ex. B).

The central inquiry is whether the scope of the TCPA's speech restriction is proportionate to the interests served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). The interests include the burdensome shift of costs from the advertiser to the consumer and the disruption of the use of facsimile machines. It was apparent that Congress's

decision to prohibit only those facsimile transmissions that caused the economic injuries described represents a reasonable fit between the "legislature's ends" and the "means chosen to accomplish those ends" – the implementation of the TCPA. *American Blast Fax, Inc.*, 323 F.3d at 659 ("It was not unreasonable for Congress to choose a system that protects those who would otherwise be forced to bear unwanted burdens over those who wish to send and receive unsolicited fax advertising."). The restriction employed by the TCPA is tailored to protect consumers from the unwanted burdens of receiving unsolicited faxes.

## II.     THE TCPA DOES NOT PROVIDE EXCESSIVE FINES.

Defendant argues that the TCPA violates Defendant's due process rights and an award of statutory damages will violate the Eighth Amendment's prohibition against excessive fines. A statutory penalty violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919). At least four federal courts have upheld the damages provided by the TCPA under similar challenges. *See Texas v. American Blast Fax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997), *Italia Foods,* 2007 WL 4117626 (Ex. B); *Centerline Equipment,* 2008 WL 597604 (Ex. A).

As the *American Blast Fax* court explained:

> [T]he TCPA damages provision was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct. As the court stated in *Kenro*, the TCPA was meant to take into account the difficulty to quantify business interruption costs imposed upon recipients of unsolicited fax advertisements, effectively deter the unscrupulous practice of shifting these costs to unwitting recipients of junk faxes, and provide adequate incentive for an individual plaintiff to bring suit on his own behalf. The Supreme Court has stated that statutory damages designed to address such public wrongs need not be confined or proportional to [actual] loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its

7

amount to the public wrong rather than the private injury, just as if it were going to the state. [*Id.*, 121 F. Supp. 2d at 1090.]

The propriety of a penalty must be tested "with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence" to the law. *Williams*, *supra*, 251 U.S. at 67.

The TCPA's $500 statutory damage withstands constitutional scrutiny when measured against the overall public harm attributed to unsolicited, commercial faxes. These identified harms include substantial interference with facsimile machines and the shifting of advertising costs from the advertiser to the consumer. *American Blast Fax, Inc.*, 121 F. Supp. 2d at 1091. In arriving at such a penalty, Congress also took into account the costs of business interruptions and wasted time. The amount must be sufficient to serve as a disincentive to the practice of faxing unsolicited advertisements for any potential likely senders. *H. R. Rep.* No. 102-317, at 1011998.

Defendant also argues the TCPA's $500 statutory damage is an unconstitutionally excessive "fine" violating the Eighth Amendment. The statutory damage is not a fine, nor (as argued above) is it excessive. The Supreme Court has explained a "fine" is "a payment to a sovereign as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998). Because the statutory damage for violating the TCPA goes to individual plaintiffs rather than the U.S. Treasury, the award is not a fine and does not implicate the Eighth Amendment.

**III.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S CONVERSION CLAIM.**

Illinois law requires that this Court reject Defendant's arguments.[2]

First, Defendant argues that Plaintiff does not allege that Defendant converted any specific or identifiable property. However, as a plain reading of the Complaint reveals,

---

[2]    Federal district courts and other Illinois circuit courts have rejected the same arguments Defendant make with respect to the conversion claim. *See CE Design v. Peripheral Solutions*,

8

Defendant improperly and unlawfully converted Plaintiff and other class members' fax machines, toner and paper to its own use. ¶ 34.  Defendant also converted Plaintiff's employees' time to Defendant's own use. ¶ 34.  The paper and toner resembles "specific money in coin or bills," which can be the subject of a conversion action under Illinois law.  *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002); *Centerline Equipment,* 2008 WL 597604 (Ex. A).

Second, Defendant argues that Plaintiff does not allege that Defendant asserted control or ownership over the property.  Defendant misstates the law.  Altering a chattel to materially change its characteristics can constitute conversion, even if the defendant never comes into possession of the chattel.  *Jensen v. Chicago and Western Indiana. RR*. Co., 94 Ill.App.3d 915, 932 (1st Dist. 1981)("The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner").  Plaintiff sufficiently alleges that Defendant permanently misappropriated the class members' fax members' fax machines, toner, paper, and employee time to Defendant's own use.  ¶ 36.

Third, Defendant argues that that Plaintiff does not allege that he ever made a demand for return of the "property."  Under Illinois law, Plaintiff need not make a demand for possession where there is another independent act of conversion that can be demonstrated.  *Jensen*, 94 Ill.App.3d at 933.  Since paper, toner, and ink would be consumed while the facsimile machine was used for Defendant's fax transmission, other independent acts of conversion are reasonably found here, thus eliminating the requirement that Plaintiff demand possession.  *Eclipse Manufacturing,* 03 CH 1344 (Ex. E).

Lastly, Defendant argues that conversion of ink and toner is *de minimis*.  Both the United States Congress and the Illinois General Assembly have recognized that unsolicited fax

---

No. 04 L 564 (Ex. D); *Eclipse Manufacturing*, No. 03 CH 1344 (Ex. E); *Centerline Equipment,* 2008 WL 597604 (Ex. A).

advertisements are sufficiently detrimental and outrageous that they should be made illegal by specific statutory provisions. 47 U.S.C. § 227; 720 ILCS 5/26-3. This is hardly the sort of activity the Court should view as trifling or as something Plaintiff should simply ignore. The wisdom of the state and federal legislatures—legislative decisions that Illinois residents should not be subjected to unsolicited fax advertisements—is well founded.

Furthermore, Illinois courts have permitted conversion claims to be brought for only nominal damages. Where the law allows recovery of nominal damages, Plaintiff need not prove any damages in order to maintain an action. *Ainsworth v. Century Supply Co.,* 295 Ill. App. 3d 644 (2d Dist. 1998) (citing *Brent v. Kimball,* 60 Ill. 211, 214-15 (1871)) (plaintiff could maintain an action for nominal damages for the death of his dog with no pecuniary value). Nominal damages are recoverable for the intentional tort of conversion. *Crosby v. City of Chicago,* 11 Ill. App. 3d 625, 630 (1st Dist. 1973) (conversion of automobile justified award of nominal damages even if the plaintiff could prove no actual damages); *Centerline Equipment,* 2008 WL 597604 ("The court concludes that Illinois law does not require application of the *de minimis* rule to class conversion claims founded upon very small individual losses, so long as those losses can plausibly be inferred to be substantial in the aggregate.")(Ex. A).

## IV.     PLAINTIFF ADEQUATELY ALLEGES AN UNFAIR PRACTICE CLAIM.

Defendant argues that Plaintiff has failed to allege sufficiently deceptive conduct or unfair practice. An Illinois Federal district court and other Illinois circuit courts have rejected the same arguments Defendant make with respect to the ICFA.[3]

A plaintiff may allege that a practice is unfair without alleging that it is also deceptive.

---

[3]     *See CE Design*, No. 04 L 564 (Ex. D); *Eclipse Manufacturing,* No. 03 CH 1344 (Ill. Cir. Ct. (Ex. E); *Centerline Equipment,* 2008 WL 597604 ("[The] practice of sending unsolicited faxes violated public policy, deprived consumers of the choice to not receive advertising faxes, and caused a significant amount of harm to consumers.") (Ex. A).

*Mosiman v. BMW Fin. Servs. NA*, 321 Ill. App. 3d 386, 390 (3d Dist. 2001).  In *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002), the Supreme Court clarified the definition of an "unfair" practice.  The *Robinson* court recognized three independent criteria for evaluating whether a defendant's actions are "unfair" under the ICFA: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers.  The court adopted the following standard for weighing the three criteria, "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."  *Id.*, 201 Ill. 2d at 418 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106, 612 A.2d 1130, 1143 (1992)).  Here, Plaintiff alleges all three elements.

First, Defendant's unsolicited faxes "offend public policy," because they are illegal under both the TCPA and 720 ILCS § 5/26-3(b).  Any person guilty of violating Section 26-3(b) is subject to a fine in an amount up to $500.  *Id.*  Illinois' decision to outlaw junk faxes demonstrates that the behavior offends this State's "public policy."  Thus, the first *Robinson* factor is satisfied.

Second, Defendant's unlawful acts are immoral, unethical, oppressive or unscrupulous.  Junk faxes are illegal.  Plaintiff alleges that Defendant's practice of sending unsolicited facsimile communications "forced Plaintiff and other class members to incur expense without any consideration in return."  ¶ 46.  Plaintiff also alleges that Defendant's misconduct "caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time."  ¶ 48.  Defendant "forced the class members to pay for Defendants' advertising campaign." ¶ 46.  Therefore, Plaintiff has

adequately pleaded misconduct satisfying the second *Robinson* factor.

Third, costs that are imposed on an unwilling consumer can constitute a substantial injury. *Centerline Equipment,* 2008 WL 597604 ("Even very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole.")(Ex. A). "An injury may be sufficiently substantial if it does a small harm to a large number of people, or if it raises a significant risk of concrete harm." *American Financial Services Ass'n. v. FTC,* 767 F.2d 1354, 1365 (11th Cir. 1985). In *Elder v. Coronet Ins. Co.,* 201 Ill. App. 3d 733, 746 (1st Dist. 1990), the court held that conduct causes substantial injury when (1) plaintiffs have no choice but to sue or forego redress and (2) many claimants would otherwise be deprived of redress because of the modest size of their claims.

Plaintiff's allegations state a claim for substantial injuries through the receipt of unsolicited faxes. Plaintiff has alleged actual and substantial injury to itself and others. ¶ 47. Defendant's actions caused damages to Plaintiff and the other class members because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner consumed as a result. ¶ 49. Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machine for Defendant's illegal purpose. ¶ 49. Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's illegal faxes and that time otherwise would have been spent on Plaintiff's business activities. ¶ 49. Therefore, the third *Robinson* factor is sufficiently alleged.

**V.    THE TCPA APPLIES BROADLY TO ALL "TELEPHONE FACSIMILE MACHINES."**

The TCPA prohibits any person to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C. §

227(b)(1)(C). A "telephone facsimile machine," is defined in the statute as "equipment which has the capacity (A) to transcribe text or images, or both from paper into an electronic signal and transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). Defendant argues that the TCPA does not prohibit sending unsolicited faxes that are received by a "fax program on a computer" because that type of device is not a "telephone facsimile machine," as defined by the TCPA.

In a July 2003 Report & Order, the Federal Communications Commission ("FCC") determined that "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." 2003 WL 21517853 at ¶ 200 (Ex. H). The FCC further stated:

> A conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.
>
> * * *
>
> Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines. As the House Report accompanying the TCPA explained, "facsimile machines are designed to accept, process and print all messages which arrive over their dedicated lines. The fax advertiser takes advantage of this basic design by sending advertisements to available fax numbers, knowing that it will be received and printed by the recipient's machine." FCC Report at ¶ 200-202.

Defendant's reliance on *Levine v. 9 Net Ave., Inc*. and *Aronson v. Bright-Teeth Now, LLC* is misplaced as those trial court opinions were decided well before the FCC determined that faxes sent to personal computers and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes.

13

This Court <u>must</u> accept the FCC regulation as valid. 28 U.S.C. § 2342 ("The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47 . . ."); *FCC v. ITT World Communications*, 466 U.S. 463, 468 (1984); *Consol. Tel. Coop. v. W. Wireless Corp.*, 637 N.W.2d 699, 707 (N.D. 2001) ("Unless the FCC's rulings and regulations have been appropriately challenged in the proper federal forum, we are not at liberty to review the FCC's statutory interpretation even if we doubted its soundness, and we must apply the rulings and regulations as written.").

Therefore, as faxed advertisements that are received by a "fax program on a computer" are subject to the TCPA's prohibition on unsolicited faxes, Plaintiff need only allege that Defendant faxed an advertisement to Plaintiff. ¶ 11.

## VI.  PLAINTIFF HAS ADEQUATLY ALLEGED CLAIMS ON BEHALF OF A CLASS.

Finally, Defendant argues that the Court should dismiss the class allegations in Plaintiff's complaint because Defendant believes the Court should not certify a class. Arguments against class certification are best left for the class certification stage and typically are not proper for a motion to dismiss. *E.g., Power v. GMAC Mortgage Corp.*, No. 06 C 4983, 2007 WL 723509, *5 (N.D. Ill. March 7, 2007) (Kocoras, J.) ("The gist of Defendants' arguments in this motion is that the class claims are ill-suited to resolution as a class, not that no conceivable set of facts could lead to relief. These considerations are best resolved after crystallization in a fully developed motion for class certification under <u>Fed.R.Civ.P. 23</u>. Consequently, the motion to strike is denied."); *Palmer v. Combined Ins. Co. of America*, No. 02 C 1764, 2003 WL 466065, *6 (N.D. Ill. Feb. 24, 2003) (Zagel, J.) ("Combined is a unique company in structure, and because of its unusual nature, these class allegations are also atypical. It is possible that this case may prove to

be the rare exception to the general rule. At the same time, it is entirely possible that everything that Combined has argued is true and that class certification is doomed to fail. However, the pleadings alone do not prove this, and at this early stage in the case, Ms. Palmer is entitled to a shot at proceeding with the class action.  Therefore, Combined's motion to strike the class allegations is denied in full."); *Delise v. Federal Express Corp.*, No. 99 C 4526, 2001 WL 321081, *2 (N.D. Ill.  March 30, 2001) (Lefkow, J.) ("The court is not prepared at this juncture (before any discovery on the class allegations or a motion to certify) to dismiss plaintiff's class allegations. … In short, the court concludes that defendant's motion is premature.").

Here, Plaintiff has alleged all of the required elements of a class action.  Plaintiff seeks to represent a class of persons to whom Defendant faxed unsolicited advertisements.  Plaintiff has not been able to conduct discovery yet and Plaintiff has not yet filed a brief in support of class certification.  Defendant's premature arguments against class certification should be denied, and addressed during the class certification stage of this case.

## **CONCLUSION**

For all these reasons, the Court should deny Defendant's Motion to Dismiss.

    Respectfully submitted,

By:   s/Phillip A. Bock
      One of Plaintiff's attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | BOCK & HATCH, LLC |
| ANDERSON + WANCA | 134 N. LaSalle Street, Suite 1000 |
| 3701 Algonquin Road, Suite 760 | Chicago, IL  60602 |
| Rolling Meadows, IL  60008 | Telephone:  312/658-5500 |
| Telephone:  847/368-1500 | |

## **CERTIFICATE OF SERVICE**

  The undersigned attorney hereby certifies that, on March 31, 2008, he caused a copy of the foregoing Response Brief to be served by CM/ECF upon all counsel of record.

                 /s Phillip A. Bock