Westlaw.

Slip Copy                                                                                                           Page 1
Slip Copy, 2008 WL 597604 (N.D.Ill.)
(Cite as: Slip Copy)

Centerline Equipment Corp. v. Banner Personnel Service, Inc.
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
CENTERLINE EQUIPMENT CORP., individually and on behalf of all others similarly situated, Plaintiff,
v.
BANNER PERSONNEL SERVICE, INC. and John Does 1-10, Defendant.
No. 07 C 1611.

March 3, 2008.

Daniel A. Edelman, Cathleen M. Combs, Heather A. Kolbus, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Plaintiff. James Kenneth Borcia, Katherine Louise Haennicke, Panagiotis V. Albanis, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Jonathan E. Zimmerman, United States Department of Justice, Washington, DC, Thomas P. Walsh, United States Attorney's Office (NDIL), Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

REBECCA R. PALLMEYER, District Judge.
*1 Centerline Equipment Corporation ("Centerline") received a one-page, unsolicited fax advertisement from Banner Personnel Service, Inc. ("Banner"). In response to this perceived nuisance, Centerline filed a class action lawsuit against Banner, as well as ten unnamed additional defendants ("John Does 1-10"), all of whom are allegedly responsible. Centerline alleges that Banner is liable to it on three different theories: Count I asserts that sending the fax violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; Count II asserts that sending the fax violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2; and Count III asserts that, by causing a single page to be printed on Centerline's fax machine, Banner committed the common law tort of conversion.

Banner now moves to dismiss the Complaint. For the reasons set forth below, the court denies the motion.

### BACKGROUND

The following alleged facts are drawn from Centerline's Complaint, and are presented in the light most favorable to Centerline.

Centerline alleges that, within the twelve months before it filed its Complaint, it received a fax ("the Fax"), which reads as follows:
Cover your holiday and vacation days now!

These are important days for you and your company

Call someone you have depended on for 36 years!

Call Banner Personnel Service

Since 1970

Call Myron Curry and get it done!

(The Fax [1], Ex. A to Compl. (underlining and extraneous capitalization omitted); Compl. [1] ¶ 8.) The Fax also provides Banner's phone and fax numbers, and an e-mail address for Myron Curry. (The Fax.) Centerline alleges that Banner was responsible for sending this, as well as many other similar faxes, and that it derived economic benefit from doing so. (Compl.¶¶ 10-12, 14.) There was no prior relationship between Centerline and Banner, nor did Centerline authorize Banner to send it fax advertisements. (Compl.¶ 13.)

On information and belief, the Centerline alleges that the fax was sent "as part of a mass broadcasting of faxes" to at least forty other persons. (Compl.¶ ¶ 14-15.) Centerline alleges that, as a general matter, sending unsolicited faxes deprives the recipient of its paper and ink or toner, and causes wear and tear on fax machines. (*Id.* ¶ 2.) Centerline also claims that receiving unwanted faxes wastes the recipient's time and prevents it from receiving and sending other faxes. (*Id.*)

### DISCUSSION

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

When considering a motion to dismiss, the court tests the sufficiency of the complaint; it does not decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). The plaintiff must plead sufficient facts to give fair notice of the claim and the grounds upon which it rests, and those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a speculative level."EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776 (7th Cir.2007) (internal punctuation omitted); see Bell Atlantic v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 1973 n. 14, 167 L.Ed.2d 929 (2007). The court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir.2007). The court does not defer to the plaintiff's characterizations as to the meaning of legal texts, however; such determinations are made as a matter of law. See, e.g., Hamlin v. Vaudenberg, 95 F.3d 580, 584 n. 3 (7th Cir.1996); Rochester v. Fishman, No. 95 C 3896, 1997 WL 24720, at *6 (N.D.Ill. Jan.17, 1997).

**I. Telephone Consumer Protection Act**

*2 Banner raises a constitutional challenge to Count I, arguing that the TCPA violates the First Amendment. (Mot. to Dismiss [17] at 2-6 .) Banner contends, further, that the damages imposed by the TCPA are excessive in violation of the Due Process Clause and the Eighth Amendment. (Mot. to Dismiss at 6-8.) The United States has intervened to defend the constitutionality of the TCPA. (See U.S. Opp. [35] at 1.) For the reasons explained here, this court, like those others that have addressed the question,[FN1] finds that Banner has not demonstrated that the TCPA violates the Constitution, at least under the standards applicable to a motion to dismiss.

> FN1.E.g., Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323 F.3d 649, 660 (8th Cir.2003); Destination Ventures, Ltd. v. FCC, 46 F.3d 54, 57 (9th Cir.1995); Phillips Randolph Enters., LLC v. Rice Fields, 06 C 4968, 2007 WL 129052, at *4 (N.D.Ill. Jan.11, 2007). As the court agrees with these prior decisions, there is no need to address Centerline's argument that First Amendment analysis is inappropriate because the TCPA is an anti-conversion statute, not an abridgement of the freedom of speech. (Pl.'s Opp. at 1-2.)

**A. The TCPA and the First Amendment**

The parties agree that unsolicited fax advertisements are commercial speech. (Mot. to Dismiss at 2; Pl.'s Opp. [25-2] at 3.) The court analyzes restrictions on commercial speech using the four-part test articulated in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Because Centerline does not allege that the speech involved here concerns unlawful activity or is misleading, the TCPA will survive First Amendment scrutiny if (1) there is a substantial government interest, which (2) the TCPA directly advances, so long as (3) the restriction of speech is not excessive in proportion to the interest it serves. Id. The court addresses these prongs below.

**1. Step One: The Substantial Government Interest**

According to Banner, the government's interest in preventing individuals from receiving unsolicited and unwanted faxes does not constitute a substantial governmental interest. (Mot. to Dismiss at 6; Reply to Def. [32] at 5-6; Reply to U.S. [40] at 3-4.) Specifically, Banner argues that the cost of receiving a fax, "[a]t pennies per page," is simply too low to give rise to a substantial governmental interest. (Mot. to Dismiss at 6.)

If a harm to the public is of a very small quantity, preventing that harm cannot be a substantial governmental interest. For instance, in Bolger v. Youngs Drug Products Corp., a contraceptive seller obtained a declaratory judgment that a statutory prohibition on the mailing of unsolicited advertisements violated the First Amendment. 463 U.S. 60, 62-62, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). On a direct appeal, the Supreme Court affirmed, rejecting the government's assertion that a prohibition on mailing unsolicited contraceptive advertisements was justified by an interest in protecting the public from receiving unwanted, potentially offensive mail. Id. at 71-72.In the course of its discussion, the court noted that the "short, though regular, journey from mail box to trash can is an acceptable burden, at least so far as the Constitution is concerned."Id. at 72 (quoting Lamont v. Comm'r of Motor Vehicles, 269 F.Supp. 880, 883

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(S.D.N.Y.1967)) (internal punctuation omitted).

Because it was reviewing a declaratory judgment action, *Bolger* was forced to address the merits of the underlying claim; this court, however, is presented with this question at the pleading stage. The question of how much cost is associated with receiving unwanted faxes is a question of fact, and the court assumes that well-pleaded factual allegations are true at this stage. Centerline has alleged a number of costs associated with the receipt of junk faxes, including the use of paper and toner, wear and tear on fax machines, loss of use of the fax machine during the transmission of the unwanted message, and labor costs devoted to employees' attempts to identify the purpose and source of the faxes. (Compl.¶ 2.) Because this is a motion to dismiss, the court draws reasonable inferences of fact in Centerline's favor, and it is reasonable to infer that these costs, taken in the aggregate across many faxes to many recipients, would be substantial enough to justify government intervention. Furthermore, the complaint does not allege any facts suggesting that advancing technology has rendered these interests obsolete.[FN2] *Cf. Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,* 323 F.3d 649, 654-55 (8th Cir.2003) (congressional hearings held in 2001 disclosed evidence that costs were still substantial). Thus, the complaint has adequately alleged a substantial interest.[FN3]

FN2. Changes in technology are potentially relevant, because it is possible that a statute could be a reasonable balancing of interests when enacted, but that subsequent developments in technology render insignificant a once-serious social problem. See *Ashcroft v. ACLU,* 542 U.S. 656, 671-72, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) (noting that changes in the current state of internet filtering technology could have an important impact on the Court's assessment of less-restrictive alternatives to internet speech restrictions, and suggesting that the existence and feasibility of such alternatives should be assessed by the District Court after a trial on remand). For instance, a feature that enabled users to costlessly screen out all unsolicited faxes while receiving all desired ones might eliminate any substantial interest furthered by the TCPA. In any event, if the court limits its consideration to a review of the pre-enactment Congressional inquiry into the harms of unwanted faxes, the TCPA appears to survive Banner's challenge. See *Missouri ex rel. Nixon,* 323 F.3d at 654-55 (collecting legislative history regarding Congress's concern that unsolicited fax advertisement shifted costs to recipients and interfered with machines that could only handle one incoming fax at a time, and holding that this history demonstrated a substantial government interest).

FN3. By ruling on the complaint's sufficiency, of course, the court expresses no opinion on its merits. *Gibson,* 910 F.2d at 1520. Furthermore, although Banner is correct that the government generally has the burden of demonstrating the constitutionality of its actions, see *Edenfield v. Fane,* 507 U.S. 761, 768-69, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), it does not necessarily follow that it must do so at the pleading stage; plaintiffs are generally permitted to rest on allegations in response to 12(b)(6) motions, even though they bear the burden of proof at trial.

**2. Step Two: Direct Advancement of the Interest**

*3 Once a substantial government interest has been identified, the next step is to determine whether the challenged statute directly advances that interest. *Central Hudson,* 447 U.S. at 566. This is not a difficult hurdle in this case; prohibiting the sending of some unsolicited faxes surely reduces the costs of receiving unwanted faxes. See *Missouri ex rel. Nixon,* 323 F.3d at 658 (finding that TCPA directly advances interest in preventing excessive cost-shifting from advertisers to fax recipients).

Banner nevertheless argues that arbitrary distinctions, exemptions, and inconsistencies in the Act's coverage render it invalid. (Mot. to Dismiss at 3-4.) Indeed, underinclusiveness may render a statute unconstitutional when it demonstrates that an asserted substantial interest is in fact pretextual; in other words, a statute does not directly advance an interest when the scope of its protections demonstrate a lack of concern for that interest. For instance, in *Rubin v. Coors Brewing Co.,* the Supreme Court found that, by prohibiting disclosure of alcohol content on beer

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

labels, but not in beer advertising, the government had made clear that it was not motivated by an interest in preventing competition on the basis of alcohol content. 514 U.S. 476, 488-91, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995). Although preventing competition between beer companies on the basis of alcohol content may be a substantial government interest, the statute in question did not directly advance such an interest, because it was irrationally underinclusive. Id. at 485, 488-89. See also Greater New Orleans Broad. Ass'n v. United States, 527 U.S. 173, 189-92, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999) (exemptions and inconsistencies in a ban on gambling advertisements, combined with Congressional encouragement of tribal gambling, undermined the asserted justification that Congress designed the ban to reduce the social costs of gambling); City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417-18, 424-25, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (city's interest in aesthetics was not directly advanced by a prohibition aimed only at some sixty-two commercial newsracks, when hundreds of non-commercial newsracks were equally unattractive but permitted by the ordinance).

In support of its argument that the TCPA is fatally underinclusive, Banner notes, first, that the Act draws an arbitrary distinction between commercial and noncommercial faxes, only prohibiting the former. (Mot. to Dismiss at 3.) As the Eighth Circuit observed in response to a similar challenge, however, commercial advertisements likely "constitute the bulk of all ... unsolicited faxes."[FN4] Missouri ex rel. Nixon, 323 F.3d at 658. Congress's focus on this segment of the universe of unsolicited faxes does not indicate that its asserted interest in lowering the costs of unsolicited faxes is pretextual. Nor are there any allegations in the Complaint that would lead the court to reject this everyday intuition. See Burson v. Freeman, 504 U.S. 191, 211, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (justifying restrictions on speech by reference to history, consensus and "simple common sense").

> FN4. "Congress is not required to 'make progress on every front before it can make progress on any front.'" Missouri ex rel. Nixon, 323 F.3d at 658 (quoting United States v. Edge Broad. Co., 509 U.S. 418, 434, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993)).

*4 Banner next argues that the Act unconstitutionally exempts telephone advertising. (Mot. to Dismiss at 4.) The fact that telemarketing is treated differently than fax advertising does not establish either irrationality or pretext, however. Unlike "junk faxing," telemarketing does not require individuals to bear the economic brunt of unwanted advertising. Missouri ex rel. Nixon, 323 F.3d at 657. Thus, the legislature could legitimately believe that unwanted faxes cause different burdens than unwanted telephone calls, and require a different legislative response.

Finally, Banner argues that the Act is unconstitutional because it inconsistently permits some types of fax solicitation, such as announcements of job openings and requests for donations, while restricting only advertising faxes. (Mot. to Dismiss at 4.) This, too, falls short of showing that Congress's stated interest in lowering the cost of receiving unwanted faxes was a pretext. It may be that job announcements or charitable solicitations make up a significant quantity of unsolicited faxes, but the Complaint makes no references to this issue, and its allegations are the only facts the Court considers at this stage. See also Rudgayzer & Gratt v. Enine, Inc., 4 Misc.3d 4, 779 N.Y.S.2d 882, 889 (N.Y.App. Term 2004) (observing that "no evidence has yet emerged of an onslaught of unsolicited non-advertising faxes, jokes, surveys, free give-aways or political campaign faxes"). All federal statutes enjoy a strong presumption of constitutionality, see In re Search of Office of Tylman, 245 F.3d 978, 981 (7th Cir.2001), so a complaint need include no additional facts to "plausibly suggest" that a particular statute is valid. There is no basis at this stage of the proceedings for the court to assume that the permitted types of faxes are numerous enough to demonstrate that the asserted interest is pretextual. Banner has not convinced the court that the TCPA does not materially and directly advance the substantial government interest in lowering the costs imposed on the recipients of unwanted faxes.

**3. Step Three: Reasonable Fit**

Finally, a restriction on commercial speech must be no broader than is necessary to advance a substantial government interest. Central Hudson, 447 U.S. at 566. This is not a requirement that Congress always choose the least-restrictive method of advancing an interest; rather, all that is required is a "reasonable fit" between the interest and the means used to protect it.[FN5] See Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Banner

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

argues that Congress could have used less-restrictive methods to cut down on the cost of unwanted faxes, such as: (1) expanding the nationwide do-not-call registry to apply to unsolicited fax advertising; or (2) creating a cause of action only for those persons who received a second unwanted fax after having complained to the sender in response to the first one. (Mot. to Dismiss at 4-5.) The second alternative represents the TCPA's approach to live telemarketing. 47 U.S.C. § 227(c)(5).

> FN5. Banner argues that this test was altered by *Thompson v. Western States Medical Center,* which stated, during a discussion of the *Central Hudson* test, that restrictions on speech would fail the narrow tailoring prong if the government "could achieve its interests in a manner that does not restrict speech, or that restricts less speech." 535 U.S. 357, 371, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002). (Mot. to Dismiss at 5.) *Thompson,* however, did not discuss the narrow tailoring standard in any great detail, and did not discuss or address *Fox* or any of the other cases setting forth the "reasonable fit" approach. *Id.* at 371-72. The court therefore declines to read this language as commanding a return to the "least restrictive means" formula that was explicitly rejected in *Fox.* Rather, the court reads *Thompson* to stand for the proposition that the existence of equally-effective but less-restrictive methods by which a Congressional goal can be achieved is a relevant consideration in assessing whether a reasonable fit exists. *See id.* at 372-73 (determining that a regulation was not narrowly tailored when there were a wide array of means by which the regulation's objective could have been obtained without any restrictions on speech, and when there was no indication that the government had considered any of these alternatives before choosing to restrict advertising).

*5 The availability of these alternatives does not satisfy the court, at this stage, that the means used by Congress do not have a reasonable fit with the substantial interest it sought to promote. Both of the alternatives suggested by Banner would impose a significant share of the burden of avoiding unwanted faxes on the recipients themselves, who bear no share of that burden in the system set up by the TCPA. It was not unreasonable for Congress to choose a system that places the burden of avoiding unwanted costs on advertisers rather than on recipients. *See Missouri ex rel. Nixon,* 323 F.3d at 659. To be sure, the method chosen by Congress will mean that some people do not receive unsolicited fax advertisements they would have liked to receive (Mot. to Dismiss at 5), but that will be the case with the alternative approaches as well. Advertisers remain free to contact their target audience using other methods of communication in order to solicit their consent, including such options as sending direct mail, telemarketing, and interacting with customers in retail stores. *See id.*

For this reason, *Thompson v. Western States Medical Center,* 535 U.S. 357, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002), on which Banner relies, is distinguishable. That case involved a restriction that totally forbade pharmacists to advertise compounded drugs, *id.* at 365, whereas the TCPA permits advertisers to reach their audience through multiple alternative channels of communication. Similarly, Banner's reliance on *Discovery Network,* 507 U.S. at 417-418, is misplaced. (Mot. to Dismiss at 3.) In *Discovery Network,* the court did not find the requisite fit between the city's substantial interest in aesthetics, and its prohibition of only commercial newsracks, which made up only a small number of the city's newsracks. Conversely, unsolicited commercial faxes, like unsolicited commercial calls, likely "constitute the bulk of all ... unsolicited faxes." *Missouri ex rel. Nixon,* 323 F.3d at 658.

Because the TCPA directly advances the legitimate government interest in controlling the costs of unwanted faxes, and because it is plausible to assume that it does so using means that are in reasonable proportion to that goal, the court concludes that Banner has failed to demonstrate that it violates the First Amendment, under the standards applicable to a 12(b)(6) motion.

**B. Allowable Damages Under the TCPA**

Banner claims that the Act's remedy violates the Fifth and Eighth Amendments. (Mot. to Dismiss at 6-8.) The TCPA allows recovery of either actual damages, or statutory damages in the amount of "$500 in damages for each ... violation"; it also provides for treble damages for knowing or willful violations. 47

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

U.S.C. § 227(b)(3). Banner argues that the statutory damages amount violates the Eighth Amendment's prohibition of "excessive fines." This argument requires little discussion; the Excessive Fines clause does not apply to actions for civil damages unless the government is prosecuting the action or will receive a share of the damages. See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 264, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

*6 Banner's due process challenge bears more analysis, but fares no better, at the pleading stage. Statutory penalties violate due process rights "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." United States v. Citrin, 972 F.2d 1044, 1051 (9th Cir.1992) (quoting St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63, 66-67, 40 S.Ct. 71, 64 L.Ed. 139 (1919)). Banner asserts that $500 "is approximately 10,000 times the actual cost of receiving a fax," and that $1,500 is about 30,000 times the actual cost of receiving a fax. (Mot. to Dismiss at 7.) There is no requirement that the statutory remedy be proportional to the plaintiff's own injury, however; Congress may choose an amount that reflects the injury to the public as well as to the individual. Williams, 251 U.S. at 66.

In any event, in addition to the costs of paper and ink or toner, other costs associated with the receipt of unwanted faxes, such as wasted time and interference with the plaintiff's fax machine, are difficult to quantify. Kenro, Inc. v. Fax Daily, Inc., 962 F.Supp. 1162, 1166 (S.D.Ind.1997). The $500 remedy serves the dual purpose of deterring unwanted solicitation while, at the same time, encouraging plaintiffs to bring suit. Id. The Due Process clause does not require Congress "to make illegal behavior affordable, particularly for multiple violations." Phillips Randolph Enters., LLC v. Rice Fields, 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D.Ill. Jan. 11, 2007).

In short, on the limited record presented by a motion to dismiss, Banner has not satisfied the court that the TCPA's statutory damages remedy violates the Due Process clause. In any event, if Banner were able to show that the statutory damages are in fact so excessive as to be improper, the appropriate remedy would be a reduction of the aggregate damage award, not a dismissal of Centerline's claim. See Tex. v. Am. Blastfax, Inc., 164 F.Supp.2d 892, 900-01 (W.D.Tex.2001) (interpreting the TCPA to provide "up to" $500 per violation, and awarding seven cents per violation); see also Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir.2006) (stating that, if a trial judge were concerned that a FCRA class action would result in unconstitutionally excessive damages, the appropriate judicial response would be to reduce an excessive award, not deny class certification). It is premature at this stage to consider whether any hypothetical award might be constitutionally excessive, however.[FN6] See Murray, 434 F.3d at 954.

> FN6. Similarly, the court does not believe that the Supreme Court's cases regarding the appropriate ratio between actual and punitive damages under the Due Process clause have any relevance at this stage, as no punitive damages have yet been assessed. See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416-17, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). These cases might support a remittitur of an arbitrary and excessive verdict, but as this case is only at the pleadings stage, consideration of this issue is premature.

## II. Illinois Consumer Fraud Act

In Count II, Centerline alleges that Banner violated the Illinois Consumer Fraud Act by sending the Fax. The ICFA prohibits:
> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" ... in the conduct of any trade or commerce ....

*7 815 ILCS 505/2. Banner argues that Centerline failed to plead its ICFA claim with adequate specificity, that Centerline failed to allege that it was harmed by receiving the Fax, and that the conduct described in the complaint is not "unfair" within the meaning of the ICFA. (Mot. to Dismiss at 9-11.) The court overrules each of these objections, as explained

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

below.

**A. Pleading Standard for ICFA Unfairness Claims**

Banner argues, first, that Centerline's claim under the ICFA must fail because Centerline does not make its allegations with particularity. (Mot. to Dismiss at 9-10.) Federal Rule of Civil Procedure 9(b) requires claims of fraud to be pleaded with particularity, and Banner is correct that this requirement extends to fraud claims brought pursuant to the ICFA. *Appraiser's Coal. v. Appraisal Inst.,* 845 F.Supp. 592, 608-09 (N.D.Ill.1994); *see also Gallagher Corp. v. Mass. Mut. Life Ins. Co.,* 940 F.Supp. 176, 180 (N.D.Ill.1996) (citing *Appraiser's Coal.,* and applying the heightened Rule 9(b) standard to an ICFA claim which incorporated allegations of misrepresentation). Centerline argues only that sending the Fax was unfair, however; it does not argue that it was deceptive within the meaning of the ICFA. (Pl.'s Resp. at 12.) Thus, because Centerline has not alleged fraud or misrepresentation on the part of Banner, Rule 9(b) does not apply.

**B. The ICFA Actual Damage Requirement for Private Plaintiffs**

Banner next argument for the dismissal of Centerline's ICFA claim focuses on the Act's requirement that private plaintiffs plead and prove actual damages. (Def.'s Reply to Pl. at 11-12.) Banner is correct that private plaintiffs must suffer harm in order to sue. *See* 815 ILCS 505/10a(a); *Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 149, 267 Ill.Dec. 14, 776 N.E.2d 151, 160 (2002). The court concludes, however, that Centerline has met this requirement: Centerline has alleged that it received a fax it did not wish to receive, and that such faxes waste toner and paper, wear down fax machines, and consume employee time. (Compl.¶¶ 2, 8.) This may be a minute injury, but it is an injury nonetheless. *Cf. Dwyer v. Am. Express Co.,* 273 Ill.App.3d 742, 750, 210 Ill.Dec. 375, 652 N.E.2d 1351, 1357 (1st Dist.1995) (concluding that receiving unwanted mail, without more, is not "damage" for ICFA purposes). Nor, on a motion to dismiss, will the court presume that this injury is so minor that the maxim *de minimis non curat lex* applies. Such a presumption would be inconsistent with the court's duty to draw reasonable inferences of fact (in this case, the size of the damages) in Centerline's favor. Furthermore, characterizing the harm as *de minimis* would conflict with the ICFA's remedial purpose, because it would allow defendants to freely engage in unfair practices so long as the effects were spread thinly over a large population of victims. *Cf. Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 41-42, n. 9 (1st Cir.2003) (noting that consumer suits are especially well-suited for class treatment, because the vindication of consumer rights regularly involves class actions on behalf of members "whose individual claims would be too small to warrant litigation").

**C. Pleading Unfairness Under the ICFA**

*8 Finally, Banner argues that Centerline cannot establish that the sending of a single unsolicited fax [FN7] was unfair within the meaning of the ICFA. (Mot. to Dismiss at 9-10.) To establish an ICFA claim, Centerline must allege that Banner intentionally engaged in an unfair or deceptive act or practice "in the course of conduct involving trade or commerce," and that this act or practice proximately caused harm to Centerline. *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 417, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002); *Oliveira,* 201 Ill.2d at 149, 267 Ill.Dec. 14, 776 N.E.2d at 160. In determining whether a practice is unfair, Illinois courts will consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers."*Robinson,* 201 Ill.2d at 417-18, 266 Ill.Dec. 879, 775 N.E.2d at 960-61 (citing *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)). A practice is unfair if it meets one of these criteria to a substantial extent, or if it meets all three to a lesser degree. *Id.* at 418,266 Ill.Dec. 879, 775 N.E.2d 951, 266 Ill.Dec. 879, 775 N.E.2d at 961.

> FN7. Banner's focus on the single fax received by Centerline is too narrow. The ICFA allows a determination that practices, as well as individual acts, are unfair, *see Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 417, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002), and Centerline has alleged that Banner engaged in a "mass broadcasting" of faxes. (Compl.¶ 14.) Thus, the pertinent question is whether the unfairness test is met with respect to the broader practice of sending "mass broadcasts" of junk faxes.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**1. The Public Policy Factor**

Banner appears not to contest that sending unsolicited faxes offends public policy. (*See, e.g.,* Mot. to Dismiss at 9-10.) This is not surprising; not only is the practice unlawful under the TCPA, it is a misdemeanor criminal offense under Illinois law. 720 ILCS 5/26-3. Therefore, the public interest factor weighs in Centerline's favor. *W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.,* No. 06 C 0052, 2006 WL 1697119, at *4 (N.D.Ill. June 13, 2006).

**2. The Oppressiveness Factor**

Conduct is oppressive only if it imposes a lack of meaningful choice or an unreasonable burden on its target. *Lusida,* 2006 WL 1697119, at *5;*see Robinson,* 201 Ill.2d at 419-21, 266 Ill.Dec. 879, 775 N.E.2d at 962. A practice of sending unsolicited faxes does deprive consumers of choice, given that they cannot avoid such faxes without turning off their fax machines.

Banner nevertheless challenges the notion that receipt of a single fax can be characterized as oppressive conduct. In support, Banner cites *Tudor v. Jewel Food Stores, Inc.,* 288 Ill.App.3d 207, 224 Ill.Dec. 24, 681 N.E.2d 6 (1st Dist.1997), where the court concluded that occasional overcharges at a grocery store were not oppressive, in light of the facts that grocery store customers were given a receipt by which to check the price paid for their items, as well as a money-back guarantee that could be enforced whenever the price was incorrect. *Id.* at 210, 224 Ill.Dec. 24, 681 N.E.2d at 8. There are no allegations in the Complaint of similar procedures set up to compensate recipients for the losses incurred as a result of unwanted faxes; nor does the Fax that Centerline received give notice of any such procedures. The court concludes that the Complaint adequately alleges that the practice of sending unsolicited faxes is oppressive. *Compare Lusida,* 2006 WL 1697119, at *5 (finding a similar practice non-oppressive, where, unlike in this case, the sender included a "remove" number on the fax advertisements).

**3. The Substantial Injury Factor**

*9 Costs that are imposed on an unwilling consumer can constitute a substantial injury. *See, e.g., Ekl v. Knecht,* 223 Ill.App.3d 234, 237, 241-42, 165 Ill.Dec. 760, 585 N.E.2d 156, 160, 162-63 (2d Dist.1991) (concluding that when a plumber refused to turn his customer's water back on unless she paid him above-market rates for his work, the customer was substantially injured by the overcharge). Even very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole. *People ex rel. Hartigan v. Stianos,* 131 Ill.App.3d 575, 581, 86 Ill.Dec. 645, 475 N.E.2d 1024, 1029 (2d Dist.1985). Thus, in *Stianos,* a practice of overcharging consumers for sales tax caused but a few cents in losses to any individual customer. *Id.* The court nevertheless found that such losses, when considered across all of the retailers' customers, could be substantial, and that this fact supported a finding that the practice was unfair under the ICFA. *Id.*

As described earlier, Centerline alleges that unsolicited faxes impose costs on unwilling consumers, by wasting paper and toner, wearing down fax machines, and consuming employee time. (Compl.¶ 2.) Centerline also alleges that Banner engages in a general practice of sending unsolicited faxes, has sent "mass broadcast[s]" of faxes, and has sent such faxes to at least forty people in Illinois. (*Id.* ¶¶ 14-15, 86 Ill.Dec. 645, 475 N.E.2d 1024.) These allegations are adequate to constitute substantial harm.

Banner argues that *Stianos* is distinguishable because it was an action brought by the Attorney General of Illinois. (Reply to Pl. at 11-12.) Individual actions under the Consumer Fraud Act must be based upon claims of actual damage, 815 ILCS 505/10a(a), but the Act does not extend this restriction to civil enforcement by the Attorney General. *See Oliveira,* 201 Ill.2d at 149, 267 Ill.Dec. 14, 776 N.E.2d at 161. Banner contends, in effect, that this distinction should be read into the test for what practices are "unfair" within the meaning of the ICFA, so that private plaintiffs may only rely on their individual injuries to establish that an extended practice is unfair, while the Attorney General would be able to rely more generally on public injury to establish the unfairness of a challenged practice. (Reply to Pl. at 11-12.) Although some courts have interpreted the ICFA in this manner, *see, e.g., Lusida,* 2006 WL 1697119, at *6,[FN8] it is not a plausible construction of section 505/10a(a), which does not purport to alter the unfairness standard. Thus,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

because Centerline has alleged that Banner sent unsolicited faxes to many other people, the Complaint plausibly suggests that the aggregate harm caused by this practice would be substantial.

> FN8.*Lusida* holds that individual litigants cannot rely on general public harm to establish substantial injury, based upon the established principle that where a litigant has no claim in its own right, it cannot serve as the representative of a class of plaintiffs who do have valid claims. 2006 WL 1697119, at *6;*see also* Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, 443 F.Supp.2d 976, 979 (N.D.Ill.2006) (adopting *Lusida*'s conclusion without discussion). The third factor for determining unfairness, however, is not the individual injury to the plaintiff, but rather, "whether [the practice] causes substantial injury to *consumers.*"Robinson, 201 Ill.2d at 417-18, 266 Ill.Dec. 879, 775 N.E.2d at 961 (emphasis added) (also noting that the ICFA is intended to protect business persons as well as consumers). Thus, an individual plaintiff like Centerline could have a proper section 505/10a(a) claim in its own right, based upon an unfair practice that caused very little harm to the plaintiff itself, if that practice causes "substantial injury" to consumers or businesses as a group.

Centerline's allegations, taken as true, suggest that Banner's practice of sending unsolicited faxes violated public policy, deprived consumers of the choice to not receive advertising faxes, and caused a significant amount of harm to consumers, taken in the aggregate. The court concludes that Centerline has adequately pleaded that Banner's conduct was unfair within the meaning of the ICFA.

**III. Conversion**

*10 To survive a motion to dismiss its conversion claim, Centerline must allege (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over its property; (2) its right to the property; and (3) its right to immediate possession of the property, absolutely and unconditionally. General Motors Corp. v. Douglass, 206 Ill.App.3d 881, 886, 151 Ill.Dec. 822, 565 N.E.2d 93, 96-97 (1st Dist.1990). Banner argues that it never deprived Centerline of its property, and that even if it had, taking someone's paper or toner cannot give rise to a conversion action. (Mot. to Dismiss at 11-12.)

Banner first argues that Centerline's claim fails because the Complaint does not allege that Centerline was dispossessed of its paper and ink or toner, and did not allege that Banner came into physical possession of the property. (Mot. to Dismiss at 11-12.) As a plain reading of the Complaint reveals, however, Centerline has indeed specifically alleged that recipients (presumably including itself) of unsolicited fax advertisements are deprived of their paper and toner (*id.* ¶ 2, 151 Ill.Dec. 822, 565 N.E.2d 93)-a plausible allegation; once paper has had an advertisement printed upon it, it is no longer useable for other purposes, nor can the ink be recovered for reuse. Likewise, Banner's suggestion that it cannot be liable because it never physically held the paper and ink or toner is contrary to Illinois law. Altering a chattel to materially change its characteristics can constitute conversion, even if the defendant never comes into possession of the chattel.*Restatement (Second) of Torts* § 226 Cmt. b (1977); *see* Jensen v. Chi. and W. Ind. RR., 94 Ill.App.3d 915, 932, 50 Ill.Dec. 470, 419 N.E.2d 578, 593 (1st Dist.1981) ("The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof.").

Relying on Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc., 443 F.Supp.2d 976, 980 (N.D.Ill.2006), Banner next argues that no action can lie based on the conversion of ink and toner because such an injury is *de minimis.*In *Rossario's,* a case nearly identical to this one, the court dismissed a class action conversion claim involving unwanted fax advertising on a number of grounds, including the maxim *de minimis non curat lex. Id.* The court respectfully disagrees with the *Rossario's* court and declines to assume, at the pleading stage, that the alleged deprivation is *de minimis.*An individual claim for the loss of one sheet of paper might well be "niggling," *id.,* but a class claim could be more substantial, and class treatment is regularly afforded in cases where no individual plaintiff has suffered any great loss. *See* Smilow, 323 F.3d at 41-42;*Egge v. Healthspan Servs.,* 208 F.R.D. 265, 271 (D.Minn.2002) (certifying a class action by which each individual plaintiff stood to recover approximately twenty-one cents). Furthermore, the maxim may not apply at all, as Illinois courts have permitted conversion claims to be brought for only

nominal damages. See *Ill. Educ. Assn. v. Ill. Fed'n of Teachers,* 107 Ill.App.3d 686, 689, 63 Ill.Dec. 343, 437 N.E.2d 1265, 1267 (4th Dist.1982) (action for conversion can lie even if property has been returned, but only nominal damages are available). If Illinois courts recognize conversion claims where there are no damages at all, they might well also recognize actions for very small damages. The court concludes that Illinois law does not require application of the *de minimis* rule to class conversion claims founded upon very small individual losses, so long as those losses can plausibly be inferred to be substantial in the aggregate.

*11 Finally, Banner argues that paper and toner are not the sort of "specific chattels" that can give rise to a conversion action, once again relying on *Rossario's,* 443 F.Supp.2d at 980. Centerline allegedly had possession of specific paper and toner, which Banner caused to be converted into a less-useful form. Thus, the paper and toner resembles "specific money in coin or bills," which can be the subject of a conversion action under Illinois law. *Horbach v. Kaczmarek,* 288 F.3d 969, 978 (7th Cir.2002).

Banner's motion to dismiss Centerline's conversion claim is denied.

## CONCLUSION

For the above reasons, Banner's motion to dismiss [17] is denied.

N.D.Ill.,2008.
Centerline Equipment Corp. v. Banner Personnel Service, Inc.
Slip Copy, 2008 WL 597604 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.