Slip Copy, 2007 WL 4117626 (N.D.Ill.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.
ITALIA FOODS, INC, Plaintiff,
v.
MARINOV ENTERPRISES, INC., Defendant.
No. 07 C 2494.
Nov. 16, 2007.

Brian J. Wanca, Ryan M. Kelly, Anderson & Wanca, Rolling Meadows, IL, Phillip A. Bock, Diab & Bock, LLC, Chicago, IL, for Plaintiff.

Jacqueline A. Criswell, James Kenneth Borcia, Panagiotis V. Albanis, Tressler, Soderstrom, Maloney & Priess LLP, Chicago, IL, for Defendant.

Linda A. Wawzenski, United States Attorney's Office, Chicago, IL, for Defendant United States.

**MEMORANDUM OPINION AND ORDER**

WAYNE R. ANDERSEN, District Judge.
*\*1* This matter comes before the court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is denied.

**BACKGROUND**

Plaintiff Italia Foods, Inc. ("Italia") brought a three-count complaint as a class action suit against defendant Marinov Enterprises, Inc. ("Marinov") in the Circuit Court of Lake County, Illinois alleging violations of the Telephone and Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 (Count I), the tort of conversion (Count II), and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 (Count III). Both parties are Illinois corporations. Defendant removed the action to federal court as a federal question, and the plaintiff subsequently voluntarily dismissed Counts II and III.

The complaint alleges that the defendant faxed 25 unsolicited advertisements to the plaintiff's fax machine and at least 39 others in violation of the TCPA. Marinov moved to dismiss the complaint asserting that the TCPA is unconstitutional because: 1) the restrictions on commercial speech violate the First Amendment; 2) the excessive fines violate the Fifth and Eighth Amendments; and 3) the requirement that a state enforce a federal law violates the Tenth Amendment. The United States filed a motion to intervene, which was granted, and has submitted a brief in opposition to this motion.

**STANDARD OF REVIEW**

Rule 12(b)(6) allows a motion to dismiss for failure to state a claim upon which relief can be granted. The court must accept all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in a light favorable to the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir.1999). This motion tests the legal sufficiency of a pleading, not its factual accuracy.

*Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 675 (7th Cir.2001). To survive a 12(b)(6) motion, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint must describe the claim with sufficient detail as to give the defendants "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* ---U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, the "allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level.' " *EEOC v. Concentra Health Servs.,* 496 F.3d 773, 776 (7th Cir.2007) (citing *Bell Atlantic,* 127 S.Ct. at 1965).

## DISCUSSION

The TCPA prohibits using any fax machine, computer, or other device to send unsolicited advertisements to another fax machine unless the material meets an exception such as having an "established business relationship" with the sender. 47 U.S.C. § 227(b)(1)(C). The TCPA does not apply to non-commercial unsolicited faxes. A recipient of unsolicited fax advertisement has a private right of action and may recover actual damages or $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). The court may award up to $1500 per violation if the defendant acted "willfully or knowingly." 47 U.S.C. § 227(b)(3)(C). We will consider each of Marinov's constitutional challenges to the TCPA in turn.

I. *First Amendment-Commercial Speech*

**\*2** The defendant argues that the TCPA violates the First Amendment on freedom of speech grounds. Before we begin our analysis, we note that many federal and state courts have heard this particular constitutional challenge, including this one, and found the TCPA's restriction of commercial speech to be a permissible one. See *Phillips Randolph Enters., LLC v. Rice Fields,* No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan 11, 2007); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,* 323 F.3d 649 (8th Cir.2003); *Destination Ventures v. FCC,* 46 F.3d 54, 57 (9th Cir.1995); *Minnesota v. Sunbelt Communs. & Mktg.,* 282 F.Supp.2d 976 (D.Minn.2002); *Witting Corp. v. MSI Mktg., Inc.,* No 02 CH 6332 (Cook County, Ill. Apr. 3, 2003); *CE Design, Ltd. v. Peripheral Solutions, Inc.,* No. 04 L 564 (Lake County, Ill. Mar. 8, 2005); *Rudgayzer & Gratt v. Enine, Inc.,* 4 Misc.3d 4, 779 N.Y.S.2d 882 (N.Y.App. Term 2004).

The Supreme Court has developed a four-part test to determine whether the restrictions placed upon commercial speech pass constitutional muster. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). First, we must ask whether the commercial speech concerns unlawful activity or is misleading. *Thompson v. Western States Med. Ctr.,* 535 U.S. 357, 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002); *Cent. Hudson,* 447 U.S. at 566. If so, then the commercial speech is not protected by the First Amendment. Second, if the commercial speech is protected, the governmental interest asserted must be substantial. *Thompson,* 535 U.S. at 367 (citing *Cent. Hudson,* 447 U.S. at 566). Third, the regulation must directly advance the governmental interest. *Thompson,* 535 U.S. at 367 (citing *Cent. Hudson,* 447 U.S. at 566). Finally, that regulation must not be "more extensive than is necessary to serve that interest." *Thompson,* 535 U.S. at 367 (citing *Cent. Hudson,* 447 U.S. at 566).

a. *Substantial Government Interest*

In this case, the commercial speech at issue is not alleged to be misleading or concerning unlawful activity. Thus, we turn to the second prong of the *Central Hudson* analysis and ask whether the governmental interest asserted is substantial. In 1991, Congress noted that more than 30 billion pages of information were being faxed each year and that unsolicited advertisements, or "junk fax," had underwent an "explosive growth" in the past decade. H.R.Rep. No. 102-317, at 10 (1991). Unwanted faxes shift both the costs of advertising to the receiver and render the recipient's fax machine "unavailable for legitimate business messages while processing and printing the junk fax." *Id.* Other courts have held more recent evidentiary hearings on this issue and found that "unsolicited fax advertisements can shift to the recipient more than one hundred dollars per year in direct costs"

and that "the costs and amount of interference resulting from unrestrained fax advertising continue to be significant." *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir.2003); *see also Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 57 (9th Cir.1995). Even if the costs associated with printing faxes have been reduced in the past decade, as the defendant argues, the Supreme Court has long recognized that the taking of "property" is not excused even if the property lacks a positive economic or market value. *See Phillips v. Washington Legal Found.*, 524 U.S. 156, 169-170, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 452, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). Therefore, we find that the federal government has a substantial interest in preventing the costs and burdens associated with unsolicited commercial faxes.

b. *Directly Advance the Governmental Interest*

**\*3** Marinov argues that the distinction between unsolicited commercial and non-commercial faxes renders the TCPA ineffective and does not directly advance the governmental interest since both types of faxes shift costs to the recipient. The defendant likens this distinction to the regulation found unconstitutional in *City of Cincinnati v. Discovery Network, Inc.*, which treated newsracks differently depending upon whether they dispensed commercial handbills or newspapers. 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), Since both types of newsracks went afoul of the governmental stated objective-to promote the safety and attractive appearance of its streets and sidewalks, the regulation did not directly advance that purpose. *Discovery Network*, 507 U.S. at 417. This argument was specifically rejected by both the Eighth and Ninth Circuits, which found that, the "legislative history here shows that TCPA's distinction between commercial and noncommercial fax advertising is relevant to the goal of reducing the costs and interference associated with *unwanted* faxes." *Am. Blast Fax, Inc.*, 323 F.3d at 656; *see also Destination Ventures*, 46 F.3d at 57. When the TCPA was enacted, Congress found that "non-commercial calls ... are less intrusive to consumers because they are more expected." H.R.Rep. No. 102-317, at 16 (1991). The Eighth Circuit stated that "[t]here is no reason to doubt that Congress also believed for the same reason that noncommercial faxes did not present the same problem as commercial faxes and therefore distinguished between them." *Am. Blast Fax, Inc.*, 323 F.3d at 655-656. We agree and conclude that the TCPA's ban on unsolicited commercial faxes directly advances the governmental interest of reducing the unwanted costs that they impose.

**c.** *Not More Restrictive Than Necessary*

Having concluded that the TCPA directly advances a substantial governmental interest, the final inquiry is whether the ban on unsolicited commercial faxes is more restrictive than necessary. We note from the outset that commercial speech is not entitled to the higher protection of the "least restrictive means" test, but that there must be a "fit between the legislature's ends and the means chosen to accomplish those ends." *Am. Blast Fax, Inc.*, 323 F.3d at 658-659 (citing *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 632, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)). Marinov contends that the nationwide "do-not-call registry" could be expanded and the same rules governing a right of action for an unauthorized telemarketing call could apply to unsolicited faxes. While these may be viable alternatives, as noted above, Congress is not required to choose the least restrictive means, merely those that are "in proportion to the interest served." *Florida Bar*, 515 U.S. at 632 (internal quotations omitted). We find that the TCPA satisfies this requirement as it places the burden on the senders of unsolicited commercial faxes to obtain consent, rather than upon the recipient to "opt-out" as defendant's proposal would so impose. *See Am. Blast Fax, Inc.*, 323 F.3d at 659; *Phillips Randolph Enters.*, 2007 WL 129052 \*4.

**\*4** Having found that all prongs of the *Central Hudson* test have been satisfied, we conclude that the TCPA's ban on unsolicited commercial faxes is a permissible restriction on commercial speech not in violation of the First Amendment.

IV. *Fifth and Eight Amendments-Due Process and Excessive Damages*

The TCPA imposes actual damages or $500 (for inadvertent violations) to $1500 (for knowing or willful violations) per each violation, whichever is greater. 47 U.S.C. § 227(b)(3). The defendant

contends that these are excessive damages that violate the due process clause of the Fifth Amendment and impose excessive fines that violate the Eighth Amendment. Marinov may correctly recognize that such damages are 10,000 times the actual cost in the case of inadvertent faxes and 30,000 times in the case of knowing or willful violations, but is mistaken in suggesting that the damages must be proportional to the harm inflicted by unsolicited faxes in order to withstand the due process clause of the Fifth Amendment. *St. Louis, I.M. & S.R. Co. v. Williams*, 251 U.S. 63, 66-67, 40 S.Ct. 71, 64 L.Ed. 139 (U.S.1919); *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Communs., L.P.*, 329 F.Supp.2d 789, 809-810 (D.La.2004). In arriving at such a penalty, Congress also took into account the costs of business interruptions and wasted time. The amount must be sufficient to serve as a disincentive to the practice of faxing unsolicited advertisements for any potential likely senders. H.R.Rep. No. 102-317, at 10 (1991). Thus, these damages are not "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 67.

With regard to defendant's Eighth Amendment argument, because these damages are paid to the individual plaintiff, not the government, it is not a fine within the meaning of the Constitution. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219, (1989) ("[T]he word 'fine' was understood to mean a payment to a sovereign as punishment for some offense."); *Austin v. United States*, 509 U.S. 602, 609-610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) ("The Excessive Fines Clause thus limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'").

Having found that the damages assessed by the TCPA do not constitute excessive fines or violate due process, we turn to defendant's Tenth Amendment challenge.

V. *Tenth Amendment-Illinois State Courts*

The defendant argues that because Illinois law does not provide an express right of action for plaintiffs in state court, requiring Illinois courts to enforce the TCPA violates the Tenth Amendment. We find no basis for this argument as the Seventh Circuit has expressly concluded that TCPA claims brought in state court may be removed to federal court based upon either diversity or "arising under" jurisdiction. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir.2005); *see also Benedia v. Super Fair Cellular, Inc.*, No. 07 C 01390, 2007 WL 2903175, at *1 (N.D.Ill.2007). The *Brill* Court recognized that its decision conflicted with other federal circuits that have held that state courts possess exclusion jurisdiction over TCPA claims. 427 F.3d at 450. Finally, although the Illinois Supreme Court has been silent on this matter, the Illinois Appellate Court has explicitly recognized a private right of action in Illinois for TCPA claims. *First Capital Mortg. Corp. v. Union Fed. Bank of Indianapolis*, 374 Ill.App.3d 739, 313 Ill.Dec. 324, 872 N.E.2d 84, 87 (Ill.App. 1st Dist.2007). Thus, defendant's Tenth Amendment argument also fails.

**CONCLUSION**

*5 For the foregoing reasons, defendant's motion to dismiss [17] on the grounds that the TCPA is unconstitutional is denied.

It is so ordered.

N.D.Ill.,2007.
Italia Foods, Inc v. Marinov Enterprises, Inc.
Slip Copy, 2007 WL 4117626 (N.D.Ill.)

Motions, Pleadings and Filings (Back to top)

- 2007 WL 5021158 (Trial Motion, Memorandum and Affidavit) United States' Motion to Intervene (Nov. 2, 2007) Original Image of this Document (PDF)
- 2007 WL 5021159 (Trial Motion, Memorandum and Affidavit) Proposed Intervenor United States' combined brief in opposition to Defendant's Motion to dismiss and in support of the constitutionality of

the Telephone Consumer Protection Act (Nov. 2, 2007) Original Image of this Document (PDF)
- 2007 WL 5021157 (Trial Motion, Memorandum and Affidavit) Defendant's Reply in Support of Its Motion to Dismiss (Sep. 28, 2007) Original Image of this Document (PDF)
- 2007 WL 5021156 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Motion to Dismiss (Sep. 14, 2007) Original Image of this Document (PDF)
- 2007 WL 5021155 (Trial Motion, Memorandum and Affidavit) Marinov Enterprises, Inc.'s Motion to Dismiss (Jul. 31, 2007) Original Image of this Document (PDF)
- 1:07cv02494 (Docket) (May 3, 2007)

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.