```
STATE OF ILLINOIS        )
                         )  ss
COUNTY OF LAKE           )
```

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

```
CE Design, Ltd.,              )
      Plaintiff,              )
                              )
v.                            )    04 L 564
Peripheral Solutions, Inc.,   )    Judge Margaret J. Mullen
      Defendant               )
```

## ORDER RULING ON PERIPHERAL'S 5/2-619.1 MOTION TO DISMISS

The matter comes before the court for ruling on a motion brought by the Defendant, Peripheral Solutions, Inc. to dismiss pursuant to 735 ILCS 5/2-619.1 (2005). The complaint attacked was brought by CE Design, Ltd. and it alleges defendant transmitted of unsolicited advertisements by facsimile transmissions to plaintiff and others. Causes of action are asserted under the Telephone Consumer Protection Act ("TCPA"), for common law conversion, and under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

    I.    **Introduction-Motions to Dismiss Under 735 ILCS 5/2-619.1**

A hybrid motion to dismiss under 735 ILCS 5/2-619.1 allows for dismissal under both 735 ILCS 5/2-615 and 735 ILCS 5/2-619. Section 619.1 requires a combined motion to "be in parts." "Each part shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619, or 2-1005." 735 ILCS 5/2-619.1. Each part should also clearly show any points relied upon under the Section upon which it is based. *Id.* Defendant's motion fails to identify which sections are based upon 2-615 and 2-619.




However the plaintiff has not objected. Defendant "incorporated by reference" motions made in other cases and pending in other jurisdictions. It did so by referring to each case and appending a combined motion filed in one case, which adopted and incorporated by reference arguments made in a combined motion in the second case. Those motions did clearly refer to the sections upon which the motions were based.

Section 2-615 allows a case to be dismissed when a complaint fails to state a cause of action upon which relief may be granted. *T & S Signs, Inc. v. Village of Wadsworth*, 261 Ill.App.3d 1080 (2d Dist. 1994). A plaintiff cannot rely simply on mere conclusions of law or fact unsupported by factual allegations. *Evans v. Page*, 324 Ill.App.3d 241 (5th Dist. 2001). In considering a motion to dismiss under section 2-615, all well-pleaded facts are to be taken as true and considered in the light most favorable to the plaintiff. *Rodgers v. Whitley*, 282 Ill.App.3d 741 (1st Dist. 1996). Because a motion to dismiss under Section 2-615 is based on pleadings rather than underlying facts, "affidavits the products of discovery, documentary evidence not incorporated into the pleadings as exhibits, testimonial evidence or other evidentiary materials may not be considered by the court in making its ruling." *Mt. Zion State Bank & Trust v. Consolidated Communications*, 169 Ill.2d 110, 130-31 (1995). The court must then decide whether the allegations of the complaint are sufficient to set forth a cause of action upon which relief may be granted. *Derby Meadows Util. Co v. Inter-Continental Real Estate*, 202 Ill.App.3d 345 (1st Dist. 1990). In short, section 2-615 motions attack the legal sufficiency of a complaint.

Section 2-619 differs from section 2-615 in that a party admits the legal sufficiency of the complaint but asserts "an affirmative defense or other matter which avoids or defeats

the claim." *T & S Signs*, 261 Ill.App.3d at 1083. Under section 2-615, the court is bound only to review the pleadings before it and under section 2-619, the court may consider affirmative matters that would defeat a claim. *Willard v. Northwest Nat'l Bank*, 137 Ill.App.3d 255 (1st Dist. 1985). In ruling on a motion to dismiss under Section 2-619, a court may consider "pleadings, depositions, and affidavits." *Zedella v. Gibson*, 165 Ill.2d 181, 185 (1995) (citing *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 486 (1993)). Thus, motions to dismiss under section 2-619 may raise affirmative factual defenses, which are not allowed under section 2-615.

## II.  Count I-TCPA

Peripheral incorporated the motion to dismiss in <u>James C. Zoes v. North American Bancard, Inc.</u> 03 CH 17879 (The Group C Motion), which itself incorporated a motion to dismiss in <u>Inspec Associates, Ltd. V. Charter One Bank</u>, 03 CH 10965 (The Group B Motion). Peripheral then appears to recapitulate and reassert all of the grounds stated in these motions. This court will attempt to address each argument in each incorporated motion as well as those argued independently in Peripheral's brief. Each argument however, is unavailing, and the court holds the motion to dismiss Count I pursuant to section 2-619 is denied.

### A. No Private Right of Action

Initially, the Group B motion argues the TCPA count should be dismissed under section 2-619 because plaintiff has no private right of action. For the reasons stated in the CE Design's Response in Opposition, this argument in support of the motion to dismiss Count I is rejected.




## B. Fifth Amendment Concerns

Next, the Group B motion asserted the TCPA was unconstitutional under the 5th Amendment because the $500 per fax statutory penalty is radically disproportionate to the actual damages. The Due Process clause of the Fifth Amendment does impose limits beyond which penalties may not go. *TXO Prod. Co. v. Alliance Res. Corps.*, 509 U.S. 443, 453-58 (1993). At issue here is whether the $500 minimum damages available under the TCPA are grossly excessive such that they violate Due Process.

Importantly, the minimum damages provision within the TCPA was *not* designed to compensate for each private injury caused. Rather, it was intended to address and deter overall public harm caused by unsolicited facsimile transmissions. *See, e.g., Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997). Damages available under the TCPA were designed to address at least three interests. First, they take into account the difficult to determine business-interruption damages imposed on recipients of unsolicited facsimile advertisements. *American Blast Fax, Inc.*, 121 F. Supp. 2d at 1090. Second, they deter the practice of shifting advertising costs onto unwitting recipients. *Id.* Third, they provide an incentive for claimants to bring suit. *Id.* These interests are consonant with the Supreme Court's analysis of statutory damages. It has explained that statutory damages aimed at public wrongs need not be "confined or proportioned to loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury." *St. Louis Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). Other courts have agreed that the fee here is not severe or oppressive as to render it disproportionate to the

4

offense or to make it completely unreasonable. *American Blastfax, Inc.*, 121 F. Supp. 2d at 1091; *Kenro, Inc*, 962 F. Supp. at 1166–67; *ESI Ergonomic Solutions, L.L.C. v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94 (Ariz. Ct. App. 2002); *Harjoe v. Herz Fin.*, 108 S.W.3d 653, 654-55 (Mo. 2003).

Here, this court agrees that the minimum damages at issue under the TCPA are not disproportionate to the offense or unreasonable, when weighed against the overall harm of unsolicited facsimile communications and the public interest in deterrence Therefore, the $500 minimum fine does not violate Due Process under the Fifth Amendment.

### C. First Amendment Claims

Third, the Group B motion claimed the TCPA's ban on commercial fax advertising violates the First Amendment of the United States Constitution.

1. *Central Hudson Gas* Analysis

The United States Supreme Court set out the framework to analyze First Amendment claims with respect to commercial speech. To pass constitutional muster under the *Central Hudson Gas* analysis, the court must consider four factors. First, it must be determined whether the speech concerns unlawful activity, or whether it is misleading. *Id.* at 1167. Commercial speech which advocates unlawful activity or is misleading in nature receives no First Amendment protection. *Id.* Second, the court must analyze whether the asserted governmental interest in regulating the speech is substantial. *Id.* Third, the court must determine "whether the regulation directly advances the governmental interest asserted." *Id.* Lastly, it must be examined whether the regulation is more extensive than necessary to serve the governmental interest. *Id.*

5

### i. The Speech at Issue is not Unlawful or Misleading

Because the first factor, whether the speech is unlawful or misleading, is not at issue in this litigation, it is considered satisfied for purposes of this analysis.

### ii. There is a Substantial Interest in Eliminating Unwanted Commercial Faxes

In enacting the TCPA, Congress found that there was a substantial national interest in eliminating the ability of commercial fax marketers to shift the costs of advertisers to individuals through unsolicited, commercial facsimile transmissions. Further, there are also substantial interests in eliminating interruptions and interference commonly associated with unwanted faxes. Federal courts considering this issue have routinely held these interests as substantial or compelling. *See, e.g., Missouri v. American Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 55 (9th Cir. 1995). Moreover, sister Illinois Circuit Courts have found a substantial interest in the TCPA as well. *See, e.g., Whiting Corp. v. MSI Marketing, Inc.*, No. 02 CH 6332 (Cook County, Illinois April 3, 2003) ("[I]t appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity"); *Robin Hill Development Co. v. JD&T Enterprises, Inc.*, No. 01 L 527 (DuPage County, Illinois, October 3, 200) (upholding the substantial interest analysis).

It is clear that both the United States and Illinois have a substantial interest in protecting unwitting owners of facsimile machines from bearing the costs of unwanted, commercial fax advertising. The TCPA is appears to be directed towards preventing the

unjustified cost-shifting associated with unsolicited facsimile transmissions and the business disruptions and delays common in the practice of "junk faxes."

        iii. The TCPA Directly Advances the Interest in Prohibiting Unsolicited, Commercial Facsimile Transmissions

A properly tailored restriction "focuses on the source of the evils the [government] seeks to eliminate . . . and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 n. 7 (1989). Plaintiff has the burden of demonstrating that the restriction imposed by the TCPA will not only advance the governmental interest but will do so to a material degree. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996). Since unsolicited, commercial facsimile transmissions are responsible for the bulk of advertising cost shifting, banning *unsolicited*, commercial facsimiles is a reasonable method to achieve Congress' goal of reducing cost shifting. *See, e.g., Destination Ventures*, 46 F.3d at 56. The TCPA is a narrow response to the "evil" that prompted it - unsolicited, commercial facsimile transmissions. It prohibits no more communication than is necessary because it proscribes the very activity that causes the economic harm at issue here and extends no further.

The TCPA directly advances the government's interest of protecting consumers from bearing the costs of unwanted advertising. By prohibiting only unsolicited, commercial faxes, the court finds TCPA passes muster under the third prong of the *Central Hudson Gas* analysis.




### iv. The TCPA is not More Expansive Than Necessary

The last inquiry to be made involves whether the regulation is more extensive than necessary to serve the governmental interest. *Vuagniaux*, 802 Ill.2d at 1167. It should be first noted that the "least restrictive means" test has no role in the commercial speech context. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995). The test employed here is not whether Congress used the least restrictive means, but rather whether there "is a 'fit' between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable." *Missouri v. American Blast Fax, Inc.*, 323 F.3d at 659 (internal quotations and citations omitted).

In this case, the TCPA leaves open ample alternative means of communication for commercial advertisers to engage in. Those who wish to communicate advertisements by facsimile transmission are still allowed to do so as fax advertising is permissible with the prior consent of recipients. *See id.* Those impacted by the law are, of course, also still free to advertise in other media formats, such as television or newspaper, where the advertiser bears the cost of publishing the advertisement. The TCPA is not overbroad; instead, it protects the owners of facsimile machines from the very evil that prompted the legislation.

The central inquiry here is whether the scope of the TCPA's speech restriction is proportionate to the interests served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). The interests here include the burdensome shift of costs from the advertiser to the consumer and the disruption of the use of facsimile machines. It is apparent that Congress' decision to prohibit only those facsimile transmissions that caused the economic injuries described represents a reasonable fit



between the "legislature's ends" and the "means chosen to accomplish those ends" – the implementation of the TCPA. *Missouri v. American Blast Fax, Inc.*, 323 F.3d at 659 (internal quotations and citations omitted).

"It was not unreasonable for Congress to choose a system that protects those who would otherwise be forced to bear unwanted burdens over those who wish to send and receive unsolicited fax advertising." *Id.* The restriction employed by the TCPA is adequately tailored to protect consumers from the unwanted burdens of receiving unsolicited faxes. Because it has already been determined that the TCPA directly advances the substantial interest of protecting consumers from unwanted commercial faxes, and that it leaves open alternative channels of communication, the TCPA achieves a reasonable fit between the means adopted and the ends it seeks to serve.

As noted, the TCPA satisfies all four elements of the *Central Hudson Gas* analysis and no violation of the First Amendment is found.

2. The Mainstream Marketing Argument

The Group C Motion incorporated the arguments of the Group B Motion but also claimed dismissal pursuant to section 2-619 was warranted because the TCPA's ban on commercial faxes is more restrictive than necessary in light of *Mainstream Marketing Services, Inc. v. FTC* (10th Cir. 2004), 358 F.3d 1228, which analyzed the "do-not-call registry" and rejected a First Amendment challenge applying the *Central Hudson Gas* tes. This argument is duplicative of others made. The court has already addressed the *Central Hudson Gas* analysis and notes the *Mainstream Marketing* opinion cited *Missouri v. American Blast Fax, Inc.* rejecting First Amendment claims to the TCPA's prohibition on blast fax advertisements.

### 3. Strict Liability

Next Peripheral brief claims the TCPA unconstitutionally imposes strict liability, and this same challenge is also raised in the Group C Motion. Defendant alleges that the TCPA inhibits Peripheral's exercise of constitutionally protected speech because it does not contain a knowledge requirement. As a result, Defendant argues that strict liability is imposed on the transmission of facsimile advertisements. Defendant is correct that the courts should be wary of statutes that chill constitutionally protected speech by imposing criminal sanctions through strict liability. Defendant cites *Video Software Dealers Assoc. v. Webster*, 968 F.2d 684 (8th Cir. 1992) for the rule that any "statute that chills the exercise of First Amendment rights must contain a knowledge element." Mot. to Dismiss at 9. However, the *Webster* court described the statute on review as "quasi-criminal." *Webster*, 968 F.2d at 690. State courts that have reviewed the TCPA have distinguished *Webster* by noting that the TCPA is not "quasi-criminal." *See, e.g., Accounting Outsourcing, LLC v. Verizon Wireless Pers. Comm.*, 329 F. Supp. 2d 789, 811 n. 155 (M.D. LA 2004). Here, the TCPA regulates only commercial speech which is not entitled to full constitutional protection. Moreover, the TCPA provides for a civil penalty, not a criminal sanction, and traditional concerns about imposing strict liability with criminal penalties against fully protected speech simply are not present here.

### 4. Vagueness

Both the Group C Motion and Peripheral's brief claim the TCPA is unconstitutionally vague. It is argued that the TCPA suffers from vagueness because it fails to give it sufficient guidance as to what is prohibited by the Act and that the Act permits selective enforcement. Defendant first argues that the TCPA's use of

"unsolicited advertisement" is impermissibly vague. Yet, the TCPA defines an unsolicited advertisement as "material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4). Defendant has not explained how this definition fails to define the prohibited conduct in question. Instead, the definition clearly describes the type of communications that are prohibited. Defendant also challenges the use of "person" within the TCPA and claims that it does not know whether an "entity" is considered a "person." Yet, this claim ignores that rule that private corporations are treated as "persons capable of suing and being sued." *Cook County v. United States*, 538 U.S. 119, 127 (2003). The TCPA is not unconstitutionally vague.

D. The Eighth Amendment Claim

Without distinguishing its arguments, Peripheral suggests both the Fifth and Eighth Amendments are violated by the fines provision of the TCPA. The Fifth Amendment concerns were addressed above. The Eighth Amendment issue will be addressed at this time. The purpose of the Excessive Fines Clause, like the purpose of the Eighth Amendment's Cruel and Unusual Punishments Clause, "was to limit the government's power to punish." *Austin v. United States* (1993), 509 U.S. 602, 609. Whether a governmental exaction is subject to the limitations of the Excessive Fines Clause depends upon whether the exaction "constitutes 'payment to a sovereign as punishment for some offense.'" *Id.* at 622, quoting *Browning-Ferris Industries* of Vermont, Inc. v. Kelco Disposal, Inc. (1989), 492 U.S. 257. *Cf. United States v. Bajakjian*, (1998), 524 U.S. 321. (payments in kind "are thus 'fines' if they constitute punishment for an offense"). The

penalty provision triggered by this private plaintiff's alleged violation of the TCPA would be exacted in favor of the individual pursuing the private right of action. The TCPA does provide the attorneys general of each state the same remedies on behalf of the state. However, for the reasons discussed in the section relating to the Fifth Amendment, the Eighth Amendment argument is rejected.

E. The Tenth Amendment Argument

The Group C Motion discusses a claimed violation of the Tenth Amendment. This argument is rejected and the court holds that, consistent with *International Science & Tech. Inst. v. Inacom Communications, Inc.* (8th Cir. 1997), 106 F.3d 1146, Congress avoided any potential conflict with this mandate by allowing states to deny access to litigants seeking redress for these claims, if the state so chose.

### III. The Common Law Conversion Claim-Count II

The Group B Motion seeks dismissal of a common law conversion count in that case under section 2-615, arguing plaintiff failed to allege sufficient facts to show wrongful assumption of dominion or control over plaintiff's property, that plaintiff had the right to immediate possession of the property that was allegedly converted, and that plaintiff failed to demand return of the paper and toner. Peripheral appears to add an argument independent of the Group B Motion: that a mere fax transmission does not constitute the type of dominion or control over property which is remedied by the tort of conversion. For the purposes of brevity and clarity the court will address all the arguments here.

Several considerations are helpful in making the determination of whether a cause of action for conversion has been properly pleaded. "The essence of conversion is not

acquisition by the wrongdoer, but a wrongful deprivation of the owner thereof." *Dickson v. Riebling*, 30 Ill.App.3d 965, 967 (1st Dist. 1981). In fact, all that is required to demonstrate a successful showing of conversion is that the Defendant exercised control over the chattel "in a manner inconsistent with the plaintiff's right of possession." *Jensen v. Chicago & W.I.R. Co.*, 94 Ill.App.3d 915, 932 (1st Dist. 1981). In general, four factors must be established to succeed on a conversion claim: (1) the defendant wrongfully and without permission assumed control, dominion, or ownership over the property; (2) the plaintiff has a right to the property; (3) plaintiff has an absolute and unconditional right to the immediate possession of the property; (4) the plaintiff made a demand for possession. *Western States Ins. Co. v. Louis E. Olivero & Assoc.*, 283 Ill.App.3d 307, 310 (3d Dist. 1996).

At least one other court has already held that the first three factors of conversion are met when a defendant sends unsolicited, commercial faxes to another's facsimile machine because it shifts the costs of advertising onto the recipient. *See, e.g., Whiting Corp. v. MSI Marketing, Inc.*, 02 CH 6332 at 14-15 (Cook County, Illinois April 3, 2003). This court agrees with the reasoning of *Whitting Corp.*

Plaintiff alleges that the Defendant used Plaintiff's paper, ink, or toner for Defendant's advertising purposes. Compl. at ¶¶ 24-25. That rendered the paper, ink, and toner unusable by Plaintiff. *Id.* The Plaintiff has alleged facts sufficient to establish an unqualified possessory interest in its facsimile machine, paper, ink, and toner. Beyond that, the well-pled facts would show that Defendant assumed control of the property when it sent unsolicited, commercial facsimile transmissions to the Plaintiff. These facts alone satisfy the first three factors of conversion. *See id.* Under Illinois case law,

 

Plaintiff need not make a demand for possession where there is another independent act of conversion that can be demonstrated. *Jensen v. Chicago & Western Indiana R.R. Co.*, 94 Ill.App.3d 915, 933 (1st Dist. 1981). Since paper, toner, and ink would be consumed while the facsimile machine was overtaken by Defendant's fax transmission, other independent acts of conversion are reasonably found here, thus eliminating the requirement that the Plaintiff need make a demand for possession for there to be a proper claim of conversion. *See Whiting Corp.*, 02 CH 6332 at 15 (Cook County, Illinois April 3, 2003). The court finds that conversion has been sufficiently pled. The motion to dismiss Count II under 2-615 is denied.

### IV. The Illinois Consumer Fraud Claim-Count III

The Group B Motion sought dismissal pursuant to section 2-615 of the count seeking relief under the ICFA, contending that "the ICFA does not extend to practices that the legislature has chosen not to make remediable under the statute, and also that the allegation failed to properly plead "unfair practices." The other incorporated motion, the Group C Motion, also sought dismissal (presumably under 2-615) of a count seeking ICFA relief, arguing that the allegation of an unsolicited fax advertising by the defendant was insufficient to plead an unfair or deceptive practice as required in an ICFA claim. Peripheral also argues in addition to the incorporated motions that CE Design has failed to allege "specific and adequate facts to demonstrate unfair or deceptive practices," as required to sustain a cause under the ICFA. Peripheral also claims the ICFA count should be dismissed for the failure to adequately plead "actual damage." For the sake of brevity and clarity, all the arguments in favor of dismissal of the ICFA count will be addressed here.

The ICFA protects consumers against any deceptive or unfair acts. 815 ILCS 505/2. A plaintiff may allege that a practice is unfair without alleging that it is deceptive. *Mosiman v. BMW Fin. Servs. NA*, 321 Ill. App. 3d 386, 390 (3d Dist. 2001). In *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403 (2002), the Illinois Supreme Court set forth the elements for a successful claim under the Consumer Fraud Act. To determine whether a business practice is unfair, a court must consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers. *Id.* at 417-18. It is not required that all three factors be met for a successful Consumer Fraud action to be illustrated. *Id.* at 418. Rather, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Chesire Mortgage Services, Inc. v. Montes*, 223 Conn. 80, 106 (Conn. 1992)).

In analyzing the first factor, transmitting unsolicited, commercial facsimile transmissions violates established Illinois public policy. The public policy of Illinois is found in its Constitution, its statutes, and its judicial decisions. *Reed v. Farmers Ins. Group.*, 188 Ill.2d 168, 174-75 (Ill. 1999) (citing *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill.2d 333, 341 (Ill. 1989)). The Illinois Legislature has prohibited the transmission of unsolicited, commercial facsimiles, pursuant to 720 ILCS 5/26-3(b), and this reflects the public policy of Illinois by prohibiting the unsolicited facsimile transmission of commercial advertisements. Thus, the act of sending unsolicited, commercial facsimile transmissions violates recognized public policy of Illinois, satisfying the first factor in *Robinson*.

15




The second factor this court must analyze in determining whether a violation of the Consumer Fraud Act exists is whether the act in question is immoral, unethical, oppressive or unscrupulous. *Robinson*, 201 Ill.2d at 417-18. In this instance, the Plaintiff has attached one facsimile to its Complaint as a demonstration of the communications sent by the Defendant. From the allegations contained in Plaintiff's Complaint, this court must determine whether Defendant's actions are immoral, unethical, oppressive or unscrupulous. Plaintiff alleges that Defendant's practice of sending unsolicited facsimile communications "forced Plaintiff and the other class members to incur expense without any consideration." Compl. at ¶ 43. Plaintiff also contends that Defendant's actions "caused substantial injury to hundreds of persons" and caused it, and other members of the class to suffer damages including "loss of paper, toner, ink, and wear and tear on their facsimile machines." *Id.* at ¶ 45. In this case, the Plaintiff has adequately plead allegations of oppressive and unscrupulous conduct – it is subject to unwanted facsimile transmissions by the Defendant and has no choice but to submit.

Considering the third factor, the Plaintiff must allege a substantial injury as a result of the Defendant's actions. There is no basis for the award of nominal or presumed damages under the Consumer Fraud Act. *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill.App.3d 1032, 1041 (2d Dist. 1992). In this case, Plaintiff has alleged that "Defendant's misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, and wear and tear on their facsimile machines." Compl. at ¶ 45. Plaintiff's allegations, if taken as true, state a claim for substantial injuries through the receipt of unsolicited facsimiles. This practice forces consumers to incur expenses related to defendant's allegedly unauthorized advertising. Taking

Plaintiff's allegations as true, Plaintiff's allegations satisfy the substantial injury prong of this analysis.

The court finds that Plaintiff has sufficiently pleaded the requirements for a claim under the Consumer Fraud Act. The motion to dismiss Count III is denied.

## CONCLUSION

IT IS ORDERED THAT Defendant's motion to dismiss is denied in its entirety. Defendant shall answer or otherwise plead within 28 days.

ENTER: _____
MARGARET J. MULLEN
CIRCUIT JUDGE

Dated this 8th day of March 2005 at Waukegan, Illinois