STATE OF ILLINOIS      )
                       ) ss
COUNTY OF LAKE         )

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

Eclipse Manufacturing Co.,       )
       Plaintiff,                )
                                 )
v.                               )       03 CH 1344
T.J. Copy Products, Inc. and     )       Judge David M. Hall
Tracy J. Wertz,                  )
       Defendants                )

FILED APR 23 2004

## ORDER

Before this court is a motion by the Defendants to dismiss the complaint brought by Eclipse Manufacturing Company ("Eclipse") concerning the propriety of unsolicited facsimile transmissions sent by the Defendants. Defendants assail the complaint on several fronts. They contend that the Telephone Consumer Protection Act ("TCPA") violates numerous constitutional rights and must be invalidated by this court. Defendants also assert that several of Eclipse's claims fail to state a cause of action. Defendants' contentions will be addressed in turn.

1. **Sections 2-615 and 2-619**

Defendants move this court to dismiss or strike "portions" of Plaintiff's Complaint or to move this court for judgment on the pleadings. Defendants rely on 735 ILCS 5/2-615 and 735 ILCS 5/2-619 in support of these proposed actions. A Section 2-619 motion raises certain defects or defenses and questions whether judgment should be entered as a matter of law. *Illinois Graphics Co. v. Nickum*, 159 Ill.2d 469, 494 (Ill. 1994). In turn, a

1

section 2-615 motion questions whether a complaint states a valid cause of action. *Id.* at 488.

As an initial matter, this court will consider the threshold issues before it, addressing Plaintiff's standing and statutory right to bring this suit.

### 2. Defendants' Jurisdictional Arguments are Without Merit

Plaintiff has adequately demonstrated in its complaint that it received a commercial facsimile from T.J. Copy Products, allegedly in violation of the TCPA. The TCPA provides a statutorily conferred cause of action, enabling Plaintiff to bring suit in this court. Since Plaintiff has alleged that the Defendants have acted in contravention of federally established law, it would appear that there is a viable case before this court.

A statutory challenge under the Illinois Constitution requires a direct injury from the enforcement of a statute that is: (1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be redressed by granting the relief requested. *Glisson v. City of Marion*, 188 Ill.2d 211, 221 (Ill. 1999). Plaintiff has adequately pleaded a distinct and palpable injury - the transmission of the unsolicited, commercial fax. The transmission was fairly traceable to the Defendants' actions because it originated from T.J. Products, Inc. Lastly, the relief requested should provide Plaintiff with redress because an injunction would serve to stop the actual injury and a monetary award would compensate the public harm caused by unfettered, unsolicited, commercial faxes. <u>The court finds that Plaintiff has standing to maintain this action.</u>

Defendants suggest that Illinois provides no private right of action enabling the Plaintiff to bring suit. This view has been conclusively rejected by courts nationwide. *See, e.g., Murphey v. Lanier*, 204 F.3d 911, 914 (9th Cir. 2000); *International Science &*

2

*Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir. 1997); *Erienet, Inc. v. Velocity Net*, 156 F.3d 513, 515 (3rd Cir. 1998). The TCPA expressly creates a private cause of action for violations of the Act to be had in state courts. 47 U.S.C. § 227(b)(3). States *may* choose to prevent their courts from hearing private actions under the TCPA. *See International Science*, 106 F.3d at 1156. There is no indication that Illinois has done so here. <u>As a result, the court finds that Plaintiff has presented a viable private claim before this court.</u>

Defendants' final attack on the procedural posture of Plaintiff's claim centers on the fact that the TCPA prohibits "persons" from making unsolicited, commercial facsimile transmissions and not "entities." A brief review of the United States Code reveals that "persons" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1 (2004). <u>The court finds that Plaintiff is a person under the Act.</u>

### 3. The TCPA has Been Upheld as Universally Constitutional

Without regard to numerous judicial determinations upholding the constitutionality of the TCPA, Defendants assail the constitutional propriety of the TCPA. Defendants assert that the TCPA violates the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. A wide variety of federal and state courts have thoroughly examined the constitutionality of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In addition to satisfying general constitutional concerns, the universal consensus among the courts is that the TCPA easily satisfies concerns raised under the First Amendment relating to the regulation of commercial speech pursuant to *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980).

3

Defendants have not presented any new bases to support their argument that the prohibition of unsolicited, commercial speech, in the form of facsimile transmissions, is unconstitutional.

This court will individually address the array of Defendants' constitutional challenges.

### a. The First Amendment Challenge

Illinois courts employ the well-accepted *Central Hudson Gas* analysis when determining whether restrictions on commercial speech are constitutional. *See, e.g., Vuagniaux v. Department of Professional Regulation*, 802 N.E.2d 1156 (Ill. 2003). To pass constitutional muster under the *Central Hudson Gas* analysis, the court must consider four factors. First, it must be determined whether the speech concerns unlawful activity, or whether it is misleading. *Id.* at 1167. Commercial speech which advocates unlawful activity or is misleading in nature receives no First Amendment protection. *Id.* Second, the court must analyze whether the asserted governmental interest in regulating the speech is substantial. *Id.* Third, the court must determine "whether the regulation directly advances the governmental interest asserted." *Id.* Lastly, it must be examined whether the regulation is more extensive than necessary to serve the governmental interest. *Id.*

Since *Central Hudson Gas* is controlling authority on this matter and has been employed by all courts considering this issue, it is appropriate for this court to do the same here. This is because the TCPA, by its plain meaning, prohibits the solicitation of commercial speech only. Moreover, the speech in question here, the unsolicited fax sent to Eclipse, is undoubtedly commercial in nature. It includes phrases such as:

"Unbelievable Deals!" and "Limited Inventory!! Call Now." As such, it is apparent that the communication at issue, and the statutory reach of the TCPA, are clearly limited to commercial speech. The TCPA easily passes the factors announced under the *Central Hudson Gas* analysis.

### i. The Speech at Issue is not Unlawful or Misleading

Because the first factor, whether the speech is unlawful or misleading, is not at issue in this litigation, it is considered satisfied for purposes of this analysis. <u>The court finds that the speech in question is not unlawful or misleading.</u>

### ii. There is a Substantial Interest in Eliminating Unwanted Commercial Faxes

In enacting the TCPA, Congress found that there was a substantial national interest in eliminating the ability of commercial fax marketers to shift the costs of advertisers to individuals through unsolicited, commercial facsimile transmissions. Further, there are also substantial interests in eliminating interruptions and interference commonly associated with unwanted faxes. Federal courts considering this issue have routinely held these interests as substantial or compelling. *See, e.g., Missouri v. American Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 55 (9th Cir. 1995). Moreover, three sister Illinois Circuit Courts have found a substantial interest in the TCPA as well. *See, e.g., Whiting Corp. v. MSI Marketing, Inc.*, No. 02 CH 6332 (Cook County, Illinois April 3, 2003) ("[I]t appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity"); *Robin Hill Development Co. v. JD&T Enterprises, Inc.*, No. 01 L 527 (DuPage County, Illinois, October 3, 200) (upholding the substantial interest analysis); *Mark Chair Co. v. Mortgage Managers, Inc.*, No. 02 LK

5

247 (Kane County, Illinois, December 20, 2002) (explaining that the "government interest in obviating the cost shifting of unsolicited fax advertising from the sender to the recipient thereof and preemption of the recipient's use of its fax machine is substantial").

A well-documented legislative history underscores the fact that explosive growth in unsolicited facsimile advertising posed a realistic threat of economic harm to Americans with facsimile machines. This court will not belabor this well-established fact. Since unrestricted, unsolicited, commercial faxes cause considerable, demonstrated economic injury, the State has a strong interest in protecting fax owners and preventing these unsolicited transmissions.

It is manifestly clear that both the United States of American and Illinois have a substantial interest in protecting unwitting owners of facsimile machines from bearing the costs of unwanted, commercial fax advertising. The TCPA is undoubtedly directed towards preventing the unjustified cost-shifting associated with unsolicited facsimile transmissions and the business disruptions and delays common in the practice of "junk faxes." <u>Like many courts before, this court holds that the TCPA easily passes the substantial governmental interest analysis.</u>

### iii. The TCPA Directly Advances the Interest in Prohibiting Unsolicited, Commercial Facsimile Transmissions

A properly tailored restriction "focuses on the source of the evils the [government] seeks to eliminate . . . and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 n. 7 (1989). Plaintiffs have the burden of demonstrating that the restriction imposed by the TCPA will not only advance the governmental interest but will do so to a material degree. *44 Liquormart, Inc. v.*

*Rhode Island*, 517 U.S. 484, 505 (1996). Since unsolicited, commercial facsimile transmissions are responsible for the bulk of advertising cost shifting, banning *unsolicited*, commercial facsimiles is a reasonable method to achieve Congress' goal of reducing cost shifting. *See, e.g., Destination Ventures*, 46 F.3d at 56. The TCPA is a narrow response to the "evil" that prompted it - unsolicited, commercial facsimile transmissions. It prohibits no more communication than is necessary because it proscribes the very activity that causes the economic harm at issue here and extends no further.

The TCPA directly advances the government's interest of protecting consumers from bearing the costs of unwanted advertising. By carefully prohibiting only unsolicited, commercial faxes, it satisfies the third *Central Hudson Gas* analysis.

### iv. The TCPA is not More Expansive Than Necessary

The last inquiry to be made involves whether the regulation is more extensive than necessary to serve the governmental interest. *Vuagniaux*, 802 Ill.2d at 1167. It should be first noted that the "least restrictive means" test has no role in the commercial speech context. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995). The test employed here is not whether Congress used the least restrictive means, but rather whether there:

> is a 'fit' between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.

*American Blast Fax, Inc.*, 323 F.3d at 659 (internal quotations and citations omitted).

In this case, the TCPA leaves open ample alternative means of communication for commercial advertisers to engage in. Those who wish to communicate advertisements by

7

facsimile transmission are still allowed to do so as fax advertising is permissible with the prior consent of recipients. *See id.* Those impacted by the law are, of course, also still free to advertise in other media formats, such as television or newspaper, where the advertiser bears the cost of publishing the advertisement. The TCPA is not excessively expansive; instead, it protects the owners of facsimile machines from the very evil that prompted the legislation.

The central inquiry here is whether the scope of the TCPA's speech restriction is proportionate to the interests served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). The interests here include the burdensome shift of costs from the advertiser to the consumer and the disruption of the use of facsimile machines. It is apparent that Congress' decision to prohibit only those facsimile transmissions that caused the economic injuries described represents a reasonable fit between the "legislature's ends" and the "means chosen to accomplish those ends" – the implementation of the TCPA. *American Blast Fax, Inc.*, 323 F.3d at 659 (internal quotations and citations omitted).

"It was not unreasonable for Congress to choose a system that protects those who would otherwise be forced to bear unwanted burdens over those who wish to send and receive unsolicited fax advertising." *Id.* The restriction employed by the TCPA is adequately tailored to protect consumers from the unwanted burdens of receiving unsolicited faxes. This is not a case where a complete ban of speech is in place. Rather, several alternative channels of communication remain open to commercial speakers. Because it has already been determined that the TCPA directly advances the substantial interest of protecting consumers from unwanted commercial faxes, and that it leaves open

8

alternative channels of communication, the court finds that the TCPA achieves a reasonable fit between the means adopted and the ends it seeks to serve.

The court finds that, as written, the TCPA satisfies all four elements of the *Central Hudson Gas* analysis.

### b. Vagueness Challenges

Defendants assert that the TCPA is void for vagueness because it "does not define what constitutes prior express invitation or permission nor what would constitute a facsimile." Mot. to Dismiss at 4. Because of this, Defendants assert, they cannot know what is necessary to avoid liability. Memo. in Support of Mot. to Dismiss at 10. Criminal laws may be deemed unconstitutionally vague when they "fail to provide the kind of notice that would enable a person of ordinary intelligence to understand what conduct is prohibited." *People v. Law*, 202 Ill.2d 578, 582 (Ill. 2002) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)). Criminal laws may also be declared unconstitutionally vague when they fail to provide explicit standards of enforcement. *Id.*

Before this court can conduct a vagueness analysis, it must first turn its attention to the conduct of the Defendants challenging the law. *Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 495 (1981). "A Plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* In this case, the Defendants have allegedly sent an unsolicited, commercial facsimile transmission to the Plaintiff. As a result, their conduct is "clearly proscribed" by the TCPA and they are not proper parties to contest its alleged vagueness. Nor is it possible for Defendants to assert a facial challenge against the statute, where the statute clearly applies to their conduct, because the overbreadth doctrine does not apply to

9

commercial speech. *See Waters v. Churchill*, 511 U.S. 661, 670 (1994). <u>The court finds that the Defendants lack standing to make a vagueness challenge to the TCPA.</u>

Defendants also assert that 720 ILCS 5/26-3, an Illinois criminal provision prohibiting unsolicited, commercial facsimile transmissions, is unconstitutionally vague. Plaintiff, however, has not based its causes of action on this statute and Defendants' challenge is, accordingly, not ripe. Hypothetical cases or controversies, challenging laws that are not being enforced against the Defendants, do not satisfy the requirements of the ripeness doctrine. *Simcox v. Simcox*, 131 Ill.2d 491, 498 (citing *Poe v. Ulman*, 367 U.S. 497, 507 (1961)).

Even if Defendants could properly raise the issue of vagueness, the terms "prior express invitation or permission" and "facsimile" do not suffer from the constitutional malady of vagueness. To guide the Defendants, this court looks to Funk & Wagnall's New International Dictionary of the English Language for assistance. Funk & Wagnall's Dictionary defines "prior" as "preceding in time, order, or importance." Funk & Wagnall's New International Dictionary of the English Language 1002 (2003). It defines "express" as "to put (thought or opinion) into spoken or written words." *Id.* at 448. Funk & Wagnall's defines "invitation" as "the act of inviting; courteous solicitation to come to some place or to do some act; especially a requesting of another's company: a standing *invitation* to dinner." *Id.* at 670. "Permission" is defined as "the act of permitting or allowing; license granted; formal authorization; consent." *Id.* at 941. Lastly, "facsimile" is defined as "an exact copy or reproduction, often differing in scale but always identical or closely imitative in detail, material, etc." *Id.* at 453. These are hardly unfamiliar words or phrases with uncertain meaning.

To be successful in their void for vagueness claim, Defendants must be able to illustrate why the challenged phrases "fail to provide the kind of notice that would enable a person of ordinary intelligence to understand what conduct is prohibited." *Law*, 202 Ill.2d at 582. Instead, Defendants make vague and conclusory allegations. <u>The court finds that the challenged terms share a common and well-understood meaning which would otherwise deny the Defendants' vagueness challenge.</u>

### c. The TCPA Does not Violate Due Process or Provide for Excessive Fines

Defendants next argue that the TCPA violates their right to Due Process and that the award of statutory damages would violate the Eighth Amendment's prohibition against excessive fines. The Due Process Clause of the Fifth and Fourteenth Amendments prohibits governments from imposing "grossly excessive" punishments. *TXO Production Corp. v. Alliance Resource Corp.*, 509 U.S. 443, 454 (1993). The TCPA provides that a defendant, if found liable, must compensate the plaintiff for actual monetary loss per violation or $ 500 in damages, whichever is greater. *See* 47 USC § 227(b)(3). Defendants explain that allowing damages of $500 per violation of the TCPA is "wholly disproportionate to the offense and completely unreasonable."

A statutory penalty violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919). At least two federal courts have upheld the damages provided by the TCPA under similar challenges. *See, e.g., Texas v. American Blast Fax, Inc.*, 121 F.Supp.2d 1085, 1090 (W.D. Texas 2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1167 (S.D. Ind. 1997). As the *American Blast Fax, Inc.* court explained:

11

> [T]he TCPA damages provision was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct. As the court stated in Kenro, the TCPA was meant to take into account the difficulty to quantify business interruption costs imposed upon recipients of unsolicited fax advertisements, effectively deter the unscrupulous practice of shifting these costs to unwitting recipients of junk faxes, and provide adequate incentive for an individual plaintiff to bring suit on his own behalf. The Supreme Court has stated that statutory damages designed to address such public wrongs need not be confined or proportioned to [actual] loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state.

121 F.Supp.2d at 1090 (internal quotations omitted). The propriety of a penalty must be tested "with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence" to the law. *Williams*, 251 U.S. at 67.

The $500 minimum damages provision withstands constitutional scrutiny when measured against the overall public harm attributed to unsolicited, commercial faxes. These identified harms include substantial interference with facsimile machines and the shifting of advertising costs from the advertiser to the consumer. *American Blast Fax, Inc.*, 121 F.Supp.2d at 1091. <u>Minimum damage clauses that are addressed to remedying a public wrong do not violate the Due Process Clause. The court finds that the TCPA passes constitutional muster under the Due Process Clause.</u>

With regard to the Eighth Amendment excessive fine issue, fines are valid unless they are grossly disproportionate to the nature of the violation. *United States v. Bajakajian*, 524 U.S. 321 (1998). However, in *Browning-Ferris Indus. Of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 264 (1989), the Supreme Court explained that the excessive

fine provision of the Eighth Amendment "does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." The excessive fines provision was concerned with the prosecutorial power of the state, not the extent or purposes of civil damages. Since the TCPA has allowed for private causes of actions, as demonstrated here, that provides for money damages, it does not implicate the Eighth Amendment. Accordingly, the court finds that the TCPA's monetary damages do not amount to excessive fines prohibited by the Eighth Amendment.

### 4. Conversion

Plaintiff alleges that the Defendants used Plaintiff's paper, ink, or toner for Defendants' advertising purposes. That rendered the paper, ink, and toner unusable by Plaintiff. Defendants, in turn, suggest that Plaintiff has failed to plead a sufficient cause of action for the tort of conversion. Specifically, Defendants attack Plaintiff's alleged failure to plead that the Defendants assumed control, dominion, or ownership of the paper and ink or toner. Several considerations are helpful in making the determination of whether a proper cause of action for conversion has been pleaded.

"The essence of conversion is not acquisition by the wrongdoer, but a wrongful deprivation of the owner thereof." *Dickson v. Riebling*, 30 Ill.App.3d 965, 967 (1st Dist. 1981). In fact, all that is required to demonstrate a successful showing of conversion is that the Defendants exercised control over the chattel "in a manner inconsistent with the plaintiff's right of possession." *Jensen v. Chicago & W.I.R. Co.*, 94 Ill.App.3d 915, 932 (1st Dist. 1981). In general, four factors must be established to succeed on a conversion claim: (1) the defendant wrongfully and without permission assumed control, dominion,

or ownership over the property; (2) the plaintiff has a right to the property; (3) plaintiff has an absolute and unconditional right to the immediate possession of the property; (4) the plaintiff made a demand for possession. *Western States Ins. Co. v. Louis E. Olivero & Assoc.*, 283 Ill.App.3d 307, 310 (3d Dist. 1996).

At least one other court has already held that the first three factors of conversion are met when a defendant sends unsolicited, commercial faxes to another's facsimile machine because it shifts the costs of advertising onto the recipient. *See, e.g., Whiting Corp. v. MSI Marketing, Inc.*, 02 CH 6332 at 14-15 (Cook County, Illinois April 3, 2003). This court adopts the reasoning of *Whitting Corp.* as persuasive. The Plaintiff has an unqualified possessory ownership interest in its facsimile machine, paper, ink, and toner. Beyond that, Defendants assumed control of the property when they sent unsolicited facsimile transmissions to the Plaintiff. These facts alone satisfy the first three factors of conversion. *See id.* Also, under established Illinois case law, Plaintiff need not make a demand for conversion where there is another independent act of conversion that can be demonstrated. *Jensen v. Chicago & Western Indiana R.R. Co.*, 94 Ill.App.3d 915, 933 (1st Dist. 1981). Since paper, toner, and ink would be consumed while the facsimile machine was overtaken by Defendants' facsimile transmission, other independent acts of conversion are reasonably found here, thus eliminating the requirement that the Plaintiff need make a demand for possession for there to be a proper claim of conversion. *See Whiting Corp.*, 02 CH 6332 at 15 (Cook County, Illinois April 3, 2003). <u>The court finds that conversion has been sufficiently plead.</u>

14

### 5. The Illinois Consumer Fraud and Deceptive Business Practices Act

The Defendants have asked that Plaintiff's Consumer Fraud claim be dismissed because it fails to state a cognizable cause of action. The Act protects consumers against any deceptive or unfair acts. 815 ILCS 505/2. In *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403 (2002), the Supreme Court of Illinois laid forth the elements for a successful claim under the Consumer Fraud Act. To determine whether a business practice is unfair or deceptive, a court must consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers. *Id.* at 417-18. It is not required that all three factors be met for a successful Consumer Fraud action to be illustrated. *Id.* at 418. Rather, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Chesire Mortgage Services, Inc. v. Montes*, 223 Conn. 80, 106 (Conn. 1992)).

In analyzing the first factor, transmitting unsolicited, commercial facsimile transmissions violates established Illinois public policy. The public policy of Illinois is found in its Constitution, its statutes, and its judicial decisions. *Reed v. Farmers Ins. Group.*, 188 Ill.2d 168, 174-75 (Ill. 1999) (citing *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill.2d 333, 341 (Ill. 1989)). The Illinois Legislature has prohibited the transmission of unsolicited, commercial facsimiles, pursuant to 720 ILCS 5/26-3(b), and this reflects the public policy of Illinois by prohibiting the unsolicited facsimile transmission of commercial advertisements. Thus, the act of sending unsolicited, commercial facsimile transmissions violates recognized public policy of Illinois, satisfying the first factor in *Robinson*.

The second factor this court must analyze in determining whether a violation of the Consumer Fraud Act exists is whether the act in question is immoral, unethical, oppressive or unscrupulous. *Robinson*, 201 Ill.2d at 417-18. In this instance, the Plaintiff has attached one facsimile to its Complaint as a demonstration of the communications sent by the Defendants. From the allegations contained in Plaintiff's Complaint, this court must determine whether Defendants' actions are immoral, unethical, oppressive or unscrupulous. Yet, it remains to be seen, by means of the discovery process, whether additional evidence will be produced evidencing conduct that is oppressive in this case. Certainly the transmission of one unsolicited, facsimile communication is annoying, but hardly oppressive. Yet, Plaintiff brings a class action complaint, alleging that Defendants may be engaged in a pattern of sending excessive amounts of faxes, thus amounting to an oppressive practice. The determination of this factor will require further evidence and development of the class action in this suit. As a result, it would be improper to dismiss this count at such a preliminary stage.

Considering the third factor, the Plaintiff must allege a substantial injury as a result of the Defendants' actions. There is no basis for the award of nominal or presumed damages under the Consumer Fraud Act. *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill.App.3d 1032, 1041 (2d Dist. 1992). And there are not initial facts before the court from which it could make a determination about whether the aggregate injuries sustained are substantial. As a result, dismissing this class action count on this accord would be premature at this stage.

<u>The court finds that Plaintiff has pleaded the minimum requirements for a claim under the Consumer Fraud Act.</u>

### 6. *De Minimis Non Curat Lex*

Defendants also buttress their claims supporting the dismissal of Plaintiff's Complaint with assertions that the damages are so infinitesimal that damages should not be awarded. T.J. Copy Products cites the doctrine of *de minimus non curat lex* as a maxim that precludes relief in this case. Illinois recognizes the rule that where a party has established the infringement of a right, damages are presumed. *Ainsworth v. Century Supply Co.*, 295 Ill.App.3d 644, 649-50 (2d Dist. 1998) (citing *Leslie Oldsmobile, Inc.*, 229 Ill.App.3d at 1040). This presumption entitles parties to nominal damages. In this case, the TCPA demonstrates that Plaintiff's rights may have been infringed, allowing for the award of, at minimum, nominal damages. Thus, no basis for dismissal is apparent as a result of Defendants' assertions

Furthermore, Plaintiff correctly notes that both Illinois and the United States have a firmly established public policy against the transmission of unsolicited, commercial facsimile transmissions. In fact, the TCPA itself provides for damages to be awarded up to $500 per violation of the Act. 47 U.S.C. § 227(c). The TCPA was born out of a concern about the impact of unwanted, commercial faxes being sent to fax machines. The TCPA addresses this concern and creates a financial disincentive for this to occur. <u>Thus, because the TCPA provides for statutorily conferred damages to compensate for the public wrongs addressed by the Act, it cannot be said that the damages at issue are *de minimis.*</u>

The court finds that the Defendant has not demonstrated that the TCPA is unconstitutional under the First, Fifth, Eighth or Fourteenth Amendment to the United States Constitution. The court also finds that the Plaintiff has adequately pleaded legally cognizable causes of action.

## HOLDING

It is therefore hereby ordered that Defendants' motion to dismiss is denied in its entirety. Defendants shall answer or otherwise plead within 28 days.

ENTER: DAVID M. HALL
JUDGE DAVID M. HALL

Dated this _____ April 2004 at Waukegan, Illinois