IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IRA HOLTZMAN, individually and as the representative of a class of similarly-situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL P. CAPLICE, d/b/a M. P. CAPLICE & ASSOCIATES,<br><br>        Defendant. | No. 07 CV 7279<br><br>Judge Manning<br>Magistrate Judge Cole |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

NOW COMES Defendant, MICHAEL P. CAPLICE, d/b/a M. P. CAPLICE & ASSOCIATES (hereinafter "Caplice"), by and through his attorneys, CLAUSEN MILLER P.C., and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits this Reply in Support of his Motion to Dismiss Plaintiff's Complaint.

## INTRODUCTION

Plaintiff does not dispute that the United States Supreme Court's holding in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), requires dismissal of the Complaint because it is riddled with bald, conclusory allegations. Therefore, Plaintiff's Complaint should be dismissed on this basis alone.

With respect to Plaintiff's claim under the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 (hereinafter "TCPA"), the TCPA singles out facsimile advertising on its content and subjects it to a virtual blanket ban in violation of the Constitution. Plaintiff and the Intervener United States Department of Justice ("Intervener") offer no reason to think that the TCPA has struck a permissible First Amendment balance. In addition, Plaintiff and the Intervener maintain that even though any actual damages here would amount to mere pennies, it

1178443.1

is constitutional to impose a fine that is thousands of times greater than those damages. This argument lacks merit.

With respect to his conversion claim and claim under the Illinois Consumer Fraud Act, Plaintiff filed a Notice of Voluntary Dismissal of only those counts on January 10, 2008. Therefore, there is no dispute that those counts should be dismissed. In addition, Plaintiff's attempt to save his class action allegations fails. As a result, Plaintiff's Complaint should be dismissed.

## ARGUMENT

### I. Plaintiff Does Not Dispute That The United States Supreme Court's Holding in *Bell Atlantic* Mandates Dismissal of The Complaint

In his Opening Brief, Defendant argues that the pleading standards set forth by the United States Supreme Court in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), require dismissal of the Complaint because it is riddled with nothing but conclusory allegations. Plaintiff failed to respond to this argument, perhaps because no response exists. Plaintiff cannot ignore the Supreme Court precedent in *Bell Atlantic*. On this basis alone, Plaintiff's Complaint should be dismissed.

### II. *Italia Foods, Phillips Randolph, Sadowski* and *Centerline* Cannot Salvage Plaintiff's Complaint

Plaintiff and the brief filed by the Intervener ("Govt. Br.") make much of the recent District Court decisions in *Italia Foods, Inc. v. Marinov Enterprises, Inc.*, No. 07 C 2494, 2007 WL 4117626 (N.D. Ill. Nov. 16, 2007), *Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007), *Sadowski v. Med1Online, LLC*, No. 07 C 2973, 2008 WL 489360 (N.D. Ill. Feb. 20, 2008) and *Centerline Equip. Corp. v. Banner Personnel Service, Inc.*, No. 07 C 1611, 2008 WL 597604 (N.D. Ill. March 3, 2008). These decisions do

not provide the legal protection that Plaintiff desires. These are District Court decisions to which this Court is not legally bound. *See Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ("...district judges in this circuit must not treat decisions *by other district judges,* in this and *a fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies."). Given the fact that scores of TCPA class actions have been filed all around the country, it is likely, if not inevitable, that District Courts will disagree, and the statutory interpretation issue will be resolved by Circuit Courts of Appeal. The Seventh Circuit Court of Appeals has not ruled on whether the TCPA violates the First Amendment or the Due Process Clause. This Court should not be constrained by a few District Court cases with a different viewpoint.

### III. Count I Should Be Dismissed

#### A. The TCPA Violates The First Amendment

The U.S. Supreme Court noted that the "government may impose reasonable restrictions on the time, place or manner of engaging in protected speech provided that they are adequately justified 'without reference to the content of the regulated speech.'" *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428 (1993), *citing Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). To illustrate this doctrine, the Court noted that "a prohibition against the use of sound trucks emitting 'loud and raucous' noise in residential neighborhoods is permissible *if it applies equally to music, political speech, and advertising.*" *Id., citing Kovacs v. Cooper*, 336 U.S. 77 (1949). The Court then dismissed the city's content-neutrality argument as defying both First Amendment principles and common sense because the very basis for the regulation was the difference in *content* between ordinary newspapers and commercial speech. *Id.* Under the

TCPA, whether any particular unsolicited fax falls within the ban is determined by the content of the fax resting in the fax machine. Under *Discovery Network*, the TCPA's ban is content-based.

Accordingly, Plaintiff and the Intervener's argument that the TCPA does not violate the First Amendment because it is an anti-conversion statute with a content-neutral justification fails based on the Court's reasoning in *Discovery Network*. Their argument ignores the fact that the TCPA singles out commercial speech prohibition. Although Congress has asserted an interest in preventing the shifting of advertising costs to innocent consumers, Congress has decided that imposing the cost of unsolicited facsimiles on consumers is acceptable where the message is anything other than an advertisement. Based on this fact, the TCPA is clearly "content-based." *Id.* Furthermore, it does not seek to limit any specific secondary effects that are not attributable to all unsolicited facsimiles, regardless of their content. *See Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 89 (1986).

The TCPA fails to preserve the integrity and fairness of the commercial bargaining process by reducing or eliminating fraud or deceptive speech. The TCPA does not even address potentially deceptive speech or speech regarding unlawful activity delivered by fax. Instead, the TCPA broadly prohibits all faxes "advertising the commercial availability or quality of any property, goods, or services" sent by facsimile. 47 U.S.C. § 227(a)(4). Far from promoting the integrity of the bargaining process, the TCPA simply eliminates one source of information to consumers and one efficient method of speech for small businesspersons. Therefore, under Justice Stevens' treatment of commercial speech restrictions with "special care," the TCPA is not constitutionally permissible.

The TCPA prohibits the sending of only *commercial* unsolicited faxes. Because the commercial *content* of the speech determines whether or not it is prohibited, the TCPA is a

4

content-based restriction on free speech. In *Moser v. F.C.C.*, 46 F. 3d 970 (9th Cir. 1995), the court upheld a sister provision of the TCPA as a legitimate restriction on speech only "[b]ecause nothing in the statute requires the [FCC] to distinguish between commercial and non-commercial speech." *Id.* at 973. In sharp contrast, the TCPA's prohibition on unsolicited fax advertising undeniably requires such a distinction. As such, that prohibition is content-based. *Id. See also Lysaght v. New Jersey*, 837 F. Supp. 646 (D.N.J. 1993) (state statute similar to TCPA was content-based and likely to violate the First Amendment because it "explicitly distinguishes between commercial and non-commercial speech.").

### B.     The TCPA Does Not Directly Advance The Asserted Governmental Interests

Plaintiff and the Intervener provide no plausible justification for the assertion that the TCPA directly and materially advances the government's interest in shielding persons from the alleged cost and inconvenience of receiving unwanted faxes. There is no explanation as to how the TCPA, which treats telemarketers differently than fax advertisers and which bans only commercial faxes, directly advances the government's interest in curtailing the purported cost-shifting of all fax messages and occupation of fax machines. There is no basis for their assertion that the TCPA survives this prong of the *Central Hudson* test.

When Congress banned unsolicited fax advertising, it was trying to prevent two kinds of perceived harm: (1) the harm caused when unwanted faxes occupy recipients' machines, preventing users from sending or receiving other faxes; and (2) the harm caused by the cost to the recipient of the paper and toner used to print unwanted faxes. (Plaintiff's Response, p. 4; Govt. Br., p. 8). These are the only two government interests identified in the legislative history. Under *Central Hudson*, a reviewing court may not supplant or supplement these interests with others. *Edenfield v. Fane*, 507 U.S. 761, 768 (1972).

The TCPA fails to directly advance Congress' purported interests because it arbitrarily distinguishes between fax advertising and other types of unsolicited facsimiles. Neither Plaintiff nor the Intervener provide any explanation of how a recipient's fax paper, toner, and telephone lines are only less "used" by non-commercial unsolicited faxes, thereby justifying the TCPA's outright ban of the former while at the same time wholly failing to regulate the latter. Plaintiff and the Intervener fail to demonstrate that these purported harms are real and that the TCPA will alleviate them to a material degree. Defendant does not dispute the stated interests, but disagrees that they are substantial. Simply because there is "some" cost to the recipient does not equal a substantial governmental interest.

### C. The TCPA Is Not Narrowly Tailored

This prong of *Central Hudson* prevents the government from "completely suppress[ing] information when narrower restrictions on expression would serve its interest as well." *Central Hudson*, 447 U.S. at 565. The Court went on to restate the test and, with respect to the final prong, indicated that a reviewing court "must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.* at 566. This admonition has been restated many times by the Supreme Court, most recently in *Thompson v. Western States Medical Center*, 535 U.S. 357, 122 S. Ct. 1497, 1506 (2002), when the Court stated, "we have made clear that if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." The failure of the TCPA to satisfy this prong of *Central Hudson* has resulted in a much more significant burden on free speech and communication than that which is necessary or desirable to the operation of a free market economy.

Plaintiff suggests that Defendant advocates the "least restrictive means" standard. However, a determination that less restrictive means exist does not equate to least restrictive

6

means. Defendant only advocates and cites existing alternatives which restrict less commercial speech than the TCPA, and which balance the interests of the government with the First Amendment rights of senders and recipients.

It is clear that the TCPA's blanket ban on unsolicited fax advertisements is more extensive than necessary to serve the asserted governmental interest. As the Court noted in *Discovery Network*, the "not more extensive than necessary" prong of the *Central Hudson* test requires that the TCPA's restrictions be "narrowly tailored" to the harm sought to be alleviated and the result of a "careful calculation of the costs and benefits associated with the burden on speech imposed by the prohibition." *Discovery Network*, 507 U.S. at 417. In fact, in its most recent case addressing commercial speech, the Supreme Court explained that, "if the government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Thompson v. Western States Med. Ctr.*, 122 S. Ct. 1497, 1506 (2002). The burden of satisfying this prong of the *Central Hudson* test rests with Plaintiff. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).

It cannot be disputed that there are numerous alternatives that restrict much less speech than the TCPA's blanket prohibition of commercial facsimiles. Clearly, the TCPA fails this prong of the *Central Hudson* test. For this reason alone, Defendant's Motion to Dismiss Count I of Plaintiff's Complaint must be granted.

### D.  The TCPA Damages Provisions Violate Due Process

In arguing that the TCPA "penalties" do not violate due process, Plaintiff relies on the decisions of the United States district courts in *Texas v. Am. Blast Fax, Inc.*, 121 F. Supp. 2d 1085 (W.D. Tex. 2000) and *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162 (S.D. Ind. 1997). Such reliance is misplaced.

1178443.1

In citing *American Blast Fax* to support the notion that TCPA penalties are not so severe and oppressive as to be wholly disproportionate to the defense and obviously unreasonable, Plaintiff fails to note that the court ultimately refused to assess the statutory damages that it had found to be constitutional because it found them out of line and oppressive. In a subsequent opinion, *Texas v. American Blast Fax*, 164 F. Supp. 2d 892 (W.D. Tex. 2001), the court stated: "[a]lthough the TCPA provides for liquidated damages of $500 for each violation, it would be inequitable and unreasonable to award $500 for each of these violations[,]" which would "amount to an award of $2.34 billion (937,500 [faxes] multiplied by 5 months and then by $500)." *Id.* at 900 and n.8. The court "interpret[ed] the provision as providing for 'up to' $500 per violation" and elected to award only "seven cents per violation." *Id.* at 901 (emphasis added). In rewriting the TCPA's damages provision in this fashion, the court recognized how wildly out of proportion that $500 figure sits in relation to the actual harm to the fax recipients, notwithstanding the same court's holding to the contrary in its earlier decision. *See American Blast Fax*, 121 F. Supp. 2d at 1090-91. Without such a revision, the TCPA's mandatory damages remedy called for unconscionable damages in the amount of $2.34 billion. This case illustrates the potential devastating effect of the TCPA's damages provision.

Plaintiff's reliance on *Kenro* is equally misplaced. *Kenro* predated two cases critical to the due process analysis herein: *State Farm Mut. Auto Ins. Co. v. Campbell*, 123 S. Ct. 1513 (2003) and *Parker v. Time Warner Entertainment, Co.*, 331 F. 3d 13 (2nd Cir. 2003). In *State Farm Mut. Auto Ins. Co. v. Campbell*, 123 S. Ct. 1513 (2003), the Supreme Court examined procedural and substantive constitutional limitations on damage awards in the context of a $145 million punitive damage award in a case where the plaintiff was awarded $1 million in compensatory damages - a 145 to 1 ratio. "The Due Process Clause of the Fourteenth

Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* at 416. "The reason is that 'elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.'" *Id.* at 417, *quoting BMW of N. Am. v. Gore*, 517 U.S. 559, 574 (1996). "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *State Farm*, 538 U.S. at 417.

Courts have similarly recognized the problem associated with plaintiffs seeking enormous statutory damage awards on behalf of a class where the awards are completely unrelated to the amount of harm inflicted. *See, e.g., Parker v. Time-Warner Entertainment Co.*, 331 F.3d 13, 26 (2d Cir. 2003) (Newman J., concurring) (noting that where statutory damages in a class action would amount to $12 billion dollars, such an award "might well encounter due process objections"); *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 414, 416 (S.D.N.Y. 1972) (declining to certify class of 130,000 that sought a minimum of $13 million in statutory damages where no actual harm was alleged). In this case, any actual damages to Plaintiff amount to, at most, a few pennies. Allowing recovery of statutory damages at $500 or $1500 per violation is grossly excessive. Such statutory damages shock the conscious, particularly when the damage to Plaintiff, if any, amounts to a few pennies.

The *Parker* case clearly shows how the Second Circuit was able to bridge those thoughts in analyzing current legislation. In *Parker*, the Second Circuit recognized the due process implications of imposing excessive statutory damages. Specifically, the appellate court acknowledged the "legitimate concern" of the district court judge that the effect of combining a minimum statutory per-individual award with the class action mechanism "may expand the

9

potential statutory damages to far beyond the actual damages suffered that the statutory damages come to resemble punitive damages – yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award." *Id.* at 24-25. The court further recognized that this dangerous combination could result in "an *in terrorem* effect on defendants, which may induce unfair settlements. And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award." *Id.*

The TCPA requires a fine of $500, despite the fact that, at most, any damages here amount to mere pennies. This is far in excess of penalties sanctioned by the U.S. Supreme Court. Therefore, Plaintiff's TCPA claim should be dismissed on the ground that it seeks a statutory award that is unconstitutional under the Due Process Clause.

## IV. Plaintiff Voluntarily Dismissed Counts II and III of the Complaint

In his Opening Brief, Defendant moved for dismissal of the entire Complaint, including Counts II and III. On January 10, 2008, Plaintiff filed a Notice of Voluntary Dismissal of Counts II and III Only Without Prejudice (*See* Document #14, attached hereto as Exhibit A). In the Response Brief, Plaintiff argues that Counts II and III should not be dismissed. However, Plaintiff has already voluntarily removed those counts from contention in this case. Therefore, since there is no dispute as to Counts II and III, this Court should disregard Plaintiff's arguments with respect to those counts.

## V. Plaintiff's Class Allegations Must Be Dismissed

Plaintiff's attempt to save his class action allegations fails. In his Response, Plaintiff merely states that Defendant's challenge is premature but fails to respond to Defendant's arguments. In this case, no common question of law or fact can predominate because the issue

of whether each facsimile was "unsolicted" and whether an established business relationship existed with Defendant will involve highly fact-specific inquiries into the circumstances of each alleged fax transmission. Therefore, because there is no possibility that a class action can be maintained, Plaintiff's allegations must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant requests that this Court grants its motion and dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

By:   /s/ Maria Z. Vathis
One of Defendant's Attorneys

Robert L. Reifenberg
Maria Z. Vathis
CLAUSEN MILLER P.C.
10 S. LaSalle Street
Chicago, IL  60603
(312) 855-1010
Attorneys for Defendant MICHAEL P. CAPLICE,
d/b/a M. P. CAPLICE & ASSOCIATES

1178443.1

## **CERTIFICATE OF SERVICE**

On **April 14, 2008**, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

By: /s/ Maria Z. Vathis  
Maria Z. Vathis  
Clausen Miller P.C.  
10 S. LaSalle Street  
Chicago, IL 60603-1098  
Telephone: 312/855-1010  
Facsimile: 312/606-7777  
mvathis@clausen.com

1178443.1