IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRA HOLTZMAN, individually and on behalf of a class of similarly-situated plaintiffs, | ) ) ) ) | |
|                 Plaintiff, | ) ) ) | No. 07 C 7279 |
| v. | ) ) | Judge Manning |
| MICHAEL P. CAPLICE, d/b/a M.P. CAPLICE & ASSOCIATES, | ) ) ) | |
|                 Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

For the reasons stated below, the court denies the defendant's motion to dismiss the plaintiff's claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Count I).

**I.    Background**

For purposes of this Rule 12(b)(6) motion to dismiss, the court accepts all well-pled allegations as true. Plaintiff Ira Holtzman alleges, on behalf of himself and a putative class, that defendant Michael Caplice faxed an advertisement to Holtzman and 39 other recipients without permission. Count I alleges a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"); Count II alleges a state law claim for conversion; and Count III alleges a state law claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

The defendant filed a motion to dismiss all three counts. However, in the interim, the plaintiff filed a notice of voluntary dismissal of Counts II and III, *see* Dkt. #14-1. Accordingly, the motion to dismiss as to Counts II and III is stricken as moot and the court will address only

the defendant's challenges to Count I, which is based on the TCPA. The court also notes that it allowed the government to intervene as of right in order to respond to the defendant's challenge to the constitutionality of the statute. As a result, the government filed a response to the motion to dismiss Count I, which the court has also considered in addressing the defendant's constitutional challenge.

**II.    Analysis**

A.    <u>Failure to Allege Sufficient Facts</u>

The defendant first argues that the plaintiff fails to plead sufficient facts to satisfy the motion to dismiss standard set out in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(citations omitted). In *Bell Atlantic*, the Supreme Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

The Seventh Circuit has interpreted *Bell Atlantic* as follows:

> Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) *(quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *(alteration in Bell Atlantic* ). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that the Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face.").

Without applying the law to any particular count, the defendant generally argues that the plaintiff's allegations are conclusory and insufficient under *Bell Atlantic*. The plaintiff wholly fails to address this argument in his response, at least as it applies to the TCPA count, which is the only count left in the complaint. In any event, the court rejects the defendant's argument. The complaint alleges that the "TCPA prohibits the 'use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine . . . .' 47 U.S.C. § 227(b)(1)." Complaint at ¶ 20. It also alleges that the defendant sent an unsolicited fax to the plaintiff's fax machine without the plaintiff's permission and attaches a copy of the allegedly offending fax. *Id*. at ¶¶ 11, 12 and 24. Thus, the complaint gives the defendant fair notice of what the claim is and the grounds upon which it rests and the allegations plausibly suggest that the plaintiff has a right to relief under the TCPA.

B.    Failure to Sufficiently Allege a Class Action

The defendant next contends that the plaintiff's class action allegations fail under the *Bell Atlantic* standard. Specifically, the defendant alleges that there is no factual basis for concluding that there are more than 40 individuals who allegedly received the same fax as plaintiff, particularly given that the allegations are made on information and belief. The defendant asserts that such allegations are inherently speculative, and therefore, cannot survive

the motion to dismiss.

The court finds the defendant's attempt to dismiss class allegations under Rule 12(b)(6) for failure to meet the *Twombly* standard to be off point. The defendant is not arguing that these claims cannot as a matter of law proceed as a class action. Rather, the defendant argues that the allegations are insufficient to plausibly suggest that a sufficient number of class plaintiffs exists, which is simply another way of arguing that the plaintiff has failed to satisfy the numerosity requirement under Rule 23(a). As a matter of practicality, the court deems it most expeditious to decide this matter in the context of a class certification motion. As noted by a leading treatise on federal civil procedure:

> Compliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary judgment motion. The proper vehicle is Rule 23(c)(1)(A), which provides that, at an early practicable time, the court must "determine by order whether to certify the action as a class action." Therefore, a party wishing to challenge the validity of maintaining the action under Rule 23 should move for a determination under Rule 23(c)(1) that a class action is unwarranted.

Wright, Miller & Kane, Federal Practice & Procedure, Civil 3d § 1798.

Accordingly, the defendant's motion to dismiss on the ground that the plaintiff has not adequately pled numerosity is denied as this is not a proper subject for a motion to dismiss. The defendant may raise this challenge in the context of a motion for class certification.

C.     Constitutionality of the TCPA

The defendant also challenges the constitutionality of the TCPA contending that it violates the First and Fifth Amendments.

1.   *First Amendment*

According to the defendant, the TCPA violates the First Amendment because it fails to

pass muster under the test articulated in *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980).[1] In *Central Hudson*, the United States Supreme Court articulated a four-part test to determine whether a restriction on commercial speech, which the parties appear to agree is at issue here, violates the First Amendment. As stated by the U. S. Supreme Court:

> Under th[e] [*Central Hudson*] test we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, we next ask "whether the asserted governmental interest is substantial." If it is, then we "determine whether the regulation directly advances the governmental interest asserted," and, finally, "whether it is not more extensive than is necessary to serve that interest." Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional.

*Thompson v. Western States Medical Center*, 535 U.S. 357, 367 (2002)(citations omitted).

Here, the plaintiffs do not contend that the commercial speech at issue concerns unlawful activity or is misleading. Accordingly, the negative answer to the threshold inquiry requires that the court proceed with the remaining prongs of the *Central Hudson* analysis. Prior to this discussion, however, the court notes that numerous courts have rejected First Amendment challenges to the TCPA. *See, e.g.*, *Centerline Equipment Corp. v. Banner Personnel Service, Inc.,* 07 C 1611, 2008 WL 597604, at *2 (N.D. Ill. Mar. 3, 2008); *Italia Foods, Inc v. Marinov Enterprises, Inc.*, No. 07 C 2494, 2007 WL 4117626, at *2 (N.D. Ill. Nov. 16, 2007), and cases cited therein; *Phillips Randolph Enterprises, LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007). *See also Missouri ex rel. Nixon v. American Blast Fax,*

---

[1] The defendant appears to be making a facial challenge to the constitutionality of the statute as a whole, rather than as applied to the facts of this case.

*Inc.*, 323 F.3d 649, 660 (8th Cir. 2003); *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 57 (9th Cir. 1995).

In his reply, the defendant argues that the court should not rely on the several other district courts in this circuit that have found the TCPA constitutional. While this court agrees with the defendant that these district court decisions are not controlling authority, they contain insightful and well-reasoned discussions of the exact same issues raised by the defendant in this case. Thus, the court has properly considered them in addressing the defendant's arguments.

      a.    Is the interest substantial?

The first step asks whether the asserted government interest is substantial. In passing the TCPA, Congress noted the cost-shifting involved in the sending of such unwanted faxes and as well as the wasted time in dealing with them. S. Rep. No. 102-178 (1991); H.R. Rep. 102-317, at 10 (1991). The court is not persuaded by the defendant's unsupported assertion that Congress "never reviewed a single study of the magnitude of the problem" or his conclusory and unsupported statement that "[a]lthough unsolicited faxes are arguably annoying to some, that is not enough to generate a substantial government interest." Nor does the court accept the defendant's invitation to take judicial notice of his speculative and again unsupported contention that "'junk e-mails' might even be more annoying and a larger waste of time but remain unrestricted by statute."

The defendant has provided no evidence that Congress' conclusions that unsolicited faxes wasted enormous time and money for the recipients were or are incorrect. Indeed, as noted by another court in this district, "a legislative body can establish the reality of a harm by means other than the empirical studies that [the defendant] insists are mandatory, and Congress used

acceptable alternative bases when enacting the TCPA." *Phillips Randolph Enterprises, LLC*, No. 06 C 4968, 2007 WL 129052, at *3 *(citing Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d at 654). The court finds no evidentiary basis (because the defendant provides none) on which to question the reasons set forth by Congress as establishing a substantial interest in restricting this type of commercial speech.

    b.  Does the statute directly advance the governmental interest asserted?

The defendant contends that the TCPA does not directly advance the governmental interests asserted, *i.e.*, reducing costs and time spent associated with such unsolicited faxes.

A properly tailored restriction "focuses on the source of the evils the [government] seeks to eliminate ... and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 n. 7 (1989). Here, Congress has determined that unwanted commercial faxes place a particularly costly burden on the recipients. *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d at 656 ("The legislative history here shows that TCPA's distinction between commercial and noncommercial fax advertising is relevant to the goal of reducing the costs and interference associated with unwanted faxes.")(agreeing with the Ninth Circuit's conclusion in *Destination Ventures, Ltd. v. FCC*, 46 F.3d at 56).

According to the defendant, Congress singled out commercial faxes (versus faxes that contain political messages, junk messages or charitable messages) with no justification for doing so. Thus, the defendant asserts, the preferential treatment of non-commercial speech over commercial speech cannot stand. In support, he directs the court's attention to *City of Cincinnati v. Discovery Network Inc.*, 507 U.S. 410 (1993). In this case, the Supreme Court found that the

regulation prohibiting racks that distributed commercial handbills but allowing newspaper racks bore no relationship "whatsoever" to the city's purported interest in reducing cluttered streets. *Id.* at 425 ("The city has asserted an interest in esthetics, but respondent publishers' newsracks are no greater an eyesore than the newsracks permitted to remain on Cincinnati's sidewalks. Each newsrack, whether containing 'newspapers' or 'commercial handbills,' is equally unattractive."). In addition, the Supreme Court took note of the fact that while the goal behind the ordinance was to eliminate clutter and improve esthetics, the commercial handbill newsracks that were banned by the city numbered only 62 while the newspaper racks that were permitted under the statute numbered from 1,500 to 2,000.  *Id.* at 418.

    Here, however, the *Discovery Network* case is inapposite because "the TCPA's ban on unsolicited commercial faxes directly advances the governmental interest of reducing the unwanted costs that they impose." *Italia Foods, Inc v. Marinov Enterprises, Inc.*, No. 07 C 2494, 2007 WL 4117626, at *3 ("When the TCPA was enacted, Congress found that 'non-commercial calls ... are less intrusive to consumers because they are more expected.'")(*quoting* H.R.Rep. No. 102-317, at 16 (1991)).  Indeed, the "legislative history [of the TCPA] shows that TCPA's distinction between commercial and noncommercial fax advertising is relevant to the goal of reducing the costs and interference associated with *unwanted* faxes." *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d at 656 (emphasis in original).

    Based on Congress' stated goals, the factual findings set forth in the legislative history, and the defendant's failure to provide any basis on which the court could find that the TCPA does not advance the stated interest of reducing unwanted faxes, the court concludes that the statute satisfies this prong of the *Central Hudson* test.

      c.      Does the TCPA restrict speech more than is necessary?

The defendant asserts that the TCPA restricts more speech than necessary because it does not have an "opt-out" provision or a "do not fax" list that individuals and businesses can join. Thus, the defendant asserts, the TCPA is not as narrowly tailored as it could be and is overinclusive in that it prohibits sending all unsolicited commercial faxes.

However, the last prong of the *Central Hudson* test is whether the regulation is broader than necessary to further the stated interest. The Supreme Court has thus:

> made clear that the "least restrictive means" test has no role in the commercial speech context. "What our decisions require," instead, "is a 'fit' between the legislature's ends and the means chosen to accomplish those ends," a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective."

*Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995)(citations omitted).

Here, the fit between Congress' interest in reducing the wasted time and money and the statute's restrictions are reasonable. As noted by the Eighth Circuit:

> Advertisers remain free to publicize their products through any legal means; they simply cannot do so through an unsolicited fax. TCPA does not act as a total ban on fax advertising. Advertisers may obtain consent for their faxes through such means as telephone solicitation, direct mailing, and interaction with customers in their shops. While it is true that the effect of TCPA will be that some consumers will not receive unsolicited advertisements they might have appreciated, under the approach advocated by [the defendant] there would always be individuals suffering costs and interference from unwanted advertisements. It was not unreasonable for Congress to choose a system that protects those who would otherwise be forced to bear unwanted burdens over those who wish to send and receive unsolicited fax advertising. Given the cost shifting and interference imposed by unsolicited commercial faxes and the many alternatives left available to advertisers, TCPA's approach is " 'in proportion to the interest served ... [and is] narrowly tailored to achieve the desired objective.' "

*Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d at 659 (citations and internal quotation marks omitted).

Moeover, providing an opt-out or "do not call" list is "not equivalent to those [remedies] embodied in the TCPA in that they would place the burden of avoiding unwanted faxes onto the recipient, thus undermining the remedy the statute embodies." *Phillips Randolph Enterprises, LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, at *4; *Italia Foods, Inc v. Marinov Enterprises, Inc.*, No. 07 C 2494, 2007 WL 4117626, at *3 (noting that limitation need not be the least restrictive and that the "TCPA satisfies this requirement [that the restriction be in proportion to the interest served] as it places the burden on the senders of unsolicited commercial faxes to obtain consent, rather than upon the recipient to 'opt-out' as defendant's proposal would so impose.").

This court thus finds that the defendant has failed to demonstrate that the TCPA's limitations are not more restrictive than necessary.

    2.    Fifth Amendment

The defendant also contends that the statute violates the Fifth Amendment because it allows for a $500 penalty per violation, 47 U.S.C. § 227(b)(3), which may be trebled if the violation is knowing or willful. According to the defendant, because the actual damages are only a few cents worth of paper of ink, the $500 penalty, which can be trebled in the proper circumstances, is excessive. *State Farm Automobile Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1521 (2003)(striking down state jury punitive damage award that greatly exceeded the compensatory damage award).

However, a statutory damage amount violates due process only when it is "so severe and

oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)(considering not just the amount of the fine as it relates to the actual damages, but also taking into account "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence" to the statute).  As noted by a fellow district court in concluding that the TCPA's $500 penalty did not violate the due process clause, "the legislature must choose a benchmark that will be appropriate to many different situations, as well as taking into account considerations such as the public interest."  *Phillips Randolph Enterprises, LLC v. Rice Fields*, No. 06 C 4968,  2007 WL 129052, at *2.  Indeed, in addition to the wasted ink and paper, "Congress also took into account the [less quantifiable] costs of business interruptions and wasted time. . . .[thus,] [t]he amount [had to] be sufficient to serve as a disincentive to the practice of faxing unsolicited advertisements for any potential likely senders."  *Italia Foods, Inc v. Marinov Enterprises, Inc.*, 07 C 2494, 2007 WL 4117626, at *4 (*citing* H.R.Rep. No. 102-317, at 10 (1991)).

   Given Congress' interest in preventing wasted time and costs on behalf of the recipient and the need to set a number that will be applicable to a variety of fact patterns, the court finds that the statutory damage amount does not violate the due process clause.  *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 489360, at *5 (N.D. Ill. Feb. 20, 2008)("Given Congress's explanation, we find that the amount is not so severely disproportionate to congressional concerns regarding junk faxes or so obviously unreasonable to make it unconstitutional.").

   The defendant also objects to the statutory damage provision based on the potentially

large award that could result if this case is certified as a class action and the damages are multiplied. However, the court has yet to consider class certification. Thus, at this point in the litigation with only one alleged violation before it, any arguments addressed to a purportedly confiscatory level of damages based on the number of violations to a class of plaintiffs is premature. *Centerline Equipment Corp. v. Banner Personnel Service, Inc.*, 07 C 1611, 2008 WL 597604, at *6 (addressing similar challenge, stating that "[i]t is premature at this stage to consider whether any hypothetical award might be constitutionally excessive")(*citing Murray [v. GMAC Mortg. Corp*.], 434 F.3d [948,] [] 954 [(7th Cir. 2006)]).

D.     The TCPA Does Not Apply to Faxes Received by Computers

Finally, the defendant asserts that the TCPA does not cover faxes received by e-mail and because the complaint "fails to address . . . whether the alleged fax was first received by a fax program on a computer, rather than a stand-alone facsimile machine hooked up to telephone line," the count should be dismissed.

As an initial matter, the court notes that the defendant's implication that faxes received by "fax programs on a computer" are not covered by the TCPA is incorrect. As noted by the plaintiff and the government, the TCPA also applies to faxes sent to personal computers attached to modems or to computerized fax servers. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order adopted June 26, 2003, and released July 3, 2003, at ¶ 200, 18 FCC Rcd. 14014, 14133-34 (2003)("FCC Order")("We conclude that faxes sent to personal computers equipped with, or attached to, modems *and to computerized fax servers* are subject to the TCPA's prohibition on unsolicited

faxes.")(emphasis added).[2]

In any event, the plaintiff's allegations sufficiently state a claim under the TCPA. The complaint alleges that he received unsolicited fax advertisements, Compl. at ¶ 11, the "Defendant's faxes used Plaintiff's fax machine," id. at ¶ 27, and that "fax machines are left on and ready to receive the urgent communications their owners desire to receive." Id. at ¶ 14. These allegations are sufficient to plausibly suggest that an unsolicited fax was sent to a "telephone facsimile machine," as that term is defined by the TCPA, and therefore that the plaintiff has stated a claim under the TCPA.

### III.  Conclusion

For the reasons stated above, the defendant's motion to dismiss [6-1] is denied.

**ENTER:**

**Date:** May 23, 2008

*Blanche M. Manning*
_____
**Blanche M. Manning**
**United States District Judge**

---

[2]The court finds the defendant's citation to *Aronson v. Bright-Teeth Now, LLC*, 824 A.2d 320, 322-23 (Pa. Super. Ct. 2003), unavailing. In that case, the plaintiff alleged a cause of action under the TCPA based on unsolicited commercial e-mail (i.e., "spam"). The court affirmed a lower court's dismissal of the plaintiff's TCPA claim on the ground that the statute did not cover e-mails. This case is distinguishable in that the plaintiff here is not alleging that he received unsolicited e-mails or facsimile messages sent as e-mail over the internet, which the government concedes are not covered by the TCPA. *See* FCC Order, at ¶ 200 ("However, we clarify that the prohibition does not extend to facsimile messages sent as e-mail over the internet.").